**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 26-10678** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** | § | **Chapter 11** |
| | § | **COMPLEX CASE** |
| Debtors.[1] | § | |
| | § | **SECTION: A** |

**MOTION FOR AUTHORITY TO PAY**
**EMPLOYEES' PRE-PETITION WAGES,**
**RELATED EXPENSES, BENEFITS, AND TAXES**

Crosby Tugs, L.L.C. ("***Tugs***") and Crosby Dredging, LLC ("***Dredging***") (collectively, "***Debtors***") file this *Motion for Authority to Pay Employees' Pre-Petition Wages, Related Expenses, Benefits, and Taxes* (the "***Motion***"), pursuant to section 105(a) of the Bankruptcy Code (the "***Bankruptcy Code***"), for entry of an order, substantially in the form attached as **Exhibit A** ("***Order***"), granting the relief requested herein. In support of the Motion, the Debtors aver as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the Bankruptcy Code.

---

[1] An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4, No. 26-10681, ECF Doc. 4].

1

#10326621v4<LUGENBUHL> - 6 - Motion for Authority to Pay Employees Prepetition Wages

**Background**

3.     On March 23, 2026, (the "Petition Date"), Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").  See 11 U.S.C. § 301.

4.     The Debtors continue to operate their businesses and manage their properties as debtors in possession, pursuant to sections 1107 and 1108 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

5.     On March 24, 2026, the Court entered an order [ECF Doc. 9] that Bankruptcy Cases are to be consolidated for procedural purposes only and shall be jointly administered by the Court under, In re Crosby Marine Transportation, LLC, Case No. 26-10678.

6.     On March 24, 2026, the Court entered an Order [ECF Doc. 6] that the Procedures for Complex Chapter 11 Cases Filed in the United States Bankruptcy Court for the Eastern District of Louisiana (the "Complex Case Procedures") established by General Order 2019-4, amended as of January 10, 2025, shall apply to this case. The Complex Case Procedures are posted on the Court's website, https://www.laeb.uscourts.gov/.

7.     Additional information regarding the circumstances leading to the commencement of the Bankruptcy Cases and information regarding the Debtors' business and capital structure is set forth in the Declaration of Lawrence Perkins in Support of Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration"), which has been filed contemporaneously herewith.

**Relief Requested**

8.     The Debtors are seeking the authority to tender compensation and benefits incurred for pre-petition services of the various employees who manage, oversee, and operate the businesses of Tugs and Dredging on a day-to-day basis.

#10326621v4<LUGENBUHL> - 6 - Motion for Authority to Pay Employees Prepetition Wages

9. To minimize the personal hardship the employees will suffer if prepetition employee-related obligations are not paid when due, and to maintain the remaining employees' morale at this critical time, the Debtors, by this Motion, seek authority to pay certain prepetition claims for, among other items, wages (including, but not limited to, salaries and other compensation), federal and state withholding taxes, payroll taxes, health insurance, dental insurance, garnishments, maintenance and cure payments for Jones Act claims, insurance premiums under the workers' compensation program, and any self-insured retention payments (collectively, the "***Employee Obligations***"), as well as Reimbursable Expenses (as such term is defined herein), all incurred in the ordinary course of business. Accordingly, the Debtors are seeking the authority to pay any unpaid Employee Obligations in the ordinary course of business and consistent with past practices.

10. Tugs and Dredging are the Company's primary employers. Prior to the filing, Debtors' employees manage, oversee, and operate the businesses on a day-to-day basis. A discussion of the importance of the employees is discussed in the First Day Declaration.

11. As the Debtors are family-owned businesses, and operate in a close-knit community, there may be employees, subject to this Motion that are related to the insiders, however, these employees are not directors, officers, or employees in control of the Debtors. Insiders that are in control of the Debtors are not included in this request, and any future payments to insiders will be covered by a separate motion.

## **Basis for Relief**

12. This Court has authority pursuant to 11 U.S.C. § 105(a) to authorize the payment of pre-petition wage and benefit claims. *See, e.g.*, *Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (courts have permitted the payment of

employee prepetition debts when necessary for rehabilitation); *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing payment of pre-petition amounts due, *inter alia*, for wages, benefits, health insurance premiums, and per diem expenses under the "necessity of payment doctrine," without regard to statutory priorities of section 507); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (authorizing payment of pre-petition wage, salary, medical benefits and business expense claims of active employees); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987) (authorizing payment of pre-petition wages, salaries, reimbursement of expenses, and other benefits to the employees of the debtor and noting that a rigid application of the priorities of section 507 would be inconsistent with the fundamental purpose of reorganization); s*ee also In re Trois Oeufs, Inc. d/b/a Another Broken Egg Café*, 09-11105 (Bankr. M.D.La. 2007); *In re Gibson Credit, Inc.*, 06-1007 (Bankr. M.D.La. 2006); *In re Equity Media Holding Corporation, et al.*, 08-17646 (Bankr. E.D.Ark. 2008); *In re Hoffinger Industries, Inc.*, 01-20514 (Bankr. E.D.Ark. 2001); *In re Entergy New Orleans, Inc.*, 05-17697 (Bankr. E.D. La 2006); and *In re The Babcock & Wilcox Company*, 00-10992 (Bankr. E.D. La. 2000).

13.     The Debtors will have sufficient cash flow to pay in full all Employee Obligations and Reimbursable Expenses through the use of any unencumbered cash,  the use of cash collateral, and the use of cash made available in connection with their proposed debtor-in-possession financing.  To allow the prepayment of these claims through the equitable powers of the Court under section 105(a) advances the fundamental purpose of chapter 11, the reorganization of a business enterprise, and is in the best interest of the estates and the Debtors' creditors.  One of the Debtors' greatest strengths is the continuing loyalty and service of their employees.  Without the continuing effort of their employees, the Debtors' efforts to maximize their value and the return to their creditors would be seriously jeopardized, if not doomed, at the onset of these bankruptcy

4

cases. Without the employees, the Debtors could not continue the Debtors' operations. *See Gulf Air*, 112 B.R. at 153-54 (recognizing debtor's need for retention of skilled employees); *see also Ionosphere Clubs*, 98 B.R. at 176 (noting that courts are not helpless to apply necessity of payment rule in a non-railroad case where the alternative was cessation of operations).

14. The relief sought by the Debtors should be granted because the payments sought to be authorized do not exceed the priorities allowed by 11 U.S.C. § 507. The Debtors are not seeking to pay any compensation due to any single employee in excess of $17,150.00.[2]

15. Tugs' employees are paid in arrears, and the payroll checks are distributed bi-weekly on Friday.[3] Tugs' employees received their last Pre-Petition Date paychecks on March 20, 2026, for the period through March 15, 2026, as the period ends on Sunday.

16. Dredging's employees are also paid in arrears, and the payroll checks are distributed on Fridays, but payroll is made on a weekly basis. Dredging's employees received their Pre-Petition Date paychecks on March 20, 2026, for the period through March 15, 2026, as the period ends on Sunday.

17. Both Tugs and Dredging process payroll internally.

18. Accordingly, Tugs and Dredging are seeking the authority to include the Employee Obligations incurred during the pre-petition period in each company's respective pay periods that will include the amounts for services performed from March 16th through the Petition Date.

19. Immediately prior to the filing, the total estimated accrued and unpaid Employee Obligations for Tugs includes: (i) net pay to employees - $595,300.48; (ii) total payroll taxes - $295,307.98; (iii) employee benefits in trust - $103,040.85; and (iv) child support and garnishment

---

[2] The Debtors will provide the United States Trustee with information regarding the specific amounts owed to each employee.
[3] Except, one employee is paid weekly.

- $4,157.74 covering the period of March 16, 2026 through Petition Date. Employees are compensated either as salaried employees, on an hourly basis, or as day-rate employees, depending on their work obligations. If the Debtors are unable to make these payments, they could lose important employees, and it will significantly impact operations and maintenance of the equipment, and the ability to engage new business. These employees are essential to the continued operations conducted by Tugs.

20. Immediately prior to the filing, the total estimated accrued and unpaid Employee Obligations for Dredging includes: (i) net pay to employees - $109,066.59; (ii) total payroll taxes - $34,254.06; (iii) employee benefits in trust - $17,286.97; and (iv) child support and garnishment - $1,230.38 covering the period of March 16, 2026, through the Petition Date. Employees are compensated either as salaried employees, on an hourly basis, or as day-rate employees, depending on their work obligations. If the Debtors are unable to make these payments, they could lose important employees, and it will significantly impact the operations and maintenance of the equipment, and the ability to engage new business. These employees are essential to the continued operations conducted by Dredging.

21. The Debtors, as part of the Employee Obligations, must pay payroll and withholdings taxes related to employee payroll as required by federal, state, and/or local authorities The Debtors must then match the taxes from their own funds and pay the additional amounts to the appropriate taxing authority. The Debtors also deduct garnishments, child support, and similar deductions as required by law. The Debtors' vacation and personal time obligations, as well as sick and other paid leave obligations, and to the extent such benefits were used from March 16 – 23, 2026, the Debtors are seeking the authority to pay such obligations.

22. The Debtors also deduct other pre-tax and after tax-deductions payable for certain

#10326621v4<LUGENBUHL> - 6 - Motion for Authority to Pay Employees Prepetition Wages

employee benefit plans, including 401(k) retirement contributions and any matching contributions. The types of insurance benefits include a group medical benefits insurance plan (Blue Cross and Blue Shield of Louisiana), dental plan (Sun Life), vision plan (National Guardian Life Insurance Group Vision Insurance Policy), disability income policy for short term and long term (The Lincoln National Life Insurance Company), hospital indemnity insurance (Lincoln Financial), accident insurance (Lincoln Financial), critical illness insurance (Lincoln Financial), employee assistance program (Lincoln Financial), and group life insurance policy (The Lincoln National Life Insurance Company) in place for employees of Debtors and payment of the employee withholding portion is included in the amounts listed herein as Employee Obligations.

23.     The Debtors forward the deductions as discussed herein, and the Employee Obligations, to the appropriate third-party recipients.

24.     The Debtors provide to the extent applicable, workers' compensation coverage, coverage in compliance with the Jones Act, and coverage in compliance with the Longshore and Harbor Workers' Compensation Act.  The premiums are financed and paid by the Debtors and, to the extent premiums need to be paid, the Debtors will seek approval from this Court.

25.     Some of the Debtors' employees ordinarily and necessarily incur business-related expenses in connection with their service to the Debtors, including, but not limited to, expenses relating to travel and the purchase of supplies and parts (collectively "***Reimbursable Expenses***"). By this Motion, the Debtors are also requesting to pay those Reimbursable Expenses.

26.     The Debtors' health benefit plan is through Blue Cross and Blue Shield of Louisiana, and includes ScriptCare.  The health benefit plan is subject to a self-insured retention deductible of $125,000.00 per occurrence.  Normally, the insurance provider sends an invoice for the week ending identifying that portion of claims that is the obligation of the Debtors.  To the

extent that there are any claims that are coverable during the time period of March 16-23, 2026, the Debtors are seeking the authority to make such payments. For context, for the week ending March 13, 2026, the amount due was approximately $20,146.18. Additionally, under the Jones Act, while claims are pending, the Debtors make maintenance and cure payments until such time a judgment is rendered. To the extent that there are maintenance and cure payments incurred during the time period of March 16–23, 2026, the Debtors are seeking the authority to make such payments.

27.     The Debtors also provide certain identified employees allowances to fund the costs related to vehicles and the use of cellular phones. These amounts are excluded from the paychecks, but nonetheless, are part of the employees' compensation packages, and the Debtors desire to continue this compensation to certain employees.

28.     The Debtors believe that, in the event it is unable to pay their Employee Obligations and Reimbursable Expenses to employees, incurred pre-petition, when and as due, the Debtors will suffer immediate and irreparable harm. Moreover, the Debtors believe that there is a strong likelihood that their ability to provide the same quality level of goods and services and reorganize will be undermined. The Debtors further believe that the continuance of their current employee benefits is critical to the continued loyalty of their employees. The continuation of such benefits is essential to the compensation package for employees and is in the best interest of the Debtors.

29.     As a result of the Debtors' filings for relief under chapter 11 of the Bankruptcy Code, in the absence of an order of this Court, the Debtors cannot fund payroll for Tugs and Dredging's non-insider employees for the period from March 16, 2026, through the Petition Date. To the extent that the Debtors could not fund payroll, each non-insider employee would have an unsecured claim for their Employee Obligations to the extent of $997,807.05 for Tugs, and

$161,838.00 for Dredging, which would constitute a priority claim pursuant to section 507(a)(4) of the Code.

30.     In order to retain their employees and prevent a decline in morale and significant interruptions in operations and loss of future business, which would immediately abort the Debtors' efforts and cause immediate and irreparable harm to the Debtors' estates and creditors, the Debtors move the Court for authorization to pay their Employee Obligations, as well as their Reimbursable Expenses immediately.  Such payments will increase the likelihood of a greater return to creditors.

**WHEREFORE**, for the foregoing reasons, Debtors respectfully request the Court to enter an order authorizing the Debtors to pay Employee Obligations and related expenses, benefits, and taxes, and granting such other and further relief as the Court deems just and proper.

Dated: March 24, 2026

Respectfully submitted:

*/s/Benjamin W. Kadden*
Benjamin W. Kadden, La. Bar No. 29927
bkadden@lawla.com
Stewart F. Peck, La. Bar No. 10403
speck@lawla.com
Douglas S. Draper, La. Bar No. 5073
ddraper@lawla.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@lawla.com
Coleman L. Torrans, La Bar No. 38917
ctorrans@lawla.com
**Lugenbuhl, Wheaton, Peck, Rankin &**
**Hubbard (A Law Corporation)**
601 Poydras Street, Suite 2755
New Orleans, LA  70130
Telephone: (504) 568-1990
Fax: (504) 310-9195

***Proposed Counsel for Debtors and***

9

*Debtors in Possession*