*Filing Version*
*Subject to ongoing review*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 26-10678** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** | § | **Chapter 11** |
| | § | **COMPLEX CASE** |
| Debtors.[1] | § | |
| | § | **SECTION: A** |

**INTERIM ORDER (A) AUTHORIZING**
**DEBTORS TO (I) OBTAIN POSTPETITION FINANCING AND**
**(II) USE CASH COLLATERAL, (B) GRANTING LIENS AND PROVIDING**
**CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,**
**(C) GRANTING ADEQUATE PROTECTION, (D) MODIFYING AUTOMATIC**
**STAY, (E) SCHEDULING FINAL HEARING, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***") of the debtors and debtors-in-possession (collectively, the "***Debtors***" or "***Crosby***," and each, a "***Debtor***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 2002-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Louisiana (the "***Local Rules***") promulgated by the United States Bankruptcy Court for the Eastern District of Louisiana (the "***Court***") and General Order 2019-4, Part IX (the "***Complex Case Procedures***"), seeking entry of an interim order (this "***Interim Order***") and a Final Order (as defined below), that, among other things:

    (a)      authorizes the Debtors, on an interim basis, to obtain a senior secured, postpetition, superpriority debtor-in-possession term loan facility in an aggregate principal

---

[1] An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4, No. 26-10681, ECF Doc. 4].

**Error! Unknown document property name.**

amount of up to $60,000,000, *plus* applicable fees, premiums, and other amounts and obligations (the "***DIP Facility***"; and the commitments thereunder, the "***DIP Commitments***") comprising up to $30,000,000 in a new-money term loan (the "***New Money DIP Loan***") and a dollar-for-dollar roll up of up to $30,000,000 in respect of the outstanding obligations under the Prepetition Loan Documents (the "***Roll-Up DIP Loan***" and together with the New Money DIP Loan under the DIP Facility, the "***DIP Loans***"), and pursuant to which (i) New Money DIP Loans of up to $10,000,000 and (ii) the Roll-Up DIP Loan (together, the "***Interim DIP Loans***") shall be made available upon the entry of this Interim Order, subject to and on the terms and conditions set forth therein and that certain *Debtor-in-Possession Term Loan Facility Summary of Terms and Conditions* attached as **Exhibit B** to the Motion (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "***DIP Term Sheet***"),[2] by and among the Debtors, the other Loan Parties, and the DIP Lender, and (iii) up to the full amount of the DIP Commitments *less* amount(s) drawn under the Interim DIP Loans (the "***Subsequent DIP Loans***" and, together with the Interim DIP Loans, the "***DIP Borrowings***" and, each, a "***DIP Borrowing***") shall be available upon the entry of the Final Order, in each case subject to the terms and conditions set forth in the DIP Orders and the other DIP Documents;

(b) authorizes the Debtors, on an interim basis, to: (i) execute, deliver, and perform under the DIP Term Sheet, and to perform all such other and further acts as may be required in connection therewith; (ii) incur all loans, advances, extensions of credit and financial accommodations, and pay all principal, interest, premiums or similar amounts, fees (including, without limitation, the Commitment Fee, the Exit Fee, and the Work Fee (in each case in accordance with and as defined in the DIP Term Sheet)), costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, whether or not such obligations arose before or after the Petition Date (as defined below), whenever the same shall become due, whether at stated maturity, by mandatory prepayment, declaration, acceleration, or otherwise, in each case, in accordance with the DIP Term Sheet and this Interim Order (collectively, the "***DIP Obligations***"); and (iii) perform such other and further acts as may be necessary, required, or desirable to implement and effectuate the terms of this Interim Order, the DIP Term Sheet, and the transactions contemplated thereunder;

(c) authorizes the Debtors, on an interim basis, to grant to the DIP Lender the DIP Liens (as defined below) in all DIP Collateral (as defined below), as set forth in this Interim Order, subject to the Carve Out (as defined below), and subject to the relative priorities set forth in this Interim Order;

(d) authorizes the Debtors, on an interim basis, to grant to the DIP Lender, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the

---

[2] Capitalized terms used but not defined in the Final Order shall have the meanings ascribed to such terms in the DIP Term Sheet or, as applicable, the other DIP Documents.

2

Bankruptcy Code, as well as liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code, as further described herein, on all DIP Collateral and all proceeds thereof (including, Avoidance Action Assets (as defined below)), including, without limitation, all property constituting Cash Collateral (as defined below) (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtors in any deposit or securities account or accounts as of the Petition Date and any cash or cash equivalents received by the Debtors after the Petition Date as proceeds of the Prepetition Collateral (as defined below)) against the Debtors in respect of all DIP Obligations, subject to the Carve Out and other priorities, as set forth in this Interim Order;

(e)     authorizes the Debtors, on an interim basis, to use the proceeds of the DIP Facility and the DIP Collateral, including Cash Collateral, in accordance with the terms and conditions set forth in this Interim Order, the DIP Credit Agreement, and the other DIP Documents, and strictly in accordance with the Budget, subject to any variances expressly permitted under the DIP Credit Agreement (the "*Permitted Variance*");

(f)     grants adequate protection, as and to the extent set forth herein, to the Prepetition Lender (as defined below) to protect against any Diminution in Value (as defined below) of its Prepetition Liens in the Prepetition Collateral, including Cash Collateral;

(g)     modifies the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Interim Order and the DIP Term Sheet, as set forth herein or therein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, and providing for the immediate effectiveness of this Interim Order;

(h)     waives any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order and provides for the immediate effectiveness of this Interim Order;

(i)     approves certain stipulations, waivers, and releases by the Debtors (and their applicable related parties and representatives) with respect to, *inter alia*, (i) the DIP Lender, the DIP Term Sheet, the DIP Liens, and the DIP Obligations, and (ii) subject to paragraph 23 hereof, the Prepetition Lender, the Prepetition Loan Documents, the Prepetition Liens and the Prepetition Secured Obligations (each as defined below);

(j)     subject to entry of the Final Order, approves the Debtors' waiver of the right to surcharge the DIP Collateral as to the DIP Lender and the Prepetition Lender pursuant to section 506(c) of the Bankruptcy Code or otherwise;

3

(k)    subject to entry of the Final Order, approves the Debtors' waiver of (i) the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral and the Prepetition Collateral, and (ii) any right under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(l)    (i) approves, on a final basis, the Commitment Fee, the Exit Fee, and the Work Fee, in this Interim Order, and further (ii) authorizes and directs the Debtors to make non-refundable, irrevocable, and final payments on account of the principal, interest, fees (including, the Commitment Fee, the Exit Fee, and the Work Fee, in each case, in accordance with the DIP Term Sheet), expenses and other amounts payable under the DIP Term Sheet, each as applicable, as such become due and payable, all to the extent provided in, and in accordance with, this Interim Order and the DIP Term Sheet; and

(m)    schedules a final hearing (the "*Final Hearing*") on the Motion to consider entry of a final order (the "*Final Order*") authorizing the relief requested in the Motion on a final basis and approving the form of notice with respect to such Final Hearing, which order shall be in form and substance and on terms and conditions acceptable in all respects to the DIP Lender.

The Court, having considered the Motion, the DIP Term Sheet, the exhibits attached thereto, the declarations filed in support thereof, the evidence submitted, and the arguments proffered or adduced at the interim hearing held before this Court on March 25, 2026 (the "*Interim Hearing*"), and upon the record of the Chapter 11 Cases; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable, and represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

4

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. *Petition Date*. On March 23, 2026 (the "***Petition Date***"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing the Chapter 11 Cases.

B. *Debtor-in-Possession*. The Debtors continue to manage and operate their respective businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases.

C. *Committee Formation*. As of the date hereof, the Office of the United States Trustee (the "***U.S. Trustee***") has not appointed an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "***Committee***").

D. *Jurisdiction and Venue*. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Rules 2002, 4001, 6003, 6004, 9013 and 9014, the Complex Case Procedures, and Local Rules 2002-1, 4001-2 and 9013-1.

E. *Debtor's Stipulations, Releases and Acknowledgements Regarding DIP Lender and the DIP Facility*. In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lender to provide the DIP Facility, the Debtors, for themselves, their estates, and all representatives of the estates, admit, stipulate, acknowledge and agree as follows:

(i) No Control. The DIP Lender does not control the Debtors or their respective properties or operations, does not have authority to determine the manner in which the Debtors' operations are conducted, and is not a control person or insider (as defined in the Bankruptcy Code) of any Debtor or any of its affiliates by virtue of any of the actions taken in connection with this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims (as defined below), the DIP Collateral, the DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder.

(ii) No Claims, Defenses, or Causes of Action. As of the date hereof, there exist no claims, defenses or any other Cause of Action[4] of any nature or description whatsoever that may be asserted by any Debtors, their respective estate, predecessors, successors and assigns, against the DIP Lender or any of its current, former and future affiliates, subsidiaries, funds or managed accounts, officers, directors, managers, members, equity holders, partners, principals, employees, representatives, agents, attorneys, advisors, consultants and other professionals, and the predecessors in interest, successors and assigns of each of the foregoing (collectively, the "***Representatives***"), in their capacities as such, in each case, arising from, in connection with, or related to this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet, or the transactions contemplated thereunder or hereunder.

(iii) Releases. Effective as of the date of entry of this Interim Order, each Debtor, on behalf of itself and its estate, to the maximum extent permitted by applicable law, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the DIP Lender and its Representatives (in their capacities as such) of and from any and all Causes of Action that such Debtor, its estate, predecessors, successors and assigns

---

[4] The term "***Cause of Action***" means any action, cause of action, claim, counter-claim, cross-claim, defense, account, objection, challenge, offset, setoff, demand, liability, responsibility, dispute, remedy, indebtedness, obligation, guaranty, right, interest, indemnity, assertion, allegation, suit, controversy, proceeding, loss, damage, injury, reimbursement obligation, attorneys' fees, costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, whether assertable directly or derivatively, including, without limitation, all legal and equitable theories of recovery, arising under the Bankruptcy Code or applicable non-bankruptcy law, whether local, state of federal U.S. or foreign common law, statute, law, rule, regulation, or by contract, of every nature or description whatsoever.

at any time had, now have or that their respective successors and assigns may have against the DIP Lender and its Representatives for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time prior to the date of this Interim Order, in each case, arising under, in connection with or related to this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet or the transactions contemplated thereunder or hereunder, including, without limitation, (a) any claim or Cause of Action seeking avoidance, whether under chapter 5 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state or federal statute, common law, or otherwise ("*Avoidance Actions*"), (b) any so-called "lender liability" or equitable subordination claims or defenses, (c) any claims or Causes of Action arising under the Bankruptcy Code, (d) any claims or Causes of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to this Interim Order, the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet or the transactions contemplated thereunder or hereunder, or (e) any claim or Cause of Action with respect to the validity, enforceability, extent, amount, perfection or priority of the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Term Sheet or the transactions contemplated thereunder or hereunder; provided, however, that nothing contained in this subparagraph (iii) shall relieve the DIP Lender from fulfilling any of its commitments under, and in accordance with, the DIP Term Sheet.

(iv)     Cash Collateral.  Any and all of the Debtors' cash, whether existing on the Petition Date or thereafter, wherever located (including, without limitation, all cash, cash equivalents and other amounts on deposit or maintained by the Debtors in any accounts with any depositary institution), whether as DIP Collateral or Prepetition Collateral, arising from the sale or other disposition of DIP Collateral or Prepetition Collateral, or proceeds of other DIP Collateral or Prepetition Collateral, or cash, rents, income, offspring, products, proceeds or profits generated from the DIP Collateral or Prepetition Collateral, constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "*Cash Collateral*") of the DIP Lender.

F.     *Debtors' Stipulations, Releases and Acknowledgements Regarding Prepetition Lender*.  Subject to entry of the Final Order, in requesting the DIP Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender to provide the DIP Facility, and in exchange for and in recognition of the priming of the Prepetition Liens and the consent (and/or deemed consent) of the Prepetition Lender to the use of its Cash Collateral, each Debtor, for itself, its estate and all representatives of the estate, admits, stipulates, acknowledges

and agrees as follows (subject to paragraph 23 of this Interim Order) (collectively, the admissions, stipulations, and acknowledgments and agreements set forth in this paragraph F, the "***Stipulations***"):

(i)      Prepetition Credit Facility.  Pursuant to the Second Amended and Restated Commercial Business Loan Agreement, dated as of October 28, 2022, (the "***Prepetition Credit Agreement***," and together with all other agreements, guarantees, pledge, collateral and security documents (including all mortgages and assignments of leases and rents), control agreements, instruments, certificates, notes, and other documents executed, recorded and/or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Credit Agreement) and that certain Forbearance Agreement, dated as of June 30, 2023, collectively, each as amended, restated, amended and restated, supplemented or otherwise modified, the "***Prepetition Loan Documents***"), by and among the Debtors and certain affiliates, as borrowers and/or guarantors (as applicable), and JMB, as assignee of Hancock Whitney Bank, as a lender (in such capacity, and collectively with its successors and assigns, the "***Prepetition Lender***"), the Prepetition Lender provided a revolving loan, certain term loans, and other financial accommodations to the Debtors and/or certain of their affiliates (all claims related thereto, the "***Prepetition Secured Claims***") and secured by the Collateral (as defined in the Prepetition Loan Documents).  As of the Petition Date, certain defaults and events of default had occurred and are continuing under the Prepetition Credit Agreement.

(ii)      Prepetition Secured Obligations.  As of the Petition Date, the Debtors and other obligors under the Prepetition Loan Documents were each justly and lawfully indebted to the Prepetition Lender without defense, claim, counterclaim, challenge or offset of any kind, in the aggregate amount of not less than $29,240,625.12 on account of principal amounts outstanding under the Prepetition Loan Documents, *plus* accrued but unpaid interest (including default interest) thereon, *plus* all fees, costs, expenses (including attorneys', financial advisors' and other professionals' fees and expenses), charges, disbursements, indemnification and reimbursement obligations (contingent or otherwise) and all other amounts that may be due or owing under the Prepetition Loan Documents (collectively, the "***Prepetition Secured Obligations***").

(iii)      Prepetition Liens.  Pursuant to the Prepetition Loan Documents, the Debtors and the obligors thereunder granted to the Prepetition Lender properly perfected continuing liens on and security interests in (collectively, the "***Prepetition Liens***") the collateral under the Prepetition Loan Documents (the "***Prepetition Collateral***").

(iv)      Validity and Enforceability of Prepetition Secured Obligations and Prepetition Liens.  As of the Petition Date, (a) the Prepetition Liens in the Prepetition Collateral (1) have been properly recorded and were valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral, (2) were granted to or for the benefit of the Prepetition Lender for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or the financial commitments

8

and other financial accommodations or consideration secured or obtained thereby, and (3) with respect to the Prepetition Liens, are senior with priority over any and all other liens on or security interests in the Prepetition Collateral, subject only to liens and security interests that were expressly permitted to be incurred under the Prepetition Loan Documents, to the extent such permitted liens and security interests were (x) in existence on the Petition Date, (y) valid, non-avoidable and properly perfected as of the Petition Date (or were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (z) senior in priority to the applicable Prepetition Liens); (b) the Prepetition Secured Obligations constitute legal, valid, non-avoidable and binding obligations of the Debtors and their estates, enforceable in accordance with the terms of the applicable Prepetition Loan Documents (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (c) no portion of the Prepetition Liens or the Prepetition Secured Obligations, and no payments made at any time to the Prepetition Lender, is subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including, without limitation, any Avoidance Action or any claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature or description, whether arising under the Bankruptcy Code, applicable non-bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, in each case, that may be asserted by the Debtors, their estates or any other person or entity; and (d) the Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code against the Debtors and their estates.

(v)     No Claims, Defenses, or Causes of Action.  As of the date hereof, there exist no claims, defenses or any other Cause of Action of any nature or description whatsoever that may be asserted by any Debtor, its estate, predecessors, successors and assigns, against the Prepetition Lender or any of its Representatives, in each case, arising from, in connection with, or related to this Interim Order, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents, or the Prepetition Collateral.

(vi)     Releases.  Effective as of the date of entry of the Final Order, but subject to paragraph 23 hereof, each Debtor, on behalf of itself and its estate, to the maximum extent permitted by applicable law, hereby absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Prepetition Lender and each of its Representatives (in their capacities as such) of and from any and all Causes of Action that such Debtor, its estates, predecessors, successors and assigns at any time had, now have, or that their respective successors and assigns may have against the Prepetition Lender and its Representatives for or by reason of any act, omission, matter, cause, or thing whatsoever arising at any time prior to the date of this Interim Order, in each case, arising under, in connection with, or related to this Interim Order, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations, or the transactions contemplated thereunder or hereunder, including, without limitation, (i) Avoidance Actions, (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or Causes of Action arising under the Bankruptcy Code, or (iv) any claims or Causes of Action seeking reduction, setoff, offset, recoupment,

9

recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, recovery, or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to this Interim Order, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Collateral, the Prepetition Secured Obligations, or the transactions contemplated thereunder or hereunder.

G.     *Roll-Up of Prepetition Secured Obligations into DIP Obligations*.  Upon entry of this Interim Order, and the funding of the Interim DIP Loans, the Prepetition Secured Obligations shall automatically, pursuant to the Roll-Up DIP Loan, be deemed exchanged and converted on a cashless basis into and constitute DIP Obligations.  The Prepetition Lender would not otherwise consent to the use of its Cash Collateral or the subordination of the Prepetition Liens to the DIP Liens, and the DIP Lender would not be willing to provide the DIP Facility or extend credit to the Debtors without the inclusion of the Roll-Up DIP Loan in the DIP Facility.  The roll-up will enable the Debtors to obtain urgently needed financing to administer their Chapter 11 Cases, fund their operations, and maximize value for all parties in interest.  The conversion (or "roll up") shall be authorized as compensation for, and in consideration for, and solely on account of, the agreement of the Prepetition Lender and the DIP Lender, as applicable, to fund amounts, and provide other considerations to the Debtors under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Secured Obligations.

H.     *Good Cause*.  Good cause has been shown for the entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The relief requested in the Motion is fair and reasonable and in the best interest of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets.

I.     *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have an immediate and critical need to use Cash Collateral and to obtain postpetition financing pursuant to

the DIP Facility, in each case, on an interim basis, in order to, among other things, (i) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Cases; (ii) fund any obligations benefiting from the Carve Out; (iii) continue the orderly continuation of the operation of their business for the benefit of all their stakeholders; (iv) maintain business relationships with customers, vendors, and suppliers; (v) make payroll for their employees; and (vi) satisfy other working capital and operational needs, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Term Sheet, including the Budget (subject to Permitted Variance). The Debtors' access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the DIP Facility and the use of Cash Collateral is necessary and vital to, among other things, preserve and maximize the value of the Debtors and their estates. The Debtors and their estates will be immediately and irreparably harmed if the financing under the DIP Facility is not obtained pursuant to the terms of this Interim Order and, as applicable, the DIP Term Sheet, or if the Debtors are unable to use Cash Collateral. Entry of this Interim Order is necessary and appropriate to avoid such harm to the Debtors, their estates, and other parties in interest.

J. *No Credit Available on More Favorable Terms*. The Debtors are unable to obtain financing or other financial accommodations from sources other than the DIP Lender on terms more favorable than those provided under the DIP Facility, the DIP Term Sheet and this Interim Order. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors are also unable to obtain adequate secured credit for money borrowed under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without, among other things, the Debtors granting (i) the DIP Liens on all DIP Collateral, (ii) the DIP Superpriority Claims, (iii) the rights, benefits and protections to the

11

DIP Lender, and (iv) the respective Adequate Protection Liens and the Adequate Protection Claims to the Prepetition Lender, in the case of each of the foregoing, upon the terms and conditions set forth in this Interim Order and in the DIP Term Sheet. After considering all available alternatives, the Debtors have properly concluded, in the exercise of each of their sound business judgment, that the DIP Facility represents the best source of debtor-in-possession financing available at this time and is in the best interests of all stakeholders.

K.      *Use of Proceeds of DIP Facility and Cash Collateral*.  As a condition to providing the DIP Facility and their consent to the use of Cash Collateral, the DIP Lender and the Prepetition Lender require, and the Debtors have agreed, that all proceeds of the DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes and in the amounts expressly permitted in the Budget (subject to the Permitted Variance), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay adequate protection payments to the extent set forth herein, and (iv) to pay professional fees and expenses in accordance with this Interim Order, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the DIP Term Sheet, including the Budget (subject to the Permitted Variance).

L.      *Adequate Protection*.  Pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, the Prepetition Lender is, subject to what is permitted by the Bankruptcy Code, entitled to adequate protection against any postpetition diminution in value of the Prepetition Lender's liens and interests in the Prepetition Collateral (including Cash Collateral) resulting from, any diminution in the value of its liens or interests in the Prepetition Collateral (collectively, the "**Diminution in Value**"), as set forth in this Interim Order and the DIP Term Sheet.  Based on the Motion and the evidence filed in support of the Motion, and the record presented to the Court in

12

connection with the Interim Hearing, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) set forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

M.     *Prepetition Lender's Consent*.    The Prepetition Lender has consented to the Debtors' use of Prepetition Collateral (including Cash Collateral), the Debtors' entry into the DIP Facility, the incurrence of the DIP Liens (including the priming of the Prepetition Liens), the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Claims, in each case, solely in accordance with and subject to the terms and conditions set forth in this Interim Order and the DIP Term Sheet.

N.     *Limitation on Charging Expenses against Collateral*.    As a material inducement to the DIP Lender's and Prepetition Lender's agreement that their respective liens and superpriority claims shall be subject to payment of the Carve Out and, as applicable, Permitted Priority Liens, and subject to entry of the Final Order, the DIP Lender and Prepetition Lender are entitled to (i) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to (a) the DIP Collateral and the DIP Obligations in favor of the DIP Lender and (b) the Prepetition Collateral and the Prepetition Secured Obligations in favor of the Prepetition Lender; (ii) a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the Prepetition Lender; and (iii) a waiver of the provisions of section 506(c) of the Bankruptcy Code with respect to the DIP Collateral and the Prepetition Collateral.

O.     *Proper Exercise of Business Judgment*.    Based on the Motion, the evidence submitted, and the record presented to the Court at the Interim Hearing, (i) the terms of the DIP Facility, (ii) the terms of adequate protection granted to the Prepetition Lender hereunder, and

(iii) the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order, (a) were negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and the Prepetition Lender, (b) are fair, reasonable, and the best available to the Debtors under the circumstances, (c) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (d) are supported by reasonably equivalent value and fair consideration. Absent access to the DIP Facility and the ability to continue to use Cash Collateral upon the terms set forth in this Interim Order, the DIP Term Sheet, including the Budget (subject to the Permitted Variance), the Debtors, their estates, their creditors, and other parties-in-interest will be seriously, immediately, and irreparably harmed.

P. *Good Faith*. The DIP Facility and the terms of the DIP Term Sheet, the terms on which the Prepetition Lender has consented to the Debtors' use of Cash Collateral, and this Interim Order have been negotiated in good faith and at arm's length among the Debtors, the DIP Lender, the Prepetition Lender, and each of the foregoing parties' respective Representatives, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Facility, the DIP Term Sheet and this Interim Order, including, without limitation, all loans, advances, extensions of credit and other financial accommodations made to and guarantees issued pursuant to the DIP Term Sheet, shall each be deemed to have been extended by the DIP Lender, the Prepetition Lender (as applicable) and each of their respective affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits and protections granted to the DIP Lender and the Prepetition Lender (and each of the successors and assigns thereof) pursuant to this Interim Order and the DIP Term Sheet (including, without limitation, all DIP Obligations, DIP Liens, DIP Superpriority

14

Claims, Adequate Protection Liens, and Adequate Protection Claims), shall be entitled to the protection of section 364(e) of the Bankruptcy Code to the fullest extent available under applicable law.

Q.     *Initial Budget*.  The Debtors have prepared and delivered to the DIP Lender and its advisors an initial budget, a copy of which is attached to this Interim Order as **Exhibit 1** hereto (together with any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet and the other DIP Documents, the "***Initial DIP Budget***").  The Initial DIP Budget reflects, among other things, for the four-week period commencing on or around the week of entry of this Interim Order, the Debtors' projected operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each one-week period covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet, and such modified, amended, extended, and/or updated budget, once approved (or deemed approved) by the Debtors and the DIP Lender, in consultation with the Committee, if any, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget (including any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet or the DIP Credit Agreement, as applicable) shall constitute, without duplication, an "***Budget***").  For purposes of this Interim Order, the Initial DIP Budget shall be the Budget (unless and until such budget is modified in accordance with the DIP Term Sheet).  The Budget has been prepared by the Debtors, their management, and their advisors.  The Debtors believe that the Budget is reasonable under the circumstances.  The DIP Lender is relying, in part, on the Debtors' agreement to comply with the Budget (subject only to the Permitted Variance) and the terms of

this Interim Order and the other DIP Documents in determining to enter into the DIP Facility and to consent to the use of Cash Collateral provided for herein.

R.        *Notice*.  Notice of the Motion and the Interim Hearing complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c), and 9014, the Complex Case Procedures, and the Local Rules.

S.        *Immediate Entry*.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and 6003, the Complex Case Procedures, and the Local Rules.  Unless the relief set forth in this Interim Order is granted, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and the use of Prepetition Collateral (including Cash Collateral) upon the terms set forth in this Interim Order and the DIP Term Sheet is consistent with the Debtors' exercise of their fiduciary duties.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and the Local Rules.  The Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-1(b).

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the declarations filed in support of the Motion, the evidence adduced at the Interim Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.        *Motion Granted*.  The Motion is hereby granted, on an interim basis, upon the terms and conditions set forth in this Interim Order and the DIP Term Sheet.  Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights inconsistent with this Interim Order,

are hereby denied and overruled. This Interim Order shall become effective and enforceable immediately upon its entry.

2. *Authorization of DIP Facility and DIP Term Sheet.*

(a) Authorization of DIP Term Sheet. The Debtors are authorized to enter into the DIP Facility on an interim basis. The Debtors are hereby authorized to (i) execute, deliver and perform all of its obligations under the DIP Term Sheet, the other DIP Documents (as defined in the DIP Term Sheet) (as the case may be), and this Interim Order; and (ii) execute, deliver and perform under any and all other instruments, certificates, agreements and other documents (including, without limitation, the execution and/or recordation of collateral, pledge and security documents, mortgages and deeds of trust (if applicable) and financing statements), and perform all such other and further acts that, may be necessary, required or desirable for the Debtors to perform their obligations under the DIP Facility, the DIP Term Sheet, the other DIP Documents (as the case may be), and this Interim Order and to implement the transactions contemplated thereunder and hereunder.

(b) Authorization to Borrow Interim DIP Loans; Use of Cash Collateral. The Debtors are hereby authorized to borrow the Interim DIP Loans, including the Roll-Up DIP Loan, (*plus* applicable interest, premiums (including, without limitation, the Commitment Fee and the Exit Fee, which are approved on a final basis), fees (including professional fees and expenses), costs, expenses, charges and other amounts payable hereunder and under the DIP Term Sheet), subject to the terms and conditions (including any payment priorities and any availability limitations and conditions precedent to such DIP Borrowing) set forth in the DIP Term Sheet and this Interim Order. The Debtors are hereby authorized to use the proceeds of the DIP Borrowings under the DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly

permitted in the Budget (subject to the Permitted Variance), the DIP Term Sheet, and this Interim Order. The refinancing of the Prepetition Secured Obligations pursuant to the terms of this Interim Order and the DIP Documents is approved, and all such Prepetition Secured Obligations shall be, and shall be deemed to constitute, DIP Obligations under the DIP Facility.

(c) <u>DIP Fees and Expenses; Indemnification</u>. The Debtors are hereby authorized and directed to pay, as and when due, any and all (i) fees, premiums or other payments payable under the DIP Term Sheet (including, without limitation, the Commitment Fee, which fee shall be paid from the proceeds of the Interim DIP Loans), (ii) amounts due (or that may become due) in respect of the indemnification obligations under the DIP Term Sheet, and (iii) costs, expenses and disbursements of the DIP Lender payable under the DIP Term Sheet and this Interim Order, including, without limitation, the reasonable and documented fees and expenses of (A) Norton Rose Fulbright US LLP and Jones Walker LLP, as co-counsel to the DIP Lender, and (B) any other accountants, consultants, attorneys, advisors, appraisers, or other professionals that may be retained by the DIP Lender with the consent of the Debtors, such consent not to be unreasonably withheld or delayed (the foregoing subclauses (A)-(B), the "***DIP Lender Advisors***"), in the case of each of the foregoing clauses (i)-(iii), whether or not such payments, premiums, fees, costs, expenses or other amounts arose before or after the Petition Date and whether or not the transactions contemplated herein or in the DIP Term Sheet are consummated through no fault of the DIP Lender, without the need to file fee or retention applications with the Court, without the need to comply with the U.S. Trustee's fee guidelines, and all such payments, premiums, fees, costs, expenses and other amounts are hereby approved; provided that the indemnification under (ii) is authorized only and any objections with respect to any amounts owed thereunder are hereby reserved. In the case of the foregoing clause (iii), any invoices submitted for payment may be in

summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be promptly paid by the Debtors, on a monthly basis as appropriate, upon receipt of any such invoices, subject to paragraph 11 with respect to fees and expenses incurred after the Interim DIP Loans.

3. *DIP Obligations*.

(a) Upon execution and delivery of the DIP Term Sheet, the DIP Term Sheet shall constitute valid, binding, enforceable, and non-avoidable obligations of the Debtors, and shall be fully enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of the Chapter 11 Cases or any such successor case (the "*Successor Case*"), in each case, in accordance with the terms of the DIP Term Sheet and this Interim Order.

(b) Upon execution and delivery of the DIP Term Sheet, the Debtors shall be liable for all DIP Obligations, including, without limitation, all loans, advances, extensions of credit, financial accommodations, principal, interest, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other obligations or amounts, whether or not such obligations arose before or after the Petition Date, whenever the same shall become due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, in each case, which may now

19

or from time to time be owing by the Debtors to the DIP Lender under the DIP Term Sheet or this Interim Order.  The DIP Obligations shall be due and payable, without notice or demand, the DIP Commitments shall automatically terminate, and the use of Cash Collateral shall automatically cease, on the DIP Termination Date (as defined below) (subject to paragraph 20(b) hereof).

(c)     All obligations incurred, payments made, and transfers or grants of security and liens set forth in this Interim Order and the DIP Term Sheet by the Debtors are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of liens and security interests under this Interim Order or the DIP Term Sheet to the DIP Lender or the Prepetition Lender (including, without limitation, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, or the Adequate Protection Claims) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action, including any Avoidance Action or any other claim or Cause of Action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (in each case in accordance with and subject to the fee review procedures set forth in paragraph 11 hereof).

4.     *No Obligation to Extend Credit*.  The DIP Lender shall have no obligation to make any loan or advance under the DIP Term Sheet, unless all of the conditions precedent to the making

of such loan or advance by the DIP Lender under the DIP Term Sheet and this Interim Order have been satisfied in full (or waived) in accordance with the terms of the DIP Term Sheet and this Interim Order, as applicable. Notwithstanding anything contained in this Interim Order or the DIP Term Sheet to the contrary, in no event shall the aggregate principal amount of the DIP Loans available or outstanding under the DIP Term Sheet at any time (after giving effect to all DIP Borrowings previously made or requested) exceed the total DIP Commitments.

5. *No Duty to Monitor Compliance.* Neither the DIP Lender nor the Prepetition Lender shall have any obligation or responsibility to monitor the Debtor's use of DIP Collateral, Prepetition Collateral, or Cash Collateral, and each of the DIP Lender and Prepetition Lender may rely upon the Debtors' representations that the use of DIP Collateral, Prepetition Collateral, and Cash Collateral complies with and is in accordance with the requirements of this Interim Order and the DIP Term Sheet.

6. *DIP Liens.*

(a) <u>DIP Liens</u>. Effective upon entry of this Interim Order, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreements or other action to take possession or control of any DIP Collateral), as security for the prompt and complete payment and performance of all DIP Obligations when due (whether at stated maturity, by acceleration or otherwise), the DIP Lender is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "***DIP Liens***") in

21

all DIP Collateral, subject and subordinate to the Carve Out and Permitted Prior Liens, and subject to the relative priorities set forth in paragraph 6(c) of this Interim Order.

(b)      DIP Collateral.  The term "**DIP Collateral**" means all of the Debtors' right, title and interest in, to and under all of the Debtors' assets and properties, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located:  all assets and property of the Debtors (and their estates), real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including the Prepetition Collateral and the LLC Interest (as defined in the DIP Term Sheet), all contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, accounts receivables, chattel paper, letters of credit and letter of credit rights, investment property (including, without limitation, all equity interests owned by the Debtors in its existing and future subsidiaries, if any), limited liability company interests (including, without limitation, Bertucci's 49.9% interest in Luhr Crosby, LLC), commercial tort claims, arbitration awards, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, fixtures, all interests in leaseholds and real properties, all patents, copyrights, trademarks, all trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), together with all books and records relating to the foregoing, all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (as such terms are defined in the Uniform Commercial Code as in effect from time to time in the State of New York) and (i) effective upon entry of the Interim Order, all causes of actions under section 549 of the Bankruptcy Code to recover any postpetition transfer

of DIP Collateral and any proceeds thereof and (ii) effective upon entry of the Final Order, all other Avoidance Actions and the proceeds thereof (collectively, the "*Avoidance Action Assets*").

(c)　Priority of DIP Liens. The DIP Liens shall have the following ranking and priorities (subject in all cases to the Carve Out):

(i)　*First Priority Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected first priority liens and security interests in all DIP Collateral that is not subject to a valid, perfected, non-avoidable lien or security interest (including any such lien or security interest that is perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code), for the avoidance of doubt, subject to a Final Order, Avoidance Action Assets (collectively, the "*Unencumbered Property*").

(ii)　*Junior DIP Liens*.  Pursuant to sections 364(c)(3) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral that is subject to a Permitted Priority Lien[5] (all such DIP Collateral, the "*DIP Junior Collateral*," all DIP Collateral that is not DIP Junior Collateral, collectively, the "*DIP Senior Collateral*"), which DIP Liens shall be subject and subordinate only to Permitted Priority Liens and the Carve Out.

(iii)　*Priming DIP Liens*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Senior Collateral (including, without limitation, all Prepetition Collateral and the LLC Interest) that is subject to a valid, perfected, non-avoidable lien (including, for the avoidance of doubt, the Prepetition Liens) or security interest (including any such liens or security interests that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code), which DIP Liens shall be subject and subordinate only to the Carve Out.

(iv)　*DIP Liens Senior to Other Liens*.  Except to the extent expressly permitted hereunder, the DIP Liens and the DIP Superpriority Claims shall not be made subject or subordinate to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case, including any lien, security interest or claim granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, (B) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or

---

[5]　The term "*Permitted Priority Lien*" remains subject to ongoing review by the parties, provided that such term shall be limited to the applicable vessel liens.

23

otherwise, (C) any intercompany or affiliate claim, lien or security interest of the Debtors or their affiliates, or (D) any other lien, security interest or claim arising under section 363 or 364 of the Bankruptcy Code granted on or after the date hereof.

(d)　　To the fullest extent permitted by the Bankruptcy Code, any provision of any lease, license, contract or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person or entity, in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest, or proceeds thereof or other collateral related thereto, shall have no force or effect with respect to the transactions granting the DIP Liens or the Adequate Protection Liens in any such fee, leasehold, interest, or other collateral, or in the proceeds of any assignment and/or sale thereof by the Debtors in favor of the DIP Lender or the Prepetition Lender in accordance with the DIP Term Sheet and this Interim Order.

7.　　*DIP Superpriority Claims*.　Pursuant to and the extent permitted by sections 364(c)(1) and 364(e) of the Bankruptcy Code, the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtors in the Chapter 11 Cases and any Successor Case on account of the DIP Obligations, with priority over any and all other administrative expense claims and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, any adequate protection claims, including the Adequate Protection Claims, and all administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546, 726, 1113 or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code (the "***DIP Superpriority Claims***").　The DIP Superpriority Claims shall (x) for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and (y) be subject

and subordinate to the Carve Out. The DIP Superpriority Claims shall be payable by the Debtors and shall have recourse to all DIP Collateral, subject only to the Carve Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

8. *Use of DIP Collateral, Prepetition Collateral and Cash Collateral.*

(a) The Debtors are hereby authorized to use the proceeds of DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Budget (subject to the Permitted Variance) and subject to the terms and conditions set forth in the DIP Term Sheet and this Interim Order. Unless otherwise agreed to by the DIP Lender, except on the terms and conditions of this Interim Order and the DIP Term Sheet, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

(b) Without the prior written consent of the DIP Lender or order of the Court after notice and a hearing, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as expressly permitted by the DIP Term Sheet. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied to repay the DIP Obligations as required by this Interim Order and the DIP Term Sheet. The Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to immediately pay all proceeds of any such sale to the DIP Lender to satisfy the DIP Obligations in accordance with this Interim Order and the DIP Term

Sheet until the DIP Obligations are Paid in Full,[6] and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon such payment of DIP Obligations (except to the extent otherwise agreed in writing by the DIP Lender), in each case subject to the Carve Out.  For the avoidance of doubt, notwithstanding anything to the contrary in any other order or agreement (written, verbal, or otherwise), all cash proceeds derived from the sale, transfer, lease, encumbrance, or other disposition of any portion of the DIP Collateral (or entry into any binding agreement to do so) or of all or substantially all of the Debtors' assets outside the ordinary course of the business shall be used for the satisfaction of the DIP Obligations until the DIP Obligations have been Paid in Full, and none of the cash proceeds derived from such sale, transfer, lease, encumbrance, or other disposition of such portion of the DIP Collateral (or entry into any binding agreement to do so) may be used for (x) the payment of any fees or expenses of any Professional Persons or (y) the payment of any fees, expenses, or costs of the sale transaction until the DIP Obligations have been Paid in Full.

9. *Budget and Variance Reporting*.  The Debtors shall comply with the budget and variance reporting obligations set forth in the DIP Term Sheet.

10. *Adequate Protection*.  The Prepetition Lender is entitled, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of its Prepetition Liens in Prepetition Collateral (including Cash Collateral), as follows (the liens, security interests, and other obligations set forth in this paragraph 10, are collectively referred to herein as the "***Adequate Protection Obligations***"):

---

[6] The term "***Paid in Full***" or "***Payment in Full***" means, with respect to the DIP Obligations , the irrevocable and indefeasible payment in full in cash of all DIP Obligations, other than continuing indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently, and finally expired or shall have been terminated, cancelled, and discharged.

(a)  Adequate Protection for Prepetition Lender.  The Prepetition Lender is hereby granted the following adequate protection of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral):

(i)  *Adequate Protection Claims*.  The Prepetition Lender, is hereby granted, to the extent and in the amount of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral), superpriority administrative expense claims contemplated by section 507(b) of the Bankruptcy Code against the Debtors in the Chapter 11 Cases (the "***Adequate Protection Claims***").  The Adequate Protection Claims shall be subject and subordinate to the Carve Out and the DIP Superpriority Claims.

(ii)  *Adequate Protection Liens*.  The Prepetition Lender is hereby granted, effective and automatically perfected as of the Petition Date, and without the necessity of the execution, recordation or filing of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any lockbox or deposit account control agreement or other action to take possession or control of any DIP Collateral), to the extent and in the amount of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral, valid, binding, enforceable and perfected postpetition liens and security interests in all DIP Collateral (the "***Adequate Protection Liens***").  The Adequate Protection Liens shall be subject and subordinate to the Carve Out, the DIP Liens, and the Permitted Prior Liens.

(b)  Notwithstanding anything to the contrary contained herein, no party may seek to enforce, collect upon, or liquidate the Adequate Protection Claims and/or the Adequate Protection Liens until the DIP Obligations have been indefeasibly Paid in Full (or otherwise paid to the extent of their priority entitlement).

11.  *Fees and Expenses*.  The invoices with respect to the professional fees and expenses payable under paragraph 2(c) of this Interim Order shall not be required to comply with the U.S. Trustee guidelines, nor shall the applicable professionals be required to file fee applications with the Court with respect to any fees or expenses payable hereunder, and all invoices therefor may be in summary form only (and shall not be required to contain individual time entries, and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client

27

privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall, by email, be provided to counsel to the Debtors, counsel to any Committee and the U.S. Trustee (the "*Fee Notice Parties*"); provided, however, if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "*Fee Objection Period*"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any event, no later than three (3) business days after expiration of the Fee Objection Period; provided, further, however, that if a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, the undisputed portion shall promptly be paid by the Debtors, and in any event, no later than three (3) business days after expiration of the Fee Objection Period, and the disputed portion shall only be paid upon resolution of such objection by the applicable parties or by order of the Court. Any hearing on an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice shall be limited to reasonableness of the fees, costs and expenses that are the subject of such objection. Subject to this paragraph 11, none of the adequate protection payments required to be made pursuant to this Interim Order shall be subject to claim, counterclaim, challenge, setoff, subordination, recharacterization, defense, avoidance or disgorgement in the Chapter 11 Cases or any Successor Case.

12. *Reservation of Rights*. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Lender to seek any other or supplemental relief in respect of

the Debtor; (b) the rights of the DIP Lender under the DIP Term Sheet, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Lender or the Prepetition Lender. Notwithstanding anything contained herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose (on an emergency basis if need be) any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

13. *Amendments*. Without the need for further notice to or approval of this Court, the Debtors are authorized to execute, deliver and perform under, one or more amendments, waivers, consents, or other modifications to and under the DIP Term Sheet, in each case, in accordance with the provisions of the DIP Term Sheet governing amendments thereto (and otherwise in form and substance acceptable to the DIP Lender); provided, however, that any amendment that (a) shortens the maturity of the extensions of credit thereunder; (b) increases the aggregate commitments thereunder; (c) increases the rate of interest or any fee payable thereunder; or (d) any other material amendment, waiver, consent or other modification (each, a "***Material DIP Amendment***"), shall be subject to approval of the Court.

14. *Modification of Automatic Stay*. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without further notice to or order of this

Court, to permit: (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to incur all liabilities and obligations, including all of the DIP Obligations, to the DIP Lender as contemplated under this Interim Order and the DIP Term Sheet; (c) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Lender may request to assure the perfection and priority of the Adequate Protection Liens; (d) the Debtors to incur all liabilities and obligations, including all Adequate Protection Obligations, to the Prepetition Lender as contemplated under this Interim Order and the applicable Prepetition Loan Documents; (e) the Debtors to pay all amounts required hereunder and under the DIP Term Sheet; (f) the Debtors to retain and apply payments made in accordance with the terms of this Interim Order and the DIP Term Sheet; (g) subject to paragraph 20(b) of this Interim Order, the DIP Lender to exercise, upon the occurrence and during the continuance of any DIP Termination Event (as defined below), all rights and remedies provided for in this Interim Order, the DIP Term Sheet or applicable law; (h) to perform under this Interim Order and the DIP Term Sheet, and to take any and all other actions that may be required, necessary, or desirable for the performance by the Debtors under this Interim Order and the DIP Term Sheet and the implementation of the transactions contemplated hereunder and thereunder; and (i) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Term Sheet.

15.     *Perfection of DIP Liens and Adequate Protection Liens*.

(a)     This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Term Sheet, including, without limitation, the DIP Liens and the Adequate

Protection Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Lender and the Prepetition Lender to the priorities granted herein (each, a "***Perfection Act***") (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b) Without in any way limiting the automatically effective perfection of the liens granted hereunder and the DIP Term Sheet (including, without limitation, the DIP Liens and the Adequate Protection Liens), the DIP Lender and the Prepetition Lender, as applicable, are hereby authorized, but not required, in, as they may determine for any reason, to execute, file and record (and to execute in the name of the Debtors, as its true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) or otherwise effectuate any Perfection Act or to take any other action in order to attach, validate, perfect, and preserve the liens and security interests granted to them hereunder or under the DIP Term Sheet to otherwise evidence such liens and security interests in all DIP Collateral; provided, however, that, whether or not the DIP Lender or the Prepetition Lender determine to execute, file, record or otherwise effectuate any Perfection Act with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to objection, challenge, dispute, avoidance, recharacterization or subordination as of the entry of this Interim Order. Upon the request of the DIP Lender, without

31

any further consent of any party, the DIP Lender and the Debtors are authorized, and the Debtors are directed, to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the entry of this Interim Order.

(c) A certified copy of this Interim Order may be (but need not be) filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Lender or the Prepetition Lender to take all actions, as applicable, referenced in this paragraph.

16. *Protection of DIP Lender's Rights*.

(a) Until the DIP Obligations are Paid in Full (or to the extent of their priority), the Prepetition Lender shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens or security interests granted to the Prepetition Lender pursuant to the Prepetition Loan Documents or this Interim Order or otherwise seek to exercise or enforce any rights or remedies against any DIP Collateral, Prepetition Collateral, or the Debtors, including, without limitation, any exercise of setoff or recoupment; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens or claims on, such DIP Collateral or and the proceeds thereof, to the extent such transfer, disposition, sale, or release is authorized hereunder, or under the DIP Term Sheet and the proceeds thereof are applied in accordance with the priorities set forth in this Interim Order; (iii) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or otherwise

32

take any action to perfect its security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Lender has filed financing statements or other documents in respect of the liens granted pursuant to this Interim Order or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or securities interests as of the Petition Date; (iv) may not credit bid its obligations for any of the Debtors' assets pursuant to section 363 of the Bankruptcy Code or otherwise, unless such credit bid provides that the DIP Obligations (or the DIP Obligations having priority with respect to the assets to be sold) will be Paid in Full upon consummation of any sale or if the DIP Lender provides its prior written consent; and (v) deliver or cause to be delivered, at the Debtors' cost and expense (for which the Prepetition Lender shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of DIP Collateral subject to any sale or disposition authorized hereunder or under the DIP Term Sheet. The Prepetition Lender shall not, directly or indirectly, (A) contest, or support any other Person in contesting, in any proceeding, the extent, validity, attachment, priority, or enforceability of any DIP Lien held by the DIP Lender in the DIP Collateral (or the extent, validity, allowability, or enforceability of any DIP Obligations secured thereby or purported to be secured thereby) or the provisions of the DIP Term Sheet or this Interim Order, (B) take any action that would restrain, hinder, limit, delay or otherwise interfere with the exercise of any rights or remedies by the DIP Lender, or (C) contest, object to or support any other Person in contesting or objecting to the manner in which the DIP Lender seeks to enforce or collect the DIP Obligations, the DIP Superpriority Claims or the DIP Liens or any amendment, waiver or modification of the DIP Term Sheet.

(b)     To the extent the Prepetition Lender has been noted as a secured party on any security document or otherwise has possession of or control with respect to any Prepetition Collateral, then the Prepetition Lender shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Lender, and the Prepetition Lender shall comply with the instructions of the DIP Lender with respect to the exercise of such possession or control.

(c)     In the event that the Prepetition Lender or, subject to entry of the Final Order, any other person or entity, in each case, that holds a lien on or security interest in DIP Collateral that is junior or otherwise subordinate to the DIP Liens receives any DIP Collateral or proceeds of DIP Collateral, or receives any payment on account of such lien or security interest in the DIP Collateral, (whether in connection with the exercise of any right or remedy (including setoff), payment or distribution from the Debtors, mistake, or otherwise), prior to the Payment in Full of all DIP Obligations (or the portion of the DIP Obligations having priority with respect to such payment), such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lender, and shall immediately turn over all such proceeds on account of DIP Obligations having priority to the DIP Lender in the same form as received, with any necessary endorsements, for application in accordance with the DIP Term Sheet and this Interim Order.  The DIP Lender is hereby authorized to make any such endorsement as agent for the Prepetition Lender.  This authorization is coupled with an interest and is irrevocable.

(d)     Except as expressly provided herein or in the DIP Term Sheet, no claim or lien having a priority senior to or *pari passu* with those granted to the DIP Lender or Prepetition Lender by this Interim Order shall be granted or permitted while any of the DIP Obligations remain

outstanding.  Except as expressly provided in this Interim Order or the DIP Term Sheet, each of the DIP Liens and the DIP Superpriority Claims: (A) shall not be made junior or subordinated to or *pari passu* with (i) any lien, security interest or claim heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case, whether under section 364(d) of the Bankruptcy Code or otherwise, (ii) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, (iii) any lien arising after the Petition Date including, without limitation, any lien or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, or (iv) any intercompany or affiliate lien or claim; and (B) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

17.     *Maintenance of DIP Collateral*.  Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by the DIP Lender), the Debtors shall continue to maintain all property, operational, and other insurance as required and as specified in the DIP Term Sheet. Upon the entry of this Interim Order, the DIP Lender shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (including all property damage and business interruption insurance policies of the Debtors, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the Payment in Full of all DIP Obligations, and *second*, to the payment of the Prepetition Secured Obligations, to the extent applicable. Notwithstanding the foregoing, the Debtors and/or the Prepetition Lender shall take any actions

reasonably requested by the DIP Lender to have the DIP Lender added as an additional insured and lenders loss payee on each such insurance policy.

18. *Cash Management*. Until such time as all DIP Obligations are Paid in Full, the Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order and any order of the Court authorizing the continued use of the cash management system that is acceptable to the DIP Lender. The Debtors shall not open any new deposit or securities account that is not subject to the liens and security interests of the DIP Lender (in which case it shall be subject to the lien priorities and other provisions set forth in this Interim Order), excluding any Professional Fees Account.

19. *Reporting; Access to Records*. The Debtors shall provide the DIP Lender and DIP Lender Advisors with all reporting, management calls, access to books and records and other information required to be provided to the DIP Lender under the DIP Term Sheet. Without limiting the requirements contained herein or in the DIP Term Sheet, the Debtors shall (a) provide the DIP Lender, counsel to any Committee (and each of their respective advisors) with (i) all reports, documents, and information required to be delivered under the DIP Term Sheet (contemporaneously when the same is required to be delivered thereunder), and (ii) reasonable access, upon reasonable notice and during regular business hours, to the Debtor's books and records, assets and properties, for purposes of monitoring the Debtors' business and operations and the value of the DIP Collateral, and (b) reasonably cooperate and consult with, and provide information reasonably requested by the DIP Lender or any Committee (and their respective advisors) concerning the Debtors' business, financial condition, properties, business operations and assets.

36

20. *DIP Termination Events; Exercise of Remedies.*

(a) <u>DIP Termination Events</u>. The occurrence of any of the Events of Default set forth in the DIP Term Sheet shall constitute a "DIP Termination Event" under this Interim Order (each a "***DIP Termination Event***," and the date upon which such DIP Termination Event occurs, the "***DIP Termination Date***"), unless waived in writing by the DIP Lender.

(b) <u>Remedies Upon DIP Termination Event</u>. Upon the occurrence and during the continuation of a DIP Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to: (i) deliver to the Debtors a notice declaring the occurrence of a DIP Termination Event; (ii) declare the termination, reduction or restriction of the DIP Commitments (to the extent any such commitment remains), whereupon the DIP Commitments shall be terminated, reduced, or restricted; (iii) declare the DIP Obligations then outstanding to be due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtors; (iv) declare the reduction or restriction on the DIP Facility or the DIP Term Sheet, whereupon the DIP Facility or the DIP Term Sheet shall be reduced or restricted; (v) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral; (vi) charge interest at the default rate under the DIP Facility; (vii) freeze all monies or balances in any deposit accounts of the Debtor; (viii) immediately exercise any and all rights of set-off; (ix) exercise any right or remedy against the DIP Collateral, including, without limitation, the foreclosure on or disposition of DIP Collateral for application towards the DIP Obligations; (x) file a motion seeking Court authority to sell all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code; or (xi) take any other action or exercise any other right or remedy permitted under the DIP Term Sheet, this

Interim Order or applicable law; provided that, in the case of the enforcement of rights against the DIP Collateral other than the due to the occurrence of the Maturity Date, the DIP Lender shall provide counsel to the Debtors, counsel to any Committee and the U.S. Trustee five business days' prior written notice (the "**Remedies Notice**")[7] (which may be provided by email or other electronic means), and during such five business day notice period (the "**Remedies Notice Period**"), the Debtors, any Committee and/or any other party in interest shall be permitted to request an emergency hearing (an "**Emergency Hearing**") before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis); provided, however, that, during the Remedies Notice Period, the Debtors are permitted to use Cash Collateral solely to fund expenses critically necessary to preserve the value of the Debtors' businesses and fund the Carve Out Reserves (as defined below). For the avoidance of doubt, in the case of the enforcement of rights against the DIP Collateral, the Debtors shall be deemed to have granted the DIP Lender standing to pursue such actions. If an Emergency Hearing is requested to be heard prior to the expiration of the Remedies Notice Period but is scheduled to be heard after the expiration of the Remedies Notice Period by the Court, the Remedies Notice Period shall be automatically extended to the date of such hearing.

(c) Unless the Court orders otherwise during the Remedies Notice Period, following the expiration of the Remedies Notice Period, without further notice to, hearing or order from the Court, the automatic stay of section 362 of the Bankruptcy Code shall automatically be vacated and modified for the purposes of permitting the DIP Lender to exercise any and all rights and remedies available to them under this Interim Order, the DIP Term Sheet, and applicable law.

---

[7] For the avoidance of doubt, the Remedies Notice, or any other notice contemplated under this paragraph 20 may be included in the Carve Out Trigger Notice.

38

21.     *No Waiver by Failure to Seek Relief.*  The rights and remedies of the DIP Lender and the Prepetition Lender are cumulative and not exclusive of any rights or remedies that the DIP Lender or the Prepetition Lender may have under the DIP Term Sheet, the Prepetition Loan Documents, applicable law or otherwise.  The failure or delay on the part of the DIP Lender or the Prepetition Lender to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Term Sheet, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise.  No delay on the part of any party in the exercise of any right or remedy under this Interim Order, the DIP Term Sheet or the Prepetition Loan Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this Interim Order, the DIP Term Sheet and the Prepetition Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the requisite parties under the DIP Term Sheet and the requisite parties under the Prepetition Loan Documents, as applicable.  No consents required hereunder by the DIP Lender or the Prepetition Lender shall be implied by any inaction or acquiescence by the DIP Lender or the Prepetition Lender (as applicable).

22.     *Carve Out.*

(a)     Carve Out.  As used in this Interim Order, the term "***Carve Out***" means an amount equal to the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed by this Court at

any time, whether by interim order, procedural order, or otherwise (which order has not been vacated or stayed), all unpaid fees and expenses incurred by Persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "*Debtor Professionals*") or the Committee, if any, pursuant to section 328 or 1103 of the Bankruptcy Code (the "*Committee Professionals*" and together with Debtor Professionals, the "*Professional Persons*") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below); provided that the amounts set forth in clause (iii) shall be subject to the aggregate amounts for Professional Persons in the Budget and any limits under the DIP Orders (provided, that for the avoidance of doubt, Professional Persons may carry forward or roll back budgeted but unused disbursements set forth in the Budget for any week for use in any subsequent or prior week(s), as applicable) (the amounts set forth in clauses (i)-(iii) being the "*Pre-Carve Out Trigger Notice Amounts*"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first day following the date of delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "*Post-Carve Out Trigger Notice Cap*"); provided, however, that nothing herein shall be construed to impair the ability of any party in interest (including the DIP Lender) to object to the fees, expenses, reimbursement, or compensation described in clauses (i) through (iv) of this paragraph 23(a) on any grounds. In the event that Allowed Professional Fees exceed or are expected to exceed the amounts provided in the Budget, the parties will negotiate in good faith (but without further obligation) regarding a proposed amendment to the Budget to address such additional Allowed Professional Fees. The "*Carve Out Trigger Notice*" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to counsel to the

Debtors, the U.S. Trustee and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event.

(b) Carve Out Reserves. From and after the Petition Date, the Debtors shall, on Monday of each week, transfer cash proceeds of the DIP Facility or cash on hand into a segregated account (the "**Professional Fees Account**") maintained by the Debtors in an amount equal to the fees and expenses reflected in the Budget for Professional Persons for that week (provided, that the first such transfer shall also include any such fees and expenses reflected in the Budget for any prior weeks). The Professional Fees Account, if applicable, shall be held in trust and used solely to satisfy Allowed Professional Fees; provided, that the Debtors' obligations to pay Allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account; provided further that the Debtors' reversionary interest, if any, in the Professional Fees Account and any funds therein shall be subject to the DIP Liens. On the day on which a Carve Out Trigger Notice is delivered in accordance with this paragraph 23(b) of this Interim Order (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash (including Cash Collateral) on hand as of such date, including funds in the Professional Fees Account, if applicable (net of any amounts held on retainer by any Professional Persons), and any available cash thereafter held by the Debtors to fund a reserve (the "**Pre-Carve Out Trigger Notice Reserve**") in an amount equal to the then unpaid amounts of the Pre-Carve Out Trigger Notice Amounts accrued on and prior to the Termination Declaration Date. Upon the occurrence of a Termination Declaration Date, Professional Persons shall have three (3) business days thereafter to deliver fee statements to the Debtor Professionals and the DIP Lender that cover such Professional Persons' reasonable good faith estimate of the Allowed Professional Fees incurred by such Professional Persons through and including the Termination Declaration

Date. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors as of such date to utilize all cash (including Cash Collateral) on hand as of such date (net of any amounts held on retainer by any Professional Persons) to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***"). The Carve Out Reserves shall be deposited in the Professional Fees Account, to be held in trust, and used solely to satisfy Allowed Professional Fees benefitting from the Carve Out in accordance with the terms hereof until such Allowed Professional Fees are paid in full. All funds in the Pre-Carve Out Trigger Notice Reserve shall be subject to the DIP Liens, but used first to pay the outstanding obligations set forth in clauses (i) through (iv) of paragraph 22(a) (but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap), until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender for application to the DIP Obligations in accordance with the DIP Term Sheet, unless and until the DIP Obligations are Paid in Full. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the outstanding obligations set forth in clause (iv) of paragraph 22(a), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender for application to the DIP Obligations in accordance with the DIP Term Sheet, unless and until the DIP Obligations are Paid in Full. Notwithstanding anything to the contrary in this Interim Order, (x) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Term Sheet or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (y) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (z) nothing contained herein shall constitute a cap or limitation

on the ability of the Professional Persons to assert a claim on account of Allowed Professional Fees that are due and payable by the Debtors.

(c)　　　Payment of Allowed Professional Fees Prior to Termination Declaration Date. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out on a dollar-for-dollar basis.

(d)　　　Payment of Carve Out on or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out and the amounts required to fund the Carve Out Reserves on a dollar-for-dollar basis; provided, however, prior to repayment from the Carve Out Reserves, any retainers held by Professional Persons shall be applied to repay the obligations set forth in clauses (iii) through (iv) of paragraph 22(a) prior to repayment of such obligations from the Carve Out Reserves, and, concurrent with such repayment of such obligations using such retainers, the Carve Out shall permanently be reduced on a dollar for dollar basis.

(e)　　　No Direct Obligation to Pay Allowed Professional Fees. Neither the DIP Lender nor the Prepetition Lender shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Lender, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

23.　　*Effect of the Debtors' Stipulations on Third Parties*

43

(a)     The Debtors' Stipulations contained in paragraph F of this Interim Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Case) in all circumstances and for all purposes immediately upon entry of the Final Order.  The Debtors' Stipulations shall be binding upon any Committee, all other creditors, and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, unless (i) the Committee or such party-in-interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) obtains requisite standing pursuant to an order of the Court entered prior to the Challenge Deadline (as defined below) and has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than the Challenge Deadline, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral, or otherwise objecting to or challenging any of the admissions, stipulations, findings or releases included in the Debtor's Stipulations, (B) asserting or prosecuting any so-called "lender liability" claims, Avoidance Actions or any contest, attack, objection, challenge, defense, claim, counterclaim or Cause of Action seeking reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery with respect to the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Loan Documents, and (C) asserting or prosecuting any other claim or Cause of Action of any nature or description whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against the Prepetition Lender or

its Representatives (subclauses (A)-(C), collectively, the "***Challenges***", and each, a "***Challenge***"), and (ii) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge in any duly-filed Challenge Proceeding; provided, however, that as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished as of the Petition Date; provided, further, however, that any pleadings filed in connection with any Challenge Proceeding, including any motion filed with the Court seeking requisite standing and authority to pursue a Challenge, shall include a draft complaint attached thereto and shall set otherwise forth with specificity the basis for each such Challenge, and any Challenge not so specified in a Challenge Proceeding timely and properly filed prior to the Challenge Deadline shall be deemed forever, waived, released and barred.

(b)     If no such Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such Challenge Proceeding, then, without further notice or order of the Court, (i) each of the admissions, stipulations, findings and releases contained in the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtors in the Chapter 11 Cases or any Successor Case), (ii) the Prepetition Secured Obligations shall constitute allowed claims against the Debtors in the Chapter 11 Cases and any Successor Case, and the Prepetition Liens shall be deemed to be legal, valid, non-avoidable, binding, continuing, perfected and enforceable, as of the Petition Date, against the Debtors in the Chapter 11 Cases and any Successor Case, (iii) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Loan Documents shall not be subject to any other or further Challenge, contest,

attack, objection, challenge, defense, claim, counterclaim, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge or recovery, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtors in the Chapter 11 Cases or any Successor Case), and (iv) all Challenges against the Prepetition Lender or any of its Representatives (in their capacities as such) shall be deemed forever waived, released and barred.

(c)     If any such Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Case), except to the extent that any of the admissions, stipulations, findings or releases contained in the Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-interest).

(d)     The "*Challenge Deadline*" means, with respect to any party in interest (including the Committee) with the requisite standing, the date that is the earlier of (i) except as to the Committee, seventy-five (75) calendar days after the entry of this Interim Order, (ii) solely as to the Committee, sixty (60) days from the appointment of the Committee, and (iii) any such later date as has been ordered by the Court, for cause shown, upon a motion filed and served within the

46

time period set forth in clause (ii) of this paragraph 23(d). Notwithstanding the foregoing, (1) if any of the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the Challenge Deadline, any such trustee shall have until the longer of (a) the Challenge Deadline and (b) fourteen (14) calendar days after their appointment, to commence a Challenge; and (2) the filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a proposed Challenge, shall extend the Challenge Deadline solely with respect to that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion. For the avoidance of doubt, any trustee appointed or elected in the Chapter 11 Cases or any Successor Cases, until the expiration of the period provided herein for asserting a Challenge, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph 23 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), shall be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.

(e)     For the avoidance of doubt, the Debtor's stipulations, waivers, agreements and releases contained in paragraph E of this Interim Order shall not be subject to Challenge, and shall be binding upon the Debtors and their estates, and any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or selected in the Chapter 11 Cases or any Successor Case), any Committee, all other creditors and all parties-in-interest and each of their respective successors and assigns, in all circumstances and for all purposes, immediately upon entry of this Interim Order.

47

(f)     Nothing in this Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

24.     *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out or Other Funds*. Notwithstanding anything contained in this Interim Order or any other order of the Court to the contrary, no DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out, or any other funds, may be used (nor shall any professional fees, costs, or expenses be paid or applied in connection therewith) by the Debtors, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtors in the Chapter 11 Cases or any Successor Case), directly or indirectly:

(a)     to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, initiate, assert, commence, support or prosecute (or finance the initiation or prosecution of) any claim, counterclaim, cross-claim, Cause of Action, suit, arbitration, proceeding, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any nature or description (whether for monetary, injunctive, affirmative relief or otherwise) against the DIP Lender or the Prepetition Lender or their respective Representatives, including, without limitation, (i) any objection or challenge to the amount, validity, enforceability, extent, perfection or priority in the DIP Term Sheet, the DIP Obligations (including, for the avoidance of doubt, the Commitment Fee and the Exit Fee), the DIP Liens, the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens or the Prepetition Collateral, (ii) any Avoidance Actions, (iii) any so-called "lender liability" claims, (iv) any claim or Cause of Action seeking the invalidation, reduction, setoff, offset, recoupment, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharging or recovery with respect to the DIP Liens, the DIP Obligations (including, for the avoidance of doubt, the Commitment Fee and the Exit Fee), the DIP Term Sheet, the DIP Collateral, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents or the Prepetition Collateral, (v) any other claim or Cause of Action of any nature and description whatsoever, whether arising under the Bankruptcy Code, applicable non-

48

bankruptcy law, any other domestic or foreign statute, law, rule or regulation or otherwise, against the DIP Lender or the Prepetition Lender or their respective Representatives;

(b)     objecting to, appealing or otherwise challenging this Interim Order, the DIP Facility, the DIP Obligations (including, for the avoidance of doubt, the Commitment Fee and the Exit Fee), the DIP Liens, the DIP Term Sheet or the transactions contemplated hereunder or thereunder; *provided* that nothing herein shall impair the rights of such parties to object to the entry of the Final Order;

(c)     objecting to or seeking to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections, or benefits granted to the DIP Lender or the Prepetition Lender under this Interim Order or the DIP Term Sheet (other than to contest whether a DIP Termination Event has occurred and is continuing);

(d)     objecting to or seeking to prevent, hinder, interfere with or otherwise delay the DIP Lender's assertion, enforcement, exercise of remedies or realization upon any DIP Collateral in accordance with this Interim Order, the DIP Term Sheet or the other DIP Documents (as applicable) (other than to contest whether a DIP Termination Event has occurred and is continuing);

(e)     seeking or requesting authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code, or otherwise, unless such financing is sufficient to cause the Payment in Full of all DIP Obligations and Prepetition Secured Obligations contemporaneously with the closing of such financing (or as otherwise agreed in writing by the DIP Lender and the Prepetition Lender, as applicable);

(f)     seeking or requesting authorization to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under the DIP Term Sheet) in any portion of the DIP Collateral that are senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens or the Prepetition Secured Obligations unless all DIP Obligations and Prepetition Secured Obligations have been Paid in Full (or as otherwise agreed in writing by the DIP Lender or the Prepetition Lenders, as applicable);

(g)     seeking or requesting to use Cash Collateral or sell or otherwise dispose of DIP Collateral (without the prior written consent of the DIP Lender) other than as provided herein and in the DIP Term Sheet; or

(h)     seeking to pay any amount on account of any claims arising prior to the commencement of the Chapter 11 Cases, unless such payments are agreed to in writing by the DIP Lender (or are otherwise included in the Budget);

provided, however, that no more than $25,000 of the DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve Out or any other funds may be used for allowed fees and expenses incurred by the Committee prior to the Challenge Deadline to investigate (but not to litigate, contest, initiate, assert, join, commence, support or

49

prosecute any claim, Cause of Action or Challenge, including by way of discovery, with respect to), the validity, enforceability, extent, perfection or priority of the Prepetition Liens, the Prepetition Secured Obligations, and the Prepetition Loan Documents.

25.     *Limitation on Charging Expenses*.  Except to the extent of the Carve Out or as provided in this Interim Order, no costs or expenses of administration of the Chapter 11 Cases or any Successor Case at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Lender or the Prepetition Lender, respectively, upon the DIP Collateral or the Prepetition Collateral, respectively, shall be charged against or recovered from the DIP Collateral as to the DIP Lender, or the Prepetition Collateral as to the Prepetition Lender, whether pursuant to section 506(c) of the Bankruptcy Code, any other legal or equitable doctrine (including unjust enrichment) or otherwise, without the prior written consent of the DIP Lender with respect to the DIP Collateral, or the Prepetition Lender under the Prepetition Loan Documents with respect to the Prepetition Collateral, each in their sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by the DIP Lender, or the Prepetition Lender; provided, however, that the foregoing shall be subject to the terms of the Final Order granting such relief.

26.     *No Marshaling; Section 552(b) Waiver*.  Subject to entry of the Final Order, in no event shall (a) the DIP Lender or Prepetition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Collateral, or the Prepetition Obligations, and all proceeds of the DIP Collateral shall be received and applied in accordance with this Interim Order and the DIP Term Sheet, or (b) the

50

"equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Obligations (including, without limitation, the Prepetition Liens and the Prepetition Secured Claims) arising under the Prepetition Loan Documents; provided, however, that the foregoing shall be subject to the terms of the Final Order granting such relief.

27. *Right to Credit Bid.* Subject to section 363(k) of the Bankruptcy Code, as applicable, the DIP Lender or its designee (which may be an acquisition vehicle formed by the DIP Lender) shall have the unqualified right to credit bid up to the full amount of the applicable priority DIP Obligations (and the Prepetition Secured Obligations, to the extent unpaid) in any sale of all or any portion of DIP Collateral (including, for the avoidance of doubt, any asset for which the DIP Collateral is limited to the proceeds thereof as a result of applicable law prohibiting encumbrances from being attached to such asset) or the Prepetition Collateral, as applicable, subject to and in accordance with the DIP Term Sheet, without the need for further order of the Court authorizing same, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code, or otherwise. The DIP Lender shall have the absolute right to assign, transfer, sell, or otherwise dispose of its rights to credit bid (subject to this Interim Order) to any acquisition vehicle formed in connection with such bid or other designee.

28. *Binding Effect; Successors and Assigns.* Immediately upon entry of this Interim Order, subject to paragraph 23 of this Interim Order, the provisions of the DIP Term Sheet and this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Case, including without limitation, the DIP Lender, the Prepetition Lender, any Committee or any other committee appointed or

formed in the Chapter 11 Cases and any Successor Case, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Case, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtor), and shall inure to the benefit of the Debtors, the DIP Lender and the Prepetition Lender and their respective successors and assigns; provided, for the avoidance of doubt, that the DIP Lender and the Prepetition Lender shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of the Debtors in the Chapter 11 Cases or any Successor Case.

29.     *No Modification of Interim Order*.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full, the Debtors irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Lender, (i) any modification, stay, vacatur or amendment to this Interim Order, (ii) the allowance of any claim against the Debtors in the Chapter 11 Cases or any Successor Case equal or superior to the DIP Superpriority Claims (other than the Carve Out), (iii) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the DIP Liens, except as expressly permitted hereunder or under the DIP Term Sheet, or (iv) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Interim Order; or (b) without the prior written consent of the Prepetition Lender, (i) any modification, stay, vacatur or amendment to this Interim Order that adversely affects the rights, remedies, benefits or protections of the applicable Prepetition Lender, (ii) the allowance of any claim against the Debtors in the Chapter 11 Cases or any Successor Case equal or superior to the

Adequate Protection Claims (other than the Carve Out and the DIP Superpriority Claims), or (iii) the grant of any lien or security interest on any DIP Collateral or Prepetition Collateral with priority equal to or superior to the Adequate Protection Liens, except as expressly permitted hereunder or under the DIP Term Sheet.

30. *Proceeds of Subsequent Financings.* Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all of the DIP Obligations, either the Debtors, their individual estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Interim Order or the DIP Term Sheet, then, unless otherwise agreed in writing by the DIP Lender, all of the cash proceeds derived from such credit or debt intended to refinance the DIP Obligations shall immediately be paid to the DIP Lender on account of its DIP Obligations pursuant to the DIP Term Sheet.

31. *Preservation of Rights Granted Under Interim Order.*

(a) Good Faith Under Section 364(e) of the Bankruptcy Code. The DIP Lender and the Prepetition Lender have acted in good faith in connection with this Interim Order, the DIP Facility and the DIP Term Sheet, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and upon the record made at the Interim Hearing and during the Chapter 11 Cases, the DIP Lender and the Prepetition Lender are entitled to the protections provided in section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order or the DIP Term Sheet are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect (i) the validity or enforceability of advances previously made hereunder

or under the DIP Term Sheet by the DIP Lender to the Debtors, (ii) the validity or enforceability of any obligation, indebtedness or liability incurred under this Interim Order or the DIP Term Sheet by the Debtors to the DIP Lender, (iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or benefits granted hereunder or under the DIP Term Sheet, or (iv) the payment of any fees, costs, expenses or other amounts, in the case of each of the foregoing, prior to the actual receipt of written notice by the DIP Lender, to be sent as of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification or vacatur, any such claim, lien, or security interest, right, privilege, remedy or benefit shall be governed in all respects by the original provisions of this Interim Order and the DIP Term Sheet.

(b) <u>Survival</u>. Notwithstanding anything contained herein or in the DIP Term Sheet to the contrary, the terms and provisions of this Interim Order and the DIP Term Sheet (including, without limitation, all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the DIP Lender and the Prepetition Lender under this Interim Order and the DIP Term Sheet), and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties-in-interest, and shall be governed by the original provisions of this Interim Order and maintain their priorities as set forth in this Interim Order, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) pursuant to which the Court abstains from hearing the Chapter 11 Cases, or (v) approving the sale or disposition of any DIP Collateral (except as expressly permitted in the DIP Term Sheet), in each case, until all of the DIP Obligations, the

54

Adequate Protection Obligations and the Prepetition Secured Obligations have been Paid in Full (unless the DIP Lender and/or the Prepetition Lender have otherwise agreed in writing in respect of the applicable obligations owed to each of them).

(c)     Dismissal/Conversion.  If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Lender and the Prepetition Lender hereunder and under the DIP Term Sheet shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations, Adequate Protection Obligations and Prepetition Secured Obligations have been Paid in Full (and that all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections, notwithstanding such dismissal or conversion, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing this Interim Order, the DIP Term Sheet, and all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the DIP Lender and the Prepetition Lender hereunder or thereunder.

32.     *Loss or Damage to Collateral*.  So long as the DIP Lender complies with its obligations under the DIP Term Sheet and does not engage in willful misconduct, gross negligence, or actual fraud in respect thereof, (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other

person, and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the Debtors.

33. *Proofs of Claim*. The DIP Lender and the Prepetition Lender shall not be required to file proofs of claim or request for payment of administrative expenses in the Chapter 11 Cases or any Successor Case in order to assert claims for payment in respect of the DIP Obligations or the Prepetition Secured Obligations. The Debtor's Stipulations, acknowledgments and provisions of this Interim Order are deemed sufficient to and do constitute timely filed proofs of claim or request for payment of administrative expenses in respect of such claims arising under the DIP Obligations, the Adequate Protection Obligations, and the Prepetition Secured Obligations against the Debtors. Any order entered by the Court establishing a bar date in the Chapter 11 Cases or any Successor Case shall not apply to the DIP Lender, the Prepetition Lender, the DIP Obligations or the Prepetition Secured Obligations; provided, however, that, notwithstanding any order entered by the Court establishing a bar date in the Chapter 11 Cases or any Successor Case to the contrary, the DIP Lender or the Prepetition Lender, in their respective sole discretion, may (but are not required to) file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases and any Successor Case, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtors' Chapter 11 Cases. Such consolidated or master proofs of claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by the Debtors to the applicable party, which instruments, agreements, or other documents will be provided upon reasonable written request to the DIP Lender or the Prepetition Lender, as the case may be. Any proof of claim filed by or on behalf of the DIP Lender or the Prepetition Lender shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. The

provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

34.     *Limitation of Liability*.  Nothing in this Interim Order, the DIP Term Sheet or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Lender of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the Debtors and its affiliates in the operation of their businesses, their restructuring efforts or in connection with the administration of the Chapter 11 Cases.  In determining to make any loan or extension of credit or permit the use of Cash Collateral, under the DIP Term Sheet or the Prepetition Loan Documents, neither the DIP Lender nor the Prepetition Lender shall (a) be deemed to be in control of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors or their creditors, shareholders (or other equity or membership interest holders) or estates, or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42, U.S. §§ 9601 et seq., as amended, or any similar federal or state statute).

35.     *Payments Free and Clear*.  Subject to the Carve Out, any and all payments or proceeds remitted to the DIP Lender or, subject to paragraph 23, the Prepetition Lender pursuant to the DIP Term Sheet, this Interim Order, the Final Order (if and when entered) or any subsequent order of this Court shall be irrevocable (subject, solely in the case of certain professional fees, the fee review procedures set forth in paragraph 11 of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge

asserted or assessed by, through or on behalf of the Debtors (subject to paragraph 26 hereof) or otherwise.

36. *Third Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect, or incidental beneficiary.

37. *Interim Order Controls.* In the event of any conflict or inconsistency between or among the terms or provisions of this Interim Order and the DIP Term Sheet, unless such term or provision in this Interim Order is phrased in terms of "defined in" or "as set forth in" the DIP Term Sheet, the terms and provisions of this Interim Order shall govern and control.

38. *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

39. *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

40. *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order. When used in this Interim Order, the word "including" shall not imply limitation.

41. *Necessary Action.* The Debtors are authorized to take any and all such actions as are necessary, required, or appropriate to implement and effectuate the terms of this Interim Order, the DIP Term Sheet and the transactions contemplated hereunder and thereunder.

42.     *Retention of Jurisdiction*.  The Court retains jurisdiction to hear, determine and, if applicable, enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Term Sheet, and this Interim Order.

43.     *Final Hearing*.  The Final Hearing shall be held on April [•], 2026 at [•] a.m./p.m. (prevailing Central Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than [•], 2026 at 4:00 p.m. (prevailing Central Time).

44.     *Notice of Entry of Interim Order*.  The Debtors shall serve in accordance with Local Rule 9013-1(m)(iv) copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee (if appointed).

## **Exhibit 1**

Initial Budget

**Crosby Consolidated Weekly Budget**

*March 24, 2026*

*CONFIDENTIAL DRAFT | FOR ILLUSTRATIVE PURPOSES ONLY | SUBJECT TO MATERIAL CHANGE*

| Week Beginning | 3/22/26 | 3/29/26 | 4/5/26 | 4/12/26 | 4 Wk Total |
|---|---|---|---|---|---|
| Crosby Tugs Receipts | $1,754,548 | $2,218,591 | $1,579,311 | $1,013,856 | |
| Crosby Dredging Receipts | 126,713 | 126,713 | 122,625 | 548,505 | |
| Other Receipts | – | – | – | – | |
| **Total Receipts** | **$1,881,261** | **$2,345,304** | **$1,701,936** | **$1,562,360** | **$7,490,861** |
| Labor / Payroll / Payroll Taxes & Fees | $140,000 | $1,700,000 | $140,000 | $1,700,000 | |
| Insurance / Hospitalization / Medical Claims | 240,100 | 135,800 | 195,100 | 97,800 | |
| Other Employee Benefits | 75,000 | 90,000 | 205,000 | 160,000 | |
| Fuel | 333,401 | 357,209 | 128,931 | 125,000 | |
| Vessel and Corp Insurance | 1,560,000 | 5,000 | 200,000 | 77,833 | |
| Contract Labor | 60,000 | 60,000 | 60,000 | 60,000 | |
| Repairs / Maintenance / Supplies | 629,310 | 390,125 | 314,158 | 300,000 | |
| Charter Payments | 64,015 | 236,581 | 60,000 | 60,000 | |
| Auto | – | 10,000 | – | – | |
| Meals, Travel, Other Reimbursement | 20,000 | 80,354 | 20,000 | 20,000 | |
| Credit Card | 125,000 | 325,000 | 125,000 | 125,000 | |
| Office Expenses | 25,000 | 39,092 | 25,000 | 25,000 | |
| Utilities | 177,519 | 14,410 | 87,107 | – | |
| Equipment and Property Leases | 71,753 | 225,787 | – | – | |
| Licensing, Fees and Taxes | 30,622 | 54,681 | 15,188 | 10,000 | |
| Other | 50,000 | 50,000 | 75,000 | 75,000 | |
| **Operating Disbursements** | **$3,601,720** | **$3,774,040** | **$1,650,485** | **$2,835,633** | **$11,861,878** |
| **Operating Cash Flow** | **($1,720,459)** | **($1,428,736)** | **$51,452** | **($1,273,273)** | **($4,371,017)** |
| DIP Interest Payments / Fees | $1,200,000 | $91,377 | – | – | |
| Debtor Professional Fees | 1,478,698 | 328,601 | 215,000 | 215,000 | |
| Creditor and Estate Professional Fees | 100,000 | 232,498 | 143,456 | 158,863 | |
| Other Non-Operating Expense | 15,000 | 35,000 | 235,000 | 235,000 | |
| **Non-Operating Disbursements** | **$2,793,698** | **$687,476** | **$593,456** | **$608,863** | **$4,683,494** |
| **Total Disbursements** | **$6,395,418** | **$4,461,516** | **$2,243,941** | **$3,444,497** | **$16,545,372** |
| **Net Cash Flow** | **($4,514,158)** | **($2,116,212)** | **($542,005)** | **($1,882,136)** | **($9,054,511)** |
| Opening Cash Balance | $1,475,094 | $6,960,936 | $4,844,724 | $2,302,719 | |
| Net Cash Flow | (4,514,158) | (2,116,212) | (542,005) | (1,882,136) | |
| Cash From Financing | 10,000,000 | – | – | – | |
| LOC / Reimbursable Bonding Premium | – | – | (2,000,000) | – | |
| **Closing Cash Balance (Book)** | **$6,960,936** | **$4,844,724** | **$2,302,719** | **$420,583** | |
| Check Float | 400,000 | 400,000 | 400,000 | 400,000 | |
| **Closing Cash Balance (Bank)** | **$7,360,936** | **$5,244,724** | **$2,702,719** | **$820,583** | |

*\*Cash does not include Regions credit card accounts; Opening est. net book cash week beginning 3/22/26 represents outstanding checks as of 3/23/26 5pm*

| DIP Facility | | | | | Total Commitment |
|---|---|---|---|---|---|
| Beginning Balance | $29,161,591 | $39,161,591 | $39,161,591 | $39,161,591 | |
| (+) Proceeds | 10,000,000 | – | – | – | **$60,000,000** |
| (+) Exit Fee | – | – | – | – | |
| **Ending Balance** | **$39,161,591** | **$39,161,591** | **$39,161,591** | **$39,161,591** | |