**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 26-10678** |
| | § | **(JOINTLY ADMINISTERED)** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| **Debtors.[1]** | § | |
| | § | **SECTION: A** |

**DEBTORS' EXPEDITED MOTION FOR (I) ENTRY OF ORDERS (A) RESTATING AND AFFIRMING AUTOMATIC TURNOVER OBLIGATION AND APPROVING TURNOVER PROCESS AND (B) DIRECTING CUSTOMERS TO TURN OVERDUE AND OWING ACCOUNTS RECEIVABLE TO THE DEBTORS, AND (II) GRANTING RELATED RELIEF**

> **EXPEDITED RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON APRIL 2, 2026 AT 10:00 A.M. AT THE UNITED STATES BANKRUPTCY COURT, 500 POYDRAS ST., COURTROOM B-709, NEW ORLEANS, LOUISIANA 70130. PARTIES IN INTEREST MAY PARTICIPATE IN THE HEARING (I) IN PERSON; (II) BY TELEPHONE ONLY (DIAL IN: 504.517.1385, ACCESS CODE: 129611); OR (III) BY TELEPHONE USING THE DIAL- IN NUMBER AND VIDEO USING HTTPS://GOTOMEET.ME/JUDGEGRABILL (MEETING CODE: "JUDGEGRABILL"). IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU MUST FILE A WRITTEN RESPONSE AT OR BEFORE THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Crosby Marine Transportation, LLC ("**CMT**"), Crosby Tugs, L.L.C. ("**Crosby Tugs**"),

Crosby Dredging, LLC ("**Crosby Dredging**") and Bertucci Contracting Company, L.L.C.

---

[1] An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4, No. 26-10681, ECF Doc. 4].

("**Bertucci**") as debtors and debtors-in-possession, (collectively, "**Debtors**") file this motion (the "**Motion**"); in support of this Motion, the Debtors aver as follows:

## RELIEF REQUESTED

1.      The Debtors seek (i) (a) immediate entry of an order attached as **Exhibit A** ("**Process Order**") restating and affirming automatic turnover obligation and approving the turnover process and (b) entry of an order attached as **Exhibit B** ("**Turnover Order**" and together with the Process Order, the "**Orders**") directing the Debtors' customers to deliver pre-petition accounts receivable payments and to continue delivering post-petition accounts receivable in the ordinary course and (ii) related relief.

## JURISDICTION, VENUE, AND STATUTORY BASES FOR RELIEF

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      The statutory basis for the relief requested herein are §§ 105(a), 362, 541, 542, 1107, and 1108 of chapter 11 of Title 11 of the United States Code ("**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Eastern District of Louisiana (the "**Local Rules**"), and the Procedures for Complex Chapter 11 Cases Filed in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Complex Case Procedures**") established by General Order 2019-4, amended as of January 10, 2025.

## PROCEDURAL BACKGROUND

4.      On March 23, 2026, (the "**Petition Date**"), Debtors each filed a voluntary petition for relief commencing chapter 11 cases (the "**Bankruptcy Cases**") under title 11 of the United States Code ("**Bankruptcy Code**"). *See* 11 U.S.C. § 301.

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession, pursuant to sections 1107 and 1108 of title 11 of the Bankruptcy Code.

6.      On March 24, 2026, the Court entered an order [ECF Doc. 9] providing that the Bankruptcy Cases are to be consolidated for procedural purposes only and shall be jointly administered by the Court under, *In re Crosby Marine Transportation, LLC*, Case No. 26-10678.

7.      On March 24, 2026, the Court entered an order [ECF Doc. 6] that the Complex Case Procedures shall apply to this case. The Complex Case Procedures are posted on the Court's website, https://www.laeb.uscourts.gov/.

8.      Additional information regarding the circumstances leading to the commencement of the Bankruptcy Cases and information regarding the Debtors' business and capital structure is set forth in the *Non-Substantively Amended Declaration of Lawrence Perkins in Support of Debtors' Chapter 11 Petitions and First Day Relief* [ECF Doc. 45] (the "***First Day Declaration***").[2]

## BACKGROUND

**A. The Debtors' Operations.**

9.      Together, Crosby Tugs and affiliated entities make up one of the largest privately owned transportation businesses in the marine industry. The Debtors and non-Debtor affiliates have a fleet of more than 200 vessels and marine equipment—approximately 80% of the fleet is owned by CMT. Crosby Tugs and Crosby Dredging generate revenue from tug and dredge operations, respectively. For its tug business, Crosby Tugs deploys its expertly crewed tug and barge fleet to satisfy all of its customers' inshore and offshore marine transport needs. As a part of its business, Crosby Tugs assists small freighters, container ships, aircraft carriers, Very Large Crude Carriers ("***VLCCs***"), and other vessels into and out of births; escorts oil tankers quickly and

---

[2] Words capitalized and not defined herein are to be given the meaning ascribed in the First Day Declaration.

safely through shipping channels and environmentally sensitive waters; and tows ships, semi-submersible rigs, landing platforms, and other vessels. Crosby Tugs operates in extreme climates and sea conditions and is capable of responding to offshore emergencies like vessel fires and fuel spills.

### B. The Debtors' Capital Structure.

10.     As of the Petition Date, the Debtors had approximately $162,758,685 in aggregate funded debt. These obligations arise under the Debtors' debt facility ("*JMB Facility*") with JMB Capital Partners Lending, LLC ("*JMB*"), which JMB purchased from the Debtors' prepetition lender, Hancock Whitney. The JMB Facility was and is secured by, among other things, Crosby Tugs and Crosby Dredging's accounts receivable and Bertucci's minority interest in a joint venture, Luhr Crosby.

11.     On March 25, 2026, the Court entered an order [ECF Doc. 65] authorizing the Debtors to, on an interim basis, obtain a senior secured, postpetition, superpriority debtor-in-possession term loan facility in an aggregate amount of up to $60,000,000, plus applicable fees, premiums, and other amounts and obligations ("*DIP Facility*") with JMB (in its capacity as lender under the DIP Facility, the "*DIP Lender*").

12.     Additionally, there are 14 collateral-based prepetition lending facilities, each secured by liens attaching to a different portion of the Debtors' fleet of vessels and equipment ("*Fleet Facilities*"). The Fleet Facilities are primarily secured by preferred ship mortgages. Some of the secured lenders for the Fleet Facilities ("*Other Secured Lenders*") have filed UCC-1 Financing Statements ("*UCC-1s*") that may give rise to lien on the Debtors' inventory and receivables.

13.     To address cash liquidity stress in the short-term, prior to the Petition Date, certain of the Debtors entered into a number of merchant cash advance ("*MCA*") agreements to obtain

funding from the firms identified on the list ("*MCA Parties List*") attached as Exhibit C (the "*MCA Parties*") to the First Day Declaration. The MCA Parties assert either ownership of certain receivables of the Debtors and/or have filed UCC-1s purporting to perfect a security interest in the Debtors' receivables. Any liens in favor of the MCA Parties in receivables and inventory are inferior to the lien against the Crosby Tugs and Crosby Dredging's receivables securing the JMB Facility. To the extent the MCA lenders claim ownership of the Debtors' receivables, the ownership is subject to the lien securing the JMB Facility.

**C. Events Leading to the Chapter 11 Cases**

14.    Prior to the Petition Date, some or all of the MCA Parties made daily and/or weekly draws of funds out of Crosby Tugs and Crosby Dredging's operating accounts. The MCA Parties, in aggregate, collected the amount of the MCA Funding advanced to the Crosby Debtors, plus more than $20 million in additional cash. Around this same time, the weekly ACH payments initiated by the MCA Parties was approaching $900,000 per week prior to the Petition Date, far more than the Debtors could afford to pay.

15.    To conserve cash and preserve the Debtors as going concerns for the benefit of all creditors, the Debtors withdrew the ability of the MCA Parties to draft on the Debtors' accounts. Soon after, certain of the MCA Parties sent confusing letters to the Debtors' customers demanding that the Debtors' accounts receivable be paid directly to the MCA Party instead of tendering payment to the Debtors. Further, the MCA Parties, in an effort to intimidate the Debtors, damage the Debtors' customer, vendor, employee, and lender relationships, and generally disrupt operations, sent representatives or associates to the Debtors' physical offices to attempt to collect debt in-person, contacted and made demands on the Debtors' customers, vendors, and lenders, and solicited on behalf of affiliated law firms and debt work-out companies. The MCA Parties' direct communications to the Debtors' customers caused the customers to withhold payment of

the receivables, creating an emergency liquidity crisis for the Debtors, which necessitated the Debtors filing the Bankruptcy Cases.

16.     Prior to the Petition Date and JMB's purchase of the JMB Facility from Hancock Whitney, the Debtors and Hancock Whitney in coordination with each other sent the Debtors' customers letters directing the customers to pay the receivables owed to the Debtors into a segregated account at Hancock Whitney ("*Segregated HW Account*"). Hancock Whitney gave the Debtors access to receipts in the Segregated HW Account so that the Debtors had necessary liquidity to pay critical operations costs while the Debtors prepared to file the Bankruptcy Cases on an emergency basis.

**<u>BASIS FOR RELIEF</u>**

17.     Although the Debtors maintain strong relationships with their customers ("*Customers*"), inclusive of those persons listed on the **<u>Exhibit B1</u>** to the Turnover Order ("*Customer List*"), the MCA Parties' conduct has produced considerable confusion as to whom the Customers should deliver the Debtors' receivables, resulting in delays in payment, and a cash liquidity crisis for the Debtors. In fact, as explained in the First Day Declaration, it was the MCA Parties' conduct that was the immediate precipitating event for the filing of the Bankruptcy Cases.

18.     By drawing on the DIP Facility the Debtors have been able to pay their critical expenses, including payroll, continue operations, and continue the Marketing Processes, all in furtherance of a result that maximizes value for all creditors and parties in interest. However, to avoid immediate additional draws on the DIP Facility, the Debtors need their Customers to deliver all due and owing payments to the Debtors for services rendered in the same manner as was done prepetition, and to continue to deliver payment for services rendered in the ordinary course of business and consistent with the agreements between the respective Customer and Debtor.

**A. Entry of Process Order reaffirming turnover obligation under section 542(a), approving turnover process, and setting Final Hearing.**

19. The Bankruptcy Code provides that, generally, any entity in possession, custody, or control of valuable property "shall deliver" that property to a debtor in possession if the debtor can use, sell, or lease the property under 11 U.S.C. § 363. Section 542's commandment is clear, and a growing consensus of courts agree that, just as the automatic stay provided by 11 U.S.C. § 362(a) is a self-executing injunction, section 542(a) is self-executing and automatically compels parties-in-interest to deliver to a debtor its property without order by the bankruptcy court. *See, e.g.*, *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi),* 432 B.R. 812, 823 (B.A.P. 9th Cir. 2010) ("It has long been the determination of this panel that the turnover provisions of the Bankruptcy Code are to be self-effectuating."); *In re Page*, No. 21-10241-SMR, 2023 WL 4986406, at *1 (Bankr. W.D. Tex. Aug. 3, 2023) (adopting position that turnover provisions of section 542(a) are self-executing); *Cornerstone Prods., Inc. v. Pilot Plastics, Inc. (In re Cornerstone Products, Inc.),* 2007 WL 4298745, at *12 (Bankr. E.D. Tex. Dec. 5, 2007) ("This affirmative obligation [under § 542(a)] is self-executing and does not require the holding of a hearing or the entry of an order by the bankruptcy court.").

20. Accordingly, the Debtors seek immediate entry of the interim Process Order reaffirming the automatic mandate of 11 U.S.C. § 542(a) and setting final hearing ("***Final Hearing***") on the Motion. The Debtors ask that the Process Order reaffirm the mandate of section 542(a) as follows:

> Any entity (except one that is a custodian) in possession, custody, or control of property that the Debtors may use, sell, or lease under 11 U.SC. § 363, including any receipts, charter hire, or accounts receivable owed to the Debtors ("***Property***"), shall immediately deliver to the Debtors, and account for, such Property or the value of such Property, unless such Property is of inconsequential value or benefit to the estates.

21. At the Final Hearing, the Debtors seek entry of the Turnover Order, specifically ordering those Customers listed on the Customer List to immediately make payment to the Debtors on any due and outstanding obligations for the provision of goods or services by the Debtors, subject to the terms agreed between the Customer and the Debtor (or Debtors, as applicable), any demand by any creditor or third person notwithstanding. And, going forward, the Debtors ask that the Court order the Customers listed on the Customer List to deliver payment to the Debtors on obligations for the provision services rendered by the Debtors as they become due on the terms agreed between the Customer and the Debtor (or Debtors, as applicable).

22. The Debtors' Customers have asked for assurance in the form of a court order that delivery of Property to the possession of the Debtors, consistent with the obligation imposed by section 542(a), will not give rise to a competing claim by a secured lender or MCA Party for the Property.

23. Accordingly, the Debtors request that the Orders provide that any Customer that remits payment or otherwise delivers Property in compliance with this Order shall be deemed to have fully satisfied its obligation to the extent paid, and such Customer's obligation shall be discharged against the Debtors and any of the Debtors' lenders (including but not limited to, JMB in its capacity as DIP Lender and assignee of the Hancock Whitney prepetition loan, the Other Secured Lenders, and the MCA Parties). The Orders shall provide that the satisfaction and turnover of the Property by any such Customer in compliance with this Order shall protect such Customer from multiple or inconsistent liability with respect to the Property and shall operate as a final adjudication that the Customer owes no further obligation to any party with respect to the Property.

24.     The Debtors request that the Process Order on an interim basis, and the Turnover Order on a final basis, provide that all parties in interest served with notice of the Motion, including JMB, the MCA Parties, and any other secured creditor asserting an interest in such receivables, be barred and enjoined from asserting against any Customer any claim or other theory of liability arising from or relating to such Customer's good-faith payment or delivery of Property in compliance with the Orders.

25.     The Motion and Orders are not intended to alter the business relationship between any Debtor and any Customer as it existed prior to the Petition Date. Accordingly, the Debtors request that the Orders clarify that, subject to any preexisting agreement between a Customer and a Debtor, a Customer may contest in good faith amounts that are alleged to be owed by a Customer to the Debtors and such amounts that are disputed in good faith shall not be Property subject to this Order unless and until the Debtors and the Customer reach an agreement on the disputed amounts or as otherwise subsequently ordered by the Court.

26.     As adequate protection to any party in interest with a valid prepetition lien in a Debtor's accounts receivable—potentially including, but not limited to, the Debtors' secured lenders and any MCA Parties—such prepetition lien holders will be granted a replacement lien on the same Debtor's post-petition receivables to the extent, and at the priority level, as existed against the applicable Debtor's prepetition accounts receivable, subject to the terms of any interim or final order by the Court regarding the use of cash collateral or the DIP Facility and the provisions of the Bankruptcy Code.

27.     The Debtors stipulate and agree that any of the Debtors' customers that delivers Property, as contemplated by this Motion, shall be released from any claim with respect to the payment made to the Debtors and their estates.

**B. Requirement for separate adversary proceeding to be waived unless a party to be compelled to turn over Property objects.**

28. The Debtors seek relief under this Motion for the benefit of not only the Debtors and the estates but also for the benefit of its Customers who have been subjected to competing claims; some of whom have urged the Debtors to seek this relief by this Motion. Bankruptcy Rule 7001(1) requires an adversary proceeding for a debtor to recover property or a sum certain of money from a non-debtor. The Court of Appeals for the Fifth Circuit has held that Bankruptcy Rule 7001(1)'s mandate for a separate adversary proceeding may be waived by the party seeking turnover and the party being asked to turn over property. *See Matter of Vill. Mobile Homes, Inc.*, 947 F.2d 1282, 1283 (5th Cir. 1991) ("Compliance with the requisites of an adversary proceeding may be excused by waiver of the parties."). Where the strictures of an adversary proceeding are waived, any substantive objection to the relief sought by motion may be resolved in the context of a contested proceeding pursuant to Bankruptcy Rule 9014. *See, e.g.*, *In re Mark Twain Marine Indus., Inc.*, 115 B.R. 948, 949 (Bankr. N.D. Ill. 1990) (acknowledging parties had waived the necessity of adversary proceeding by adopting contested motion procedure under Bankruptcy Rule 9014, which served the interests of all parties by saving additional costs and expenses).

29. The Debtors do not desire to unnecessarily subject their own Customers to separate lawsuits filed pursuant to Bankruptcy Rule 7001(1) to obtain clarifying relief. Accordingly, the Debtors ask that the Court, also by the Process Order, require that those Customers listed on the Customer List that desire an adversary proceeding be commenced file a process objection ("***Process Objection***") or else be deemed to have waived conformance with Bankruptcy Rule 7001(a).

30. All Customers listed on the Customer List shall be served in the same manner as an adversary complaint and summons are to be served on a defendant under the Bankruptcy Rules;

accordingly, no prejudice will result. Proceeding in this manner will serve principles of judicial economy and save costs for the estates and the Customers while conforming with Fifth Circuit law.

**WHEREFORE**, the Debtors requests the entry of the Orders and such other further relief as is just.

Dated: March 31, 2026

Respectfully submitted:

*/s/Benjamin W. Kadden*
Benjamin W. Kadden, La. Bar No. 29927
bkadden@lawla.com
Stewart F. Peck, La. Bar No. 10403
speck@lawla.com
Douglas S. Draper, La. Bar No. 5073
ddraper@lawla.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@lawla.com
Coleman L. Torrans, La Bar No. 38917
ctorrans@lawla.com
**Lugenbuhl, Wheaton, Peck, Rankin &
Hubbard (A Law Corporation)**
601 Poydras Street, Suite 2755
New Orleans, LA  70130
Telephone: (504) 568-1990
Fax: (504) 310-9195

***Proposed Counsel for Debtors and
Debtors in Possession***

**EXHIBIT A**


**Process Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 26-10678** |
| | § | **(JOINTLY ADMINISTERED)** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| **Debtors.** [1] | § | |
| | § | **SECTION: A** |
| | § | |

**INTERIM ORDER RESTATING AND AFFIRMING AUTOMATIC TURNOVER**
**OBLIGATION AND APPROVING TURNOVER PROCESS**

Before the Court is the Debtors' *Expedited Motion for (I) Entry of Orders (A) Restating and Affirming Automatic Turnover Obligation and Approving Turnover Process and (B) Directing Customers to Turn Overdue and Owing Accounts Receivable to The Debtors, and (II) Granting Related Relief* (the "***Motion***")[2] [ECF Doc. __] filed by Crosby Marine Transportation, LLC, Crosby Tugs, L.L.C., Crosby Dredging, LLC, and Bertucci Contracting Company, L.L.C., as debtors and debtors-in-possession (collectively, "***Debtors***").

Considering the record and pleadings, the appliable law, and finding good cause,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** on an interim basis, as set forth herein.

2. Any entity (except one that is a custodian) in possession, custody, or control of property that the Debtors may use, sell, or lease under 11 U.SC. § 363, including any receipts, charter hire, or accounts receivable owed to the Debtors ("***Property***"), shall immediately deliver

---

[1]  An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4, No. 26-10681, ECF Doc. 4].

[2]  Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

1

to the Debtors, and account for, such Property or the value of such Property, unless such Property is of inconsequential value or benefit to the estates.

3.      Any Customer that remits payment or otherwise delivers Property in compliance with this Order shall be deemed to have fully satisfied its obligation to the extent paid, and such Customer's obligation shall be discharged against the Debtors and any of the Debtor's lenders (including but not limited to, JMB in its capacity as DIP Lender and assignee of the Hancock Whitney prepetition loan, the Other Secured Lenders, and the MCA Parties).  The satisfaction and turnover of the Property by any such Customer in compliance with this Order shall protect such Customer from multiple or inconsistent liability with respect to the Property and shall operate as a final adjudication that the Customer owes no further obligation to any party with respect to the Property.

4.      All parties in interest served with notice of the Motion and this Order, including JMB, the MCA Parties, and any other secured creditor asserting an interest in such receivables, are hereby barred and enjoined from asserting against any Customer any claim or other theory of liability arising from or relating to such Customer's good-faith payment or delivery of Property in compliance with this Order.

5.      Subject to any preexisting agreement between a Customer and a Debtor, a Customer may contest in good faith amounts that are alleged to be owed by the Customer to the Debtor(s) and such amounts that are disputed in good faith shall not be Property subject to this Order unless and until the Debtors and the Customer reach an agreement on the disputed amounts or as otherwise subsequently ordered by the Court.

6.      As adequate protection to any party in interest with a valid prepetition lien in a Debtor's accounts receivable—potentially including, but not limited to, the Debtors' secured

2

lenders and any MCA Parties—such  prepetition lien holders are granted a replacement lien on the same Debtor's post-petition receivables to the extent, and at the priority level, as existed against the applicable Debtor's prepetition accounts receivable, subject to the terms of any interim or final order by the Court regarding the use of cash collateral or the DIP Facility and the provisions of the Bankruptcy Code.

7.     Pursuant to the stipulation of the Debtors, any person that delivers Property pursuant to this Order shall be released from any claim with respect to the invoice paid by the Debtors and their estates.

8.     A final hearing on the Motion to consider the Debtors' request for an order compelling Customers to turn over accounts receivable payments to the Debtors is set for **April 9, 2026 at 9:30 a.m. (Central Time)** ("***Turnover Hearing***").

9.     Parties in interest may participate in the Turnover Hearing (I) in person; (II) by telephone only (Dial In: 504.517.1385, Access Code: 129611); or (III) by telephone using the dial-in number and video using https://gotomeet.me/judgegrabill (meeting code: "judgegrabill").

10.     Any party that objects to entry of the relief requested in the Motion on any basis must file an objection and serve it on any person-in-interest entitled to notice and the Limited-Service List no later than **April 8, 2026 at 3:00 p.m. (Central Time)** ("***Objection Deadline***"). Any objection not timely filed shall be deemed waived.

11.     Any person so served shall be deemed to have waived their right to an adversary proceeding with respect to the relief requested under the Motion unless said person files an objection ("***Process Objection***") to waiver of application Rule 7001(1) of the Federal Rules of Bankruptcy Procedure ("***Bankruptcy Rules***") in the above-captioned chapter 11 case and serves said Process Objection on the Limited-Service List no later than the Objection Deadline. The

3

failure to timely file and serve a Process Objection shall not be construed as a waiver of the protections provided by Bankruptcy Rule 7001(a) except with respect to the relief specified in the Motion. A party who fails to file a timely Process Objection ("*Waiving Party*") but timely objects on any other basis to the Motion shall have their objection heard and resolved as a contested matter pursuant to Bankruptcy Rule 9014.

12.     The Debtors shall IMMEDIATELY serve this Order on the persons listed on the Customer List to the Motion in the manner provided for the service of a complaint and summons under Bankruptcy Rule 7004.  Except as provided above, the Debtors shall also serve this Order by first-class U.S. Mail within two (2) days on all parties not receiving electronic notice through this Court's CM/ECF system pursuant to the Bankruptcy Rules, this Court's Local Rules, this Court's Complex Case Procedures, and any order issued by this Court limiting notice and file a certificate of service into the record.

**EXHIBIT B**


**Turnover Order**

1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 26-10678** |
| | § | **(JOINTLY ADMINISTERED)** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| **Debtors.** [1] | § | |
| | § | **SECTION: A** |
| | § | |

**FINAL ORDER FOR TURNOVER OF PROPERTY OF THE ESTATE**

Before the Court is the Debtors' *Expedited Motion for (I) Entry of Orders (A) Restating and Affirming Automatic Turnover Obligation and Approving Turnover Process and (B) Directing Customers to Turn Overdue and Owing Accounts Receivable to The Debtors, and (II) Granting Related Relief* (the "*Motion*")[2] [ECF Doc. __] filed by Crosby Marine Transportation, LLC, Crosby Tugs, L.L.C., Crosby Dredging, LLC, and Bertucci Contracting Company, L.L.C., as debtors and debtors-in-possession (collectively, "*Debtors*").

Considering the record and pleadings, the appliable law, and finding good cause,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** on a final basis, as set forth herein.

2.      Any entity (except one that is a custodian) in possession, custody, or control of property that the Debtors may use, sell, or lease under 11 U.SC. § 363, including any receipts, charter hire, or accounts receivable owed to the Debtors ("*Property*"), shall immediately deliver

---

[1]   An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4, No. 26-10681, ECF Doc. 4].

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

1

to the Debtors, and account for, such Property or the value of such Property, unless such Property is of inconsequential value or benefit to the estates.

3. The Debtors' customers listed on the attached **Exhibit B1** ("*Customers*") shall immediately make payment to the Debtors on any due and outstanding obligations for the provision of goods or services by the Debtors, subject to the terms agreed between the Customer and the Debtor (or Debtors, as applicable), any demand by any creditor or third person notwithstanding. Additionally, the Customers listed on the Customer List shall deliver payment to the Debtors on obligations for the provision services rendered by the Debtors as they become due on the terms agreed between the Customer and the Debtor (or Debtors, as applicable).

4. Any Customer that remits payment or otherwise delivers Property in compliance with this Order shall be deemed to have fully satisfied its obligation to the extent paid, and such Customer's obligation shall be discharged against the Debtors and any of the Debtor's lenders (including but not limited to, JMB in its capacity as DIP Lender and assignee of the Hancock Whitney prepetition loan, the Other Secured Lenders, and the MCA Parties). The satisfaction and turnover of the Property by any such Customer in compliance with this Order shall protect such Customer from multiple or inconsistent liability with respect to the Property and shall operate as a final adjudication that the Customer owes no further obligation to any party with respect to the Property.

5. All parties in interest served with notice of the Motion and this Order, including JMB, the MCA Parties, and any other secured creditor asserting an interest in such receivables, are hereby barred and enjoined from asserting against any Customer any claim or other theory of liability arising from or relating to such Customer's good-faith payment or delivery of Property in compliance with this Order.

6.      Subject to any preexisting agreement between a Customer and a Debtor, a Customer may contest in good faith amounts that are alleged to be owed by the Customer to the Debtor(s) and such amounts that are disputed in good faith shall not be Property subject to this Order unless and until the Debtors and the Customer reach an agreement on the disputed amounts or as otherwise subsequently ordered by the Court.

7.      As adequate protection to any party in interest with a valid prepetition lien in a Debtor's accounts receivable—potentially including, but not limited to, the Debtors' secured lenders and any MCA Parties—such prepetition lien holders are granted a replacement lien on the same Debtor's post-petition receivables to the extent, and at the priority level, as existed against the applicable Debtor's prepetition accounts receivable, subject to the terms of any interim or final order by the Court regarding the use of cash collateral or the DIP Facility and the provisions of the Bankruptcy Code.

8.      Pursuant to the stipulation of the Debtors, any person that delivers Property pursuant to this Order shall be released from any claim with respect to the invoice paid by the Debtors and their estates.

9.      The Debtors shall serve this Order by first-class U.S. Mail within three (3) days on all parties not receiving electronic notice through this Court's CM/ECF system pursuant to the Bankruptcy Rules, this Court's Local Rules, this Court's Complex Case Procedures, and any order issued by this Court limiting notice and file a certificate of service into the record.

**EXHIBIT B1**

**Customer List**

| No. | Customer | By Mailing Address | By Registered Agent | By Counsel |
|---|---|---|---|---|
| 1 | Alliance Energy Services, LLC | 1254 VALHI BLVD. Houma, LA 70360 | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | |
| 2 | Arena Offshore | 4200 Research Forest Dr., Suite 230 The Woodla | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | Tad Davidson          Hunton Andrews Kurth LLP          600 Travis Street, Suite 4200 Houston, Texas 77002 taddavidson@hunton.com |
| 3 | Cantrelle Services LLC | 111 East 26th Place Larose, LA 70373 | Armojen Cantrelle      111 East 26th Place LaRose, LA 70373 | |
| 4 | Cantium LLC | 111 Park Place Blvd., Suite 100 Covington, LA 70 | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | Kelly Perrier          General Counsel Cantium, LLC Kelly.Perrier@cantium.us; Amy Brumfield, amy.brumfield@cantium.us |
| 5 | Cajun Industries LLC | P. O. Box 104 Baton Rouge, LA 70821-0104 | Corporation Service Company          450 Laurel Street, 8th Floor Baton Rouge, LA 70801 | |
| 6 | Champagne Energy & Environmental Solutions | 115 Menard Road Houma, LA 70363 | Robert Champagne      115 Menard Rd. Houma, LA 70363 | |
| 7 | Chevron Production Co. | 100 Northpark Blvd. Covington, LA 70433 | Corporation Service Company 211 W. 7th Street, Suite 620 Austin, TX 78701 | |
| 8 | Curtin Maritime | P. O. Box 2531 Long Beach, CA 90801 | Corporation Service Company          450 Laurel Street, 8th Floor Baton Rouge, LA 70801 | |
| 9 | Ecoserv LLC | 9525 US Highway 167 Abbeville, LA 70510 | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | |
| 10 | GAC North America | 16200 Central Green Blvd. Houston, TX 77032 | The Corporation Trust Company  Corporation Trust Center 1209 Orange St. Wilmington, DE 19801 | |
| 11 | Ingram Marine Group | P. O. Box 23049 Nashville, TN 37202-3049 | Eleanor G. McDonald 4400 Harding Pike Nashville, TN 37205 | |
| 12 | John W Stone Oil Distributor LLC | 1601 Belle Chasse Hwy., Suite 300 Terryton, LA | Claudelle Vallette    1601 Belle Chase Hwy., Suite 300 Terrytown, LA 70056 | |
| 13 | Kenosis Operating Company | 1 Galleria Blvd., Suite 1520 Metairie, LA 70001 | Michael Blake, Jr.      410 South Van Avenue Houma, LA 70363 | |
| 14 | Kevin Gros Consulting | P. O. Box 1412 Larose, LA 70373 | Kevin Gros          736 W. 13th St. LaRose, LA 70373 | |
| 15 | Loop LLC | 137 Northpark Blvd. Covington, LA 70433 | Mark C. Garrison 137 Northpark Blvd. Covington, LA 70433 | clmenasco@liskow.com; mcgarrison@loopllc.com |
| 16 | Luhr Crosby LLC | 250 W. Sand Bank Rd. Columbia, IL 62236 | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | Jefffrey Penne, jpenne@mcgrathnorth.com; Jim Niemeier, jniemeier@mcgrathnorth.com |
| 17 | Modern American Recycling | P. O. Box 160 Amelia, LA 70340 | Dwight J. Caton      499 Powhattan Court Gibson, LA 70356 | |
| 18 | Marshland Equipment Rentals | 9545 Ward Line Road Bell City, LA 70630 | Patrick Keith Hebert 9545 Ward Line Rd. Bell City, LA 70630 | |

**EXHIBIT**

**B-1**

| | | | | |
|---|---|---|---|---|
| 19 | McDonough Marine Service | 3500 North Causeway Blvd., Suite 900 Metairie, | Corporation Service Company 450 Laurel Street, 8th Floor Baton Rouge, LA 70801 | Craig Brewer, cbrewer@mddonoughmarine.com; harry@bohmanmorse.com |
| 20 | Morrison Offshore LLC | P.O. Box 3301 Houma, LA 70361 | Chester F. Morrison, Jr. 9 Bayou Dularge Rd. Houma, LA 70363 | Kenneth F. Tamplain, Jr., Vice President and General Counsel, ktamplain@morrisonenergy.com |
| 21 | Patriot Marine Services | P. O. Box 187 Raceland, LA 70394 | Brooks Luke 5455 Hwy. 308 Lockport, LA 70374 | |
| 22 | Port of Iberia District Board of Commissioners | 4611 S. Lewis Street New Iberia, LA 70560 | Craig F. Romero-Executive Director P.O. Box 9986 New Iberia, LA 70562 | |
| 23 | Rose Cay Maritime LLC | 1321 Upland Drive PMB 20183 Houston, TX 7704 | CT Corporation System 1999 Bryan St., Suite 900 Dallas, TX 75201 | |
| 24 | Sabine Neches Navigation District | 8180 Anchor Drive Port Arthur, TX 77642 | Matthew Kaufman, CEO 8180 Anchor Drive Port Arthur, TX 77672 | |
| 25 | Space Exploration Technologies | 1 Rocket Road Hawthorne, CA 90250 | Corporation Service Company 450 Laurel Street, 8th Floor Baton Rouge, LA 70801 | |
| 26 | Tala Environmental LLC | | Kurt Crosby 17751 Highway 3235 Galliano, LA 70354 | |
| 27 | Thom-Sea Boat Builders | P. O. Box 53 Bourg, LA 70343 | Faith Filce 137 Barry Belanger Street Houma, LA 70363 | Chris Caplinger chris.caplinger@keanmiller.com |
| 28 | TK Towing Inc. | P. O. Box 2706 Morgan City, LA 70381 | Todd David Kirkpatrick 8120 Hwy. 182 East Morgan City, LA 70380 | |
| 29 | TPC Group LLC | P. O. Box 1422 Houston, TX 77251 | Paul Cullen 139 Bottnelli Place New Orleans, LA 70119 | vikki.marsh@tpcgroup.com |
| 30 | Triton Diving Services LLC | 309 Dickson Road Houma, LA 70363 | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | |
| 31 | T&T Marine Salvage Inc. | 4020 Flowserve Way Pasadena, TX 77503 | Jeff D. Peuler 365 Canal Street, Suite 2450 New Orleans, LA 70130 | dbusby@teichmangroup.com; snoewilson@sbsblaw.com |
| 32 | Venture Global Calcasieu Pass LLC | 1001 19th Street North, Suite 1500 Arlington, VA | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | |
| 33 | Walter Oil & Gas | 1100 Louisiana Suite 200 Houston, TX 77002 | CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816 | |
| 34 | White Fleet Drilling | 2103 Research Forest Drive Suite 250 The Wood | CT Corporation System 1999 Bryan St., Suite 900 Dallas, TX 75201 | Tad Davidson, Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002, taddavidson@hunton.com |