UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE; | CASE NO: 26-10678 |
| CROSBY MARINE TRANSPORTATION, LLC, et al. | CHAPTER 11 |
| | SECTION A |
| Debtors[1] | Joint Administration |

### MOTION OF ARBA CREDIT INVESTORS III, LP TO ENFORCE CASH COLLATERAL ORDER, AND FOR RELATED RELIEF

Arba Credit Investors III, LP ("Arba Credit") moves this Court for an order enforcing the Court's Final Cash Collateral Order, entered in the captioned matter on April 24, 2026 [ECF No. 294] (the "Cash Collateral Order" or "Order"), and ordering the Debtor to: (1) immediately and fully comply with certain provisions of the Cash Collateral Order that Debtor has failed to comply with to date—namely, paragraph 4 (c)(ii) and (iii) of the Order; (2) provide Arba Credit and the other Existing Secured Creditors in this matter with copies of the draft and final vessel management order between Tugs and CMT; and (3) all further relief as is just in the circumstances. In support of this motion, Arba Credit states as follows.

### JURISDICTION, VENUE

1.      This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §

---

[1] An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 2610680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26-10678, ECF Doc. 8; No. 26- 10679, ECF Doc. 3; No. 26-10680, ECF Doc. 3, No. 26- 10681, ECF Doc. 3]. (Crosby Marine Transportation, LLC ("CMT"), Crosby Tugs, L.L.C. ("Tugs"), Crosby Dredging, LLC ("Dredging") and Bertucci Contracting Company, L.L.C. ("Bertucci") are referred to herein collectively as the "Debtors.")

157(b)(2)(A), (M), and (O). The relief sought is further authorized by 11 U.S.C. §§ 105(a), 361, 363(c)(2), 363(e), and 1107, and is requested pursuant to Fed. R. Bankr. P. 9014 and Local Bankruptcy Rules 9013-1 and 9014-1.

**BACKGROUND**

2. On March 23, 2026 (the "Petition Date"), Debtors commenced this case by filing a voluntary petition under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. Arba Credit is the holder of that certain *Preferred Fleet Mortgage* (the "Fleet Mortgage") on certain vessels owned by Crosby Marine Transportation, LLC ("Crosby Transportation"), namely, (i) CROSBY RELIANT (Official Number 1218724), (ii) CROSBY INTEGRITY (Official Number 1120509) and (iii) CROSBY 301 (Official Number 1255025) (collectively, the "Vessels"), which was recorded and perfected prior to the Petition Date.

3. Arba Credits' rights and interests in the Vessels are set forth in the Fleet Mortgage, as well as that certain Loan Agreement (#27813-70002) (the "Loan Agreement") and Promissory Note, both dated December 29, 2022, granted by Crosby Transportation and Crosby Marine Repairs, LLC ("Crosby Repairs") as borrowers and Crosby Enterprises, L.L.C. ("Enterprises"), as guarantor, in favor of Truist Equipment Finance Corp ("TEFC"), dated December 29, 2022 (the "Note"), and other loan documents.[2]

4. Under the terms of the Loan Agreement and to further secure its payment in full to TEFC, Crosby Transportation granted security interests or liens, pursuant to the Uniform Commercial Code or other applicable law, in the Vessels and other "Collateral" as described in the Loan Agreement. The security interest and liens granted by CMT to TEFC in the Loan Agreement were perfected by the filing of a UCC-1 Financing Statement relating to the Vessels and other

---

[2] Debtors previously stipulated to the validity of Abra Credits' perfected liens in the vessels and Arba Credit's status as a secured creditor (also referred to an "Existing Secured Party") in this proceeding.

2

collateral described therein, including but not limited to any charter hire, instruments, accounts, general intangibles, related receivables and others products and proceeds thereof and described therein, filed January 9, 2023 as UCC #034081500004, in the office of the Clerk of Court for the Parish of Lafourche of State of Louisiana (the "UCC-1").

5.      Effective on or about March 5, 2025, and for good and valuable consideration, TEFC assigned all of its rights and interest in the Loan Agreement, Fleet Mortgage, Note, UCC-1 and other loan documents to Arba Credit as evidenced by an *Assignment of Preferred Fleet Mortgage* (the "Fleet Mortgage Assignment"), dated effective March 5, 2025.

6.      Subsequent to the execution of the Fleet Mortgage Assignment, Arba Credit entered into certain forbearance agreements with Crosby Transportation, Crosby Repairs and Enterprises due to uncured acts of default under the Loan Agreement and other loan documents, including but not limited to that certain Forbearance Agreement, dated January 23, 2026.

7.      In connection with the execution of the Forbearance Agreement, Crosby Transportation, Crosby Repairs and Enterprises executed a Consent Judgment in favor of Arba Credit (the "Consent Judgment"). Due to the failure of Crosby Transportation, Crosby Repairs and Enterprises to cure the acts of default that were the subject of the Forbearance Agreement, the Consent Judgment was filed in that certain matter captioned: *Arba Credit Investors III, L.P. v. Crosby Marine Transportation, L.L.C., et al.*, United States District Court for the Eastern District of Louisiana, Ca. No. 26-00582 (the "Foreclosure Action") on March 18, 2026, prior to the Petition Date. The court in the Foreclosure Action entered order making the Consent Judgment a judgment of the court on April 17, 2026.

8.      At all times material hereto, Debtors have acknowledged Arba Credit's perfected liens in the Vessels which are the subject of the Cash Collateral Order and the Consent Judgment.

3

4915-4121-9764, v. 2

As such, Arba Credit is a secured creditor with a direct and substantial interest in the relief granted by this Court to Debtors pursuant to the Cash Collateral Order, which has a direct impact on Arba Credit's rights and interests in the Vessels as recognized in the Consent Judgment and the stipulations by Debtors in this matter.

9. On April 24, 2026, this Court entered the Cash Collateral Order following a hearing that included extensive witness testimony and documentary evidence, as well as lengthy negotiations between Debtors and the Existing Secured Party creditors (including Arba Credit), concerning the relief requested in Debtors' Motion for Entry of Interim and Final Orders (a) Authorizing Postpetition Use of Cash Collateral, (b) Granting Adequate Protection, (c) Modifying the Automatic Stay, (d) Scheduling a Final Hearing, and (e) Granting Related Relief (ECF No. 28).

10. As entered by this Court, the Cash Collateral Order authorized the Debtors' limited use of Cash Collateral—including the Vessels that are the subject of Arba Credit's Fleet Mortgage—as "expressly authorized" in the Order. Among other requirements, the Cash Collateral Order permitted the Debtors' use of Cash Collateral subject to "Adequate Protection" in favor of Arba Credit and the other Existing Secured Parties as specified in the Order. As it relates to the instant motion, the Adequate Protection ordered by the Court required that Debtors:

- maintain financial reporting and accounting on a vessel-by-vessel basis as it concerns the vessels that are part of the Existing Secured Party Collateral and provide such reporting to the applicable Existing Secured Party on a weekly basis;

- provide each of the Existing Secured Parties with copies of all charter hire agreements and related documents related to the vessels that are part of the applicable Existing Secured Party Collateral […]

[*See* ECF No. 294, page 8, Paragraph 4 (c)(ii) and (iii).]

11. Significantly, the Cash Collateral Order did not require Debtors to remit adequate protection payments to Arba Credit or any other Existing Secured Party. [*See generally* ECF. No.

294.] Moreover, during the 341 Meeting of Creditors conducted by the Office of the United States Trustee on May 18, 2026, representatives of Debtors testified that Debtors had no plans to institute periodic payments to Arba Credit for the continued use of the Vessels during the pendency of this proceeding.

**RELIEF REQUESTED**

12.     Since the entry of the Cash Collateral Order, Debtors have continued to operate each of Arba Credit's Vessels to generate revenue. The continued use and operation of the Vessels by Debtors necessarily results in the diminishment and deterioration of Arba Credit's collateral and other risks of loss. The risks to Arba Credit's collateral are especially significant here since Debtors were not ordered to remit adequate protection payments to Arba Credit and Debtors have confirmed that they have no intention of remitting any such payments. Notwithstanding the fact that Debtors have utilized and intend to continue to utilize Arba Credit's Vessels without payment to Arba Credit, Debtors have failed to comply with the Adequate Protection provisions contained in Paragraph 4(c)(iii) of the Cash Collateral Order, failed to provide the vessel management agreement that Debtors have promised to provide to Arba Credit and the other Existing Secured Parties at the First Day Hearings held in this proceeding and several times thereafter, and also failed to regularly and fully comply with Paragraph 4(c)(ii) of the Cash Collateral Order.

13.     With respect to the Cash Collateral Order Paragraph 4 (c) (iii) requirement that Debtors' provide "Existing Secured Parties with copies of all charter hire agreements and related documents related to the vessels that are part of the applicable Existing Secured Party Collateral," Debtors have failed to provide any charter hire agreements, work orders or related documents pertaining to Arba Credit's Vessels despite this Court's Order that it do so.

4915-4121-9764, v. 2

14. Although Debtors have produced certain master time charters and master service agreements related to its vessel fleet, Debtors have never provided Arba Credit with any agreements that specifically relate to the Vessels that are the subject of Arba Credit's Fleet Mortgage. Likewise, Debtors have never produced any "related documents," such as vessel request orders, purchase orders, work orders, or other documents, pertaining to the work actually performed and/or to be performed by the Vessels which will provide, among other things, the applicable charter hire rates and the durations of the time charters. Furthermore, Debtors' representatives did not provide information related to these documents during the June 5, 2026 Lender Weekly Webinar.

15. Further and as noted above, Debtors have repeatedly advised the Court and Existing Secured Parties that Tugs is preparing a vessel management agreement for the management and operation of the vessels owned by CMT (which include Arba Credit's Vessels) in order to fairly allocate the income derived from these vessel after deducting Tugs' operating and overhead expenses.

16. To date, Debtors have not shared the vessel management agreement, even in draft form, with the Existing Secured Parties despite multiple requests by Arba Credit and other Existing Secured Parties that it be provided to them. This is not a significant task as there are multiple forms of ship management agreements commonly used in the United States and around the world. Moreover, Debtors' representatives did not address the vessel management agreement during the June 5, 2026 Lender Weekly Webinar in response to Arba Credit's written questions for an update

17. With respect to this Court's order that Debtors maintain and provide "***on a weekly basis***" to Arba Credit (and other Existing Secured Parties) "financial reporting and accounting on a vessel-by-vessel basis" (*see* ECF No. 294, p. 8, Para. 4(c)(ii)), Debtors provided a "Preliminary Crosby Vessel Revenue" report to Abra Credit on May 14, 2026 for the seven (7) week period running from March 22 through May 3, 2026, and a follow-up "Preliminary Crosby Vessel

Revenue" report nearly thirty (30) days later, on June 12, 2026, for the period of April 5 through May 24, 2026. However, both reports were marked "DRAFT" and merely listed "Estimated Vessel Revenue." These reports further state: "*estimated revenue does not mean vessels have invoiced or collected against estimated revenue*." To date, Debtors have not supplemented their Preliminary Crosby Vessel Revenue reports with actual earnings information.

18.     Debtors and/or Debtors' representatives also provided Arba Credit with access to a spreadsheet that includes "Revenue Utilization by Vessel." However, that spreadsheet contains no indication as to whether the information contained therein represents estimated or actual vessel revenue. Furthermore, the "Revenue Utilization by Vessel" spreadsheet appears to contain some inconsistencies with the information provided in the May 14 and June 12 "Preliminary Vessel Revenue Reports." Debtors have failed to provide *actual weekly* financial reporting and accounting on a vessel-by-vessel basis as ordered by this Court.

19.     Since Debtors have made no provision for adequate protection payments to Arba Credit for the use of the Vessels during the pendency of this proceeding, Arba Credit requests that this Court enter a further order enforcing the Cash Collateral Order and requiring Debtors to immediately and comply with the Adequate Protection provisions contained in the Order, including without limitation Paragraph 4(c)(ii) and (iii).

20.     Arba Credit further requests that this Court order Debtors to provide a draft of vessel management agreement to Arba Credit and the other Existing Secured Parties for review and comment by a date certain but in no event later than 10 days from the entry of this Court's Order and ordering that a final form of vessel management agreement be submitted to this Court for approval no later than 21 days from the entry of this Court's Order.

4915-4121-9764, v. 2

21. Arba Credit reserves its rights to seek modification of the Cash Collateral Order and/or sanctions because of Debtors' failure to comply with this Court's Order.

## CONCULSION

**WHEREFORE**, Arba Credit Investors III, LP respectfully requests that the Court enter an Order: (1) enforcing its Cash Collateral Order issued on April 24, 2026, including but not limited to the requirement contained in Paragraph 4(c)(ii) and (iii) therein; (2) requiring Debtors to circulate a draft version of a proposed vessel management agreement to the Existing Secured Creditors no later than 10 days from the entry of this Court's Order and ordering that a final form of vessel management be submitted to this Court for approval no later than 21 days from the entry of this Court's Order; and (3) granting all other relief deemed just and equitable.

Dated June 17, 2026          Respectfully submitted,

*/s/ John A. Cangelosi*
**HENRY A. KING (#7393)**
**JOHN A. CANGELOSI (#26835)**
**KING & JURGENS, LLC**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
Email: hking@kingjurgens.com
jcangelosi@kingjurgens.com

***Attorneys for Arba Credit Investors III, L.P.***

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2026, I electronically filed the foregoing with the Court by using the Court's CM/ECF system thereby serving all registered users in this matter.

/s/ John A. Cangelosi
JOHN A. CANGELOSI

8

4915-4121-9764, v. 2