## UNITED STATES BANKRTUPCY COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 26-10678** |
| | § | **(JOINTLY ADMINISTERED)** |
| **CROSBY MARINE TRANSPORTATION, LLC,** | § | |
| | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| | § | |
| **Debtors.¹** | § | |
| | § | **SECTION: A** |

## APPLICATION FOR AUTHORITY TO EMPLOY AND COMPENSATE CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF THE DEBTORS' BUSINESSES

**A FINAL HEARING WILL BE CONDUCTED ON THIS MATTER ON July 9, 2026 AT 9:30 A.M. (CENTRAL TIME) AT THE UNITED STATES BANKRUPTCY COURT, 500 POYDRAS ST., COURTROOM B-709, NEW ORLEANS, LOUISIANA 70130. PARTIES IN INTEREST MAY PARTICIPATE IN THE HEARING (I) IN PERSON; (II) BY TELEPHONE ONLY (DIAL IN: 504.517.1385, ACCESS CODE: 129611); OR (III) BY TELEPHONE USING THE DIAL-IN NUMBER AND VIDEO USING HTTPS://GOTOMEET.ME/JUDGEGRABILL (MEETING CODE: "JUDGEGRABILL"). IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Crosby Marine Transportation, LLC ("Transport"), Crosby Tugs, LLC ("Tugs"), Crosby Dredging, LLC ("Dredging") and Bertucci Contracting Company, LLC. ("Bertucci," and

---

1 An Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 25-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], was entered on March 24, 2026, [No. 26- 10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4, No. 26-10681, ECF Doc. 4].

{00358846-3}

collectively with Transport, Tugs, and Dredging "Debtors"), as debtors and debtors-in-possession, hereby submit this *Application for Authority to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Businesses* (the "Application") and respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2.      The statutory bases for the relief requested herein are sections 105(a), 363(c), 1107(a) and 1108 of title 11 of chapter 11 of the United States Code (as amended, the "Bankruptcy Code").

## Background

3.      On March 23, 2026, (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing chapter 11 bankruptcy cases (the "Bankruptcy Cases").  *See* 11 U.S.C. § 301.

4.      On March 24, 2026, the Court entered an order [ECF Doc. 9] providing that the Bankruptcy Cases are to be consolidated for procedural purposes only and shall be jointly administered by the Court under, *In re Crosby Marine Transportation, LLC*, Case No. 26-10678.

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession, under sections 1107 and 1108 of title 11 of the Bankruptcy Code.

6.      Additional information regarding the circumstances leading to the commencement of the Bankruptcy Cases and information regarding the Debtors' business and capital structure is set forth in the Declaration of Lawrence Perkins in Support of Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [ECF Doc. 45].

**Relief Requested**

7. The Debtors respectfully request that the Court approve their employment of the Ordinary Course Professionals (as defined below) without requiring the submission of separate retention pleadings for each Ordinary Course Professional. The professionals listed in this Application are meant to be exemplary only and the Debtors reserve the right to employ and pay additional professionals within the ordinary course of business. All professionals that are paid in the ordinary course of business of the Debtors will be disclosed to the United States Trustee, the Official Committee of Unsecured Creditors and all other parties in interest.

**Basis for Relief**

8. Section 363(c)(1) permits a debtor in possession the authority to enter into transactions and use the property of the estate "in the ordinary course of business" without notice or hearing. 11 U.S.C. § 363(c)(1). "Only extraordinary transactions which are 'different from those that might be expected to take place,' need be brought to the attention of creditors and other interested parties to allow them to voice any objections to the debtor's proposals." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986), *quoting In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983).

9. Two tests have emerged to determine whether transactions fall within the "ordinary course of business": the "vertical dimension" (creditor's expectation); and the "horizontal dimension" (the industry standard). *Id.* The vertical test considers a debtor's prepetition business practice. *Id.* at 617. The horizontal analysis considers whether this is ordinary course for other businesses of a similar nature. *Id.* at 618.

10.     The Debtors' employees, in the day-to-day performance of their duties, regularly call upon certain professionals, including attorneys, accountants and consultants (collectively, the "Ordinary Course Professionals"), to assist them in carrying out their assigned responsibilities.

11.     Prior to the Petition Date, Phelps Dunbar, LLP ("Phelps") acted for many years as essentially outside general counsel for the Debtors.  The advice and services provided to the companies included general commercial and corporate advice; investigation and handling of labor and employment matters; advice on and handling of U.S. Coast Guard issues and investigations; responding to third-party subpoenas; advice on and handing of commercial transactions; preparation of Master Services Agreements, Master Charter Agreements, and other such blanket contracts; preparation and/or review of other contracts and commercial documents submitted to the companies by existing and prospective customers prior to execution; and handing of settlements and preparation of settlement documents for property damage claims falling within the companies' insurance deductibles.  All of these matters are understood to be issues of ongoing concern that must be dealt with in the ordinary course of business during the reorganization. Phelps satisfies the vertical dimension.  Phelps also satisfies the horizontal dimension as the type of work that Phelps performs for the Debtors is common to the maritime industry and other companies similarly situated would have counsel for these ordinary business tasks.

12.     As part of the Debtors' operations, they often have to get appraisals of their vessels for limitation actions, as well as inventory of the Debtors' assets and accounting purposes.  The Debtors historically have used DLS Marine Survey and Appraisal ("DLS").  DLS is essential to the every day operations of the Debtors as they are often called upon to get certificates of insurance for the vessels owned by the Debtors. Further, it is common for other companies in the maritime industry to employ appraisers in the ordinary course of business operations.

4

{00358846-3}

13. Pre-petition, the Debtors also employed Matt Miller and Miller Sullivan & DeMarcay, LLC ("Miller") as tax counsel for all interactions with the IRS. Given the size of the Debtors' workforce, the Debtors rely on Miller to file all form 941s, communicate with the IRS agents assigned to each Debtor and ensure that the Debtors are in compliance with their monthly and quarterly tax requirements. Miller also satisfies both the vertical and horizontal dimensions.

14. Although not paid by the Debtors, the Debtors are represented by Jefferson Tillery at Jones Walker with respect to litigation related services in Louisiana. Importantly, Mr. Tillery is compensated directly from the Debtors' insurers. No estate funds will be used to compensate Mr. Tillery. The Debtors only include Mr. Tillery in this Application because, although compensated outside of the estate, he will be representing the Debtors as counsel. Although most litigation will be stayed upon the commencement of these chapter 11 proceedings, the Debtors, out of an abundance of caution, seek authority to retain the services of Mr. Tillery (as well as other professionals), should circumstances render such services necessary during the pendency of the cases.

15. The key question is not whether the people retained and hired by the Debtors are "professionals." They certainly are. Rather, the question is "whether a person is 'central' to the administration of the estate in classifying the person as a 'professional' under § 327. *In re Cyrus II P'ship*, No. 05-39857, 2008 WL 3003824, at *2 (Bankr. S.D. Tex. July 31, 2008). *See also*, *Matter of Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) ("In the context of a debtor proceeding, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval. For the purposes of section 327(a), 'professional person' is limited to persons in those occupations *which play a central role in the administration of the debtor proceeding*." (emphasis added)).

{00358846-3}

16. In this context, the Ordinary Course Professionals are not playing a "central role" in the administration of the Debtors' estates. Rather, the Debtors rely on these Ordinary Course Professionals in the day-to-day operation of their businesses. The Debtors cannot continue to operate their businesses with sound business practice unless they retain and pay for the services of the Ordinary Course Professionals. The operation of the Debtors' businesses would be hindered if the Debtors were required to submit to the Court an application, affidavit and proposed retention order for each Ordinary Course Professional and if each Ordinary Course Professional was required to apply for approval of its employment and compensation. Further, a number of the Ordinary Course Professionals are unfamiliar with the fee application procedures employed in bankruptcy cases. Some of the Ordinary Course Professionals might be unwilling to work with the Debtors if these requirements were imposed. The uninterrupted services of the Ordinary Course Professionals are vital to the Debtors' continuing operations and their ultimate ability to reorganize.

17. Importantly, the cost of preparing and prosecuting these retention applications and fee applications would be significant and unnecessary because such costs would ultimately be borne by the Debtors' estates.

18. Moreover, a requirement that the Ordinary Course Professionals each file retention pleadings and follow the usual fee application process required of other bankruptcy professionals would burden the Office of the Clerk of the Court and the United States Trustee's office with unnecessary fee applications. This Application proposes a procedure to alleviate such a burden.

19. The Debtors propose to file a statement with the Court and to serve such statement on the United States Trustee and the Official Committee of Unsecured Creditors appointed in these cases on August 1, 2026, and the first of every third month thereafter that these cases are pending.

{00358846-3}

Such statement shall include the following information for each Ordinary Course Professional: (a) the name of such Ordinary Course Professional, (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such Ordinary Course Professional during the previous 120 days and (c) a general description of the services rendered by each Ordinary Course Professional.

20. Although some of the Ordinary Course Professionals may hold minor amounts of unsecured claims against in the Debtors in respect of prepetition services rendered, the Debtors do not believe that any of the Ordinary Course Professionals have an interest materially adverse to the Debtors, their creditors, or other parties in interest, and thus, none would be retained who do not meet, if applicable, the special counsel retention requirement of section 327(e) of the Bankruptcy Code.

21. To the extent parties-in-interest have questions or concerns related to payments to any Ordinary Course Professional, the Debtors will supply such parties with additional information regarding the work performed and the fees and expenses incurred to permit such parties to reasonably evaluate such payments.

22. The Ordinary Course Professionals will not be involved in the administration of these chapter 11 cases; rather, they will provide services in connection with the Debtors' ongoing business operations. As a result, the Debtors do not believe that the Ordinary Course Professionals are "professionals," as that term is used in section 327 of the Bankruptcy Code, whose retention must be approved by the Court.[2] Nevertheless, out of an abundance of caution, the Debtors seek

---

[2] *See*, *e.g., Elstead v. Nolden (In re That's Entertainment Mkt'g Group, Inc.)*, 168 B.R. 226, 230 (N.D. Cal. 1994) (only the retention of professionals whose duties are central to the administration of the estate require prior court approval under section 327); *In re Madison Management Group, Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992) (same); *In re Sieling Assocs. Ltd. Partnership*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (same); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (no need for section 327 approval of the fees of a management and consulting firm that performed

7

the relief requested in this Application to avoid any subsequent controversy regarding the Debtors' employment and payment of the Ordinary Course Professionals during the pendency of these chapter 11 cases. The Debtors shall seek specific Court authority to employ all professionals involved in the actual administration of these chapter 11 cases pursuant to section 327 of the Bankruptcy Code.

23.     The relief requested in this Application has been granted routinely by numerous courts.[3] The Debtors and their estates would be well served by authorizing the retention of the Ordinary Course Professionals because of such professionals' past relationship and understanding of the Debtors and their operations. It is in the best interest of all of the parties and the creditors to avoid any disruption in the professional services rendered by the Ordinary Course Professionals in the day-to-day operations of the Debtors' businesses.

---

only "routine administrative functions," and whose "services were not central to [the] bankruptcy case"); *In re D'Lites of Am., Inc.*, 108 B.R. 352, 353 (Bankr. N.D. Ga. 1989) (section 327 approval is not necessary for "one who provides services to debtor that are necessary regardless of whether petition was filed"); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327); *In re Pacific Forest Indust., Inc.*, 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989) "professional person," under section 327 because his testimony did not measurably affect the administration of the estate); *In re Johns-Manville Corp.*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327).

[3] *See*, *e.g.*, *In re Harvest Oil & Gas, LLC, et al.*, 15-50748 (Bankr. W.D.La. 2015) (order authorizing employment and compensation of professionals in the ordinary course of business); *In re Louisiana Riverboat Gaming Partnership*, 12-12013 (Bankr. W.D.La. 2012); *In re Louisiana Riverboat Gaming Partnership*, 08-10824 (Bankr. W.D.La. 2008) (same); *In re OCA, Inc.*, 06-10179 (Bankr. E.D. La. 2006) (same); *In re Babcock & Wilcox Company,* No. 00-10992 (Bankr. E.D. La. 2000) (same); *In re Forcenergy Resources, Inc.*, No. 99-11392 (Bankr. E.D. La. 1999); *In re Morrison Knudsen Corp.*, No. 96-1006 (Bankr. D. Del. June 25, 1996) (Walsh, J.); *In re Abrasive Indus., Inc.*, No. 94-135-HSB (Bankr. D. Del. Feb. 22, 1994) (order authorizing retention and employment of professionals in the ordinary course of business) (Balick, J.); *In re Trans World Airlines, Inc.*, No. 92-115 (Bankr. D. Del. Mar. 9, 1992) (same relief as that granted in *Abrasive*) (Balick, J.); *accord In re CSC Indus., Inc./Cooperweld Steel Co.*, Nos. 93-41898 2 and 93-41899 (Bankr. N.D. Ohio Jan. 28, 1994) (same, except for employment of outside labor counsel, for which debtors' counsel agreed on record during hearing to seek separate relief) (Bodoh, J.); *In re Federated Dep't Stores, Inc.*, No. 1-90-00130 (Bankr. S.D. Ohio Jan. 15, 1990) (same for all professions) (Aug, J.); *In re Cardinal Indus., Inc.*, No. 2-89-02779 (Bankr. S.D. Ohio June 29, 1989) (same for all professionals) (Sellers, J.).

8

**No Prior Request**

24. No prior application for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order authorizing the Debtors to employ and compensate certain Ordinary Course Professionals on the terms and conditions set forth herein and grant such further relief as is just and proper.

Respectfully submitted:

*/s/Benjamin W. Kadden*
Benjamin W. Kadden, La. Bar No. 29927
bkadden@lawla.com
Stewart F. Peck, La. Bar No. 10403
speck@lawla.com
Douglas S. Draper, La. Bar No. 5073
ddraper@lawla.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@lawla.com
Coleman L. Torrans, La Bar No. 38917
ctorrans@lawla.com
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard (A Law Corporation)**
601 Poydras Street, Suite 2755
New Orleans, LA 70130
Telephone: (504) 568-1990
Fax: (504) 310-9195

*Counsel for Debtors and*
*Debtors in Possession*

9

{00358846-3}