**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 26-10678** |
| | § | **(JOINTLY ADMINISTERED)** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** *et al.,* | § | |
| | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| **DEBTORS.**[1] | § | |
| | § | **SECTION A** |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR AN ORDER GRANTING DERIVATIVE STANDING TO
COMMENCE, PROSECUTE, AND SETTLE CERTAIN LIEN CHALLENGE
CLAIMS AND CAUSES OF ACTION**

**NOW INTO COURT**, through the undersigned counsel, comes the Official Committee of

Unsecured Creditors of Crosby Tugs, L.L.C. and Crosby Dredging, LLC (the "Committee"), and

files this motion (the "Motion")[2] and requests entry of an order, substantially in the form attached

hereto as **Exhibit A** (the "Proposed Order"), granting the Committee standing to pursue, and if

appropriate, settle certain lien challenge claims (collectively, the "Challenge Claims") on behalf

of and for the benefit of the estates of the above-captioned debtors and debtors-in-possession (the

"Debtors") as asserted in the proposed complaint of the Committee attached hereto as **Exhibit B**

---

[1]      The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4; No. 26-10681, ECF Doc. 4]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Inshore Marine Service, L.L.C. [No. 26-11734], (ii) Crosby Marine Repair, L.L.C. [No. 26-11735], (iii) Crosby Offshore Marine Service, L.L.C. [No. 26-11736], (iv) Kurt Crosby, L.L.C. [No. 26-11737], (v) Tala Marine, L.L.C. [No. 26-11738], (vi) Webb Crosby, L.L.C. [No. 26-11739], (vii) Crosby Inland Marine, LLC [No. 26-11740], (viii) Crosby Real Estate, LLC [No. 26-11741], (ix) Tala Real Estate, LLC [No. 26-11742], and (x) Crosby Enterprises, L.L.C. [No. 26-11743], on July 21, 2026. [No. 26-10678, ECF Doc. 662; No. 26-11734, ECF Doc. 10; No. 26-11735, ECF Doc. 9; No. 26-11736, ECF Doc. 9; No. 26-11737, ECF Doc. 9; No. 26- 11738, ECF Doc. 9; No. 26-11739, ECF Doc. 9; No. 26-11740, ECF Doc. 9; No. 26-11741, ECF Doc. 9; No. 26-11742, ECF Doc. 9; No. 26-11743, ECF Doc. 9].

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Non-Substantively Amended Declaration of Lawrence Perkins in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Dkt. No. 45] and the Final Cash Collateral Order (defined herein), as applicable.

(the "Proposed Complaint").[3]  In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Committee investigated the validity, extent, priority, and perfection of certain liens asserted by 14 lenders against the Debtors' vessel fleet and related assets.  That investigation revealed that certain liens and security interests asserted by the fleet lenders were not properly perfected as of the Petition Date, and that certain assets are not subject to enforceable liens at all. Moreover, the Committee asserts that all of the Debtors' postpetition vessel earnings are estate property acquired after the filing of these cases that is cut off from the fleet lenders' prepetition liens by operation of the Bankruptcy Code.

2.      Pursuant to Paragraph 5 of the Final Cash Collateral Order (defined below), the Committee possesses the right to commence a challenge to the amount, validity, perfection, enforceability, priority or extent of the liens and claims of the fleet lenders or otherwise objecting to or challenging any of the admissions, stipulations, findings or releases included in the Final Cash Collateral Order.  The Final Cash Collateral Order further requires that any motion for standing be accompanied by a proposed complaint setting forth the basis for such challenge with specificity.

3.      The Committee therefore seeks an order granting it derivative standing to commence, prosecute, and, if appropriate, settle claims related to challenging certain of the liens as set forth in the Proposed Complaint, attached as **Exhibit B**.[4]

---

[3]      The Committee reserves the right to revise the Proposed Complaint or to amend it after filing.

[4]      The Committee further reserves the right to seek standing to pursue additional claims related to its ongoing investigation of the liens and claims asserted against the Additional Debtors (defined below).

4.      As discussed more fully below, the Committee satisfies all of the requirements for derivative standing under Fifth Circuit jurisprudence.  The Challenge Claims are plainly colorable, and the Debtors are precluded from prosecuting the Challenge Claims pursuant to the stipulations and releases in the Final Cash Collateral Order.  The Committee respectfully requests that the Court confer standing on the Committee so that the value of the Challenge Claims may be realized, rather than forfeited and released under the Final Cash Collateral Order.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Eastern District of Louisiana has jurisdiction to consider this matter pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a), 1103, and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELEVANT BACKGROUND

I.      **General Background**

8.      On March 23, 2026 (the "Petition Date"), Crosby Marine Transportation, LLC ("Crosby Marine Transportation"), Crosby Tugs, L.L.C. ("Crosby Tugs"), Crosby Dredging, LLC ("Crosby Dredging"), and Bertucci Contracting Company, L.L.C. ("Bertucci," and collectively, the "Original Debtors") commenced the above-titled cases by each filing a petition for relief under chapter 11 of the Bankruptcy Code.  On July 16, 2026 (the "Additional Debtor Petition Date"), an additional 10 affiliated entities of the Original Debtors (collectively, the "Additional Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").

9.      The Debtors are authorized to continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

10.      On April 7, 2026, the Office of United States Trustee for Region 5 appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code [Dkt. No. 166].  The Committee consists of the following seven (7) members: (1) Kirby Inland Marine, LP; (2) Retif Oil & Fuel, LLC; (3) CGBM 100, LLC; (4) Marshland Equipment Rentals, LLC; (5) Hydroterra Technologies, LLC; (6) Elite Diesel Performance, LLC; and (7) Masse Contracting, Inc.

11.      On April 8, 2026, the Committee held its initial meeting and, among other things, selected Seward & Kissel LLP and the firm of Fishman Haygood L.L.P. as its general bankruptcy co-counsel in these Bankruptcy Cases.  On April 9, 2026, the Committee selected FTI Consulting, Inc. as its financial advisor.

**II.     The Debtors' Business and Capital Structure**

12.      According to the Debtors, they generate the majority of their revenue through two core businesses: the Tug Business and the Dredge Business.  Crosby Tugs is the primary operating entity for the Tug Business and Crosby Dredging is the primary operating entity for the Dredge Business.

13.      Most of the Debtors' fleet is owned by Crosby Marine Transportation.  Crosby Marine Transportation does not have employees; rather, its vessels are crewed, operated and chartered by Crosby Tugs.  Crosby Tugs is the primary customer-facing entity for the Tug Business and is the primary contract counterparty for the Tug Business.  Crosby Dredging is the primary customer-facing entity for the Dredge Business and is the primary contract counterparty for the Dredge Business.

14.     According to the Debtors, the cash receipts for the Tug Business are generated through, or related to, the charter of vessels, which are deposited into the Tug Receipts Account; and the majority of the cash receipts for the Dredge Business are generated through, or related to, contracts for dredging projects, which are deposited into the Dredge Receipts Account.  On an as-needed basis, the Debtors move such cash from and between the Tugs Receipts Account and the Dredge Receipts Account.  Further, according to the Debtors, cash does not flow for the majority of intercompany transactions among the Debtors and their affiliates; rather, the Debtors account for such transactions by revenue adjustments through "due to / due from" entries.  Intercompany charters and loans historically have not been documented by written contracts or notes.

15.     Prior to the Petition Date, the Debtors entered into certain financing agreements with the fleet lenders secured by liens attaching to a different portion of their fleet of vessels and equipment (the "Fleet Facilities").  The fleet lenders subject to this Motion are as follows (collectively, the "Fleet Lenders"):

- PNC Bank, N.A.
- City National Bank of Florida
- Regions Commercial Equipment Finance, LLC
- Arba Credit Investors, III, L.P. (Truist)
- M C Bank & Trust Company
- Kompass Kapital Funding, LLC
- J.J. Astor & Co.
- Atlantic Union Equipment Finance, Inc.
- Banc of America Leasing & Capital, LLC
- South Lafourche Bank & Trust Company
- Citizens Asset Financing
- State Bank & Trust Company
- ELGA One, LLC-Series III
- Post Road Equipment Finance SPV, LLC

16.     The Fleet Facilities are purportedly secured by preferred ship mortgages covering the Debtors' vessel fleet (the "Vessel Collateral").  In addition, certain of the Fleet Lenders also assert liens on other Debtor assets, including vessel-related collateral and inventory and receivables (the "Non-Vessel Collateral").

17.     Attached as Exhibit 1 to the Final Cash Collateral Order (defined below) is a schedule prepared by the Debtors that identifies each of the Fleet Facilities, the Debtors' obligations arising under the Fleet Facilities (the "Secured Party Obligations"), and the assets allegedly securing the Fleet Facilities (the "Secured Party Collateral").

18.     The nature, extent, validity, priority, perfection, and enforceability of the liens securing the Fleet Facilities (the "Secured Party Liens") are the subject of the Committee's investigation and the Proposed Complaint.

**III.     Cash Collateral Order**

19.     On April 24, 2026, the Court entered the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Existing Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Dkt. No. 294] (the "Final Cash Collateral Order").

20.     In the Final Cash Collateral Order, the Debtors stipulated (the "Debtors' Stipulations"), among other things, that (a) the Secured Party Obligations constitute legal, valid, binding, enforceable, and non-avoidable obligations of the applicable Debtors; (b) that the Secured Party Liens constitute legal, valid, binding, properly perfected, and enforceable liens and security interests in the applicable collateral, including cash collateral; (c) that no offsets, defenses, challenges, objections, claims, or counterclaims existed with respect to such obligations or liens; (d) that such obligations and liens were not subject to avoidance or subordination; and (e) all

proceeds of the Secured Party Collateral constitute "cash collateral" of the Fleet Lenders within the meaning of section 363(a) of the Bankruptcy Code.

21. Paragraph 5 of the Final Cash Collateral Order expressly preserves the Committee's right to challenge the validity, extent, priority, perfection, and enforceability of the Secured Facility Documents, the Secured Party Obligations, the Secured Party Liens, and the Secured Party Collateral by commencing an appropriate challenge prior to the Challenge Deadline.

22. The Final Cash Collateral Order further provides that any request for standing to pursue such challenge claims must be accompanied by a proposed complaint setting forth the basis for such challenge with specificity.

## IV. The Committee's Investigation

23. Following its appointment, the Committee commenced an investigation into the Debtors' assets, liabilities, prepetition financing arrangements, Secured Party Obligations, and the Secured Party Liens.

24. In connection with its investigation, the Committee reviewed loan documents, security agreements, vessel abstracts, financing statements, mortgages, public records, schedules, statements, and other information made available by the Debtors and the Fleet Lenders.

25. Based on that investigation, the Committee identified potential defects relating to the attachment, perfection, scope, and enforceability of certain Secured Party Liens held by the Fleet Lenders as identified in the Proposed Complaint.

26. The Committee has determined that the Challenge Claims are potentially valuable estate assets and that successful prosecution of such claims could materially increase the value available for distribution to unsecured creditors.

**RELIEF REQUESTED**

27.     The Committee seeks entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the Committee authority and standing to commence, prosecute, litigate, and, if appropriate, settle the Challenge Claims asserted in the Proposed Complaint attached hereto as **Exhibit B** on behalf of and for the benefit of the Debtors' estates.

28.     The Committee respectfully submits that the Challenge Claims are colorable and valuable assets of the Debtors' estates.  The successful prosecution of the Challenge Claims will preserve value and provide an enhanced recovery for the estates and their unsecured creditors.

**BASIS FOR RELIEF**

A.     **Legal Standard**

29.     Courts in the Fifth Circuit have long recognized that sections 1103(c) and 1109(b) of the Bankruptcy Code permit creditors' committees to prosecute claims on behalf of debtors' estates with the approval of the bankruptcy court.  *See Wooley v. Haynes & Boones, L.L.P. (In re SI Restructuring, Inc.)*, 714 F.3d 860, 863–64 (5th Cir. 2013).  There is no "formalistic checklist" under Fifth Circuit jurisprudence for granting standing to a committee.  *See La. World Exposition v. Federal Ins. Co. (In re La. World Exposition, Inc.)*, 858 F. 2d 233, 247 (5th Cir. 1988).  However, courts generally require that: (1) the proposed claim be colorable, (2) the debtor-in-possession has unjustifiably refused to pursue the claim, and (3) the committee has received leave to sue from the bankruptcy court.  *Id.* (dismissal of committee complaint against officers and directors reversed; recognizing standing of creditors' committee to pursue claims under sections 1103(c)(5), 1109(b), and applicable law); *see also La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1397–98 (5th Cir. 1987) (creditors' committee may sue on behalf of trustees or debtors in possession under specified circumstances); *accord Official*

*Comm. of Unsecured Creditors of Cybergenics Corp. ex. Rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579 (3d Cir. 2003) (en banc) (derivative standing appropriate where a debtor "unreasonably refuses to pursue" a fraudulent transfer action); *Official Employment-Related Issues Comm. v. Lavorato (In re Enron Corp.)*, 319 B.R. 128, 131 (Bankr. S.D. Tex. 2004) (citing recognized factors).

30. The bankruptcy court in *Reed v. The Cadle Co. (In re Cooper)* explained that there is both a textual and equitable rationale in a chapter 11 case for granting a creditor or committee standing to pursue claims that the debtor refuses or is unable to pursue. 405 B.R. 801 (Bankr. N.D. Tex. 2009). The textual bases for granting standing to a committee upon request include Bankruptcy Code sections 1103(c)(5) (powers and duties of committees), 1109(b) (right to be heard), and 1123(b)(3)(B) (chapter 11 plan may provide for the retention and enforcement of claims by a representative of the estate). *Id.* at 809. The equitable basis for granting standing to a committee derives from the inherent conflict faced by a debtor-in-possession in seeking to avoid liens or transfers that the debtor itself initiated. *Id.* ("[T]he metaphor of the 'fox guarding the hen house' is often apropos. *Louisiana World* is the leading case from the Fifth Circuit describing this situation and articulating when a creditors committee may be permitted standing to pursue estate causes of action.").

31. The Court should grant the Committee standing to pursue the Challenge Claims because each *Louisiana World* element is met here: (a) each of the Challenge Claims in the Proposed Complaint is colorable, and (b) the Debtors' refusal and/or inability to pursue the Challenge Claims is unjustified because the likely benefit associated with prosecution of the Challenge Claims to the estates far outweighs any costs and delays associated with litigation.

**B.      The Challenge Claims are Colorable**

32.      To show that the Challenge Claims are colorable, the Committee need only demonstrate that "there is a possibility of success." *Spring Serv. Tex., Inc. v. McConnell (In re McConnell)*, 122 B.R. 41, 44 (Bankr. S.D. Tex. 1989).   Courts have acknowledged that this is a low threshold and that "the required showing is a relatively easy one to make." *Adelphia Commc'ns Corp. v. Bank of America, N.A.* (*In re Adelphia Commc'ns Corp.*), 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005).

33.      Courts have compared this standard to the minimal showing required to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See PW Enterprises, Inc. v. N. Dakota Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 900 (8th Cir. 2008) ("[A] creditor's claims are colorable if they would survive a motion to dismiss."); *In re On-Site Fuel Serv.*, No. 18-04196-NPO, 2020 Bankr. LEXIS 1257, at *37 (Bankr. S.D. Miss. May 8, 2020) ("A creditor or a creditors' committee seeking derivative standing must assert a 'colorable' claim, defined as a claim that would survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *see also In re ABC Utils. Servs.*, No. 89-41420-BJH-7, 2001 Bankr. LEXIS 2240, at *27 (Bankr. N.D. Tex. Oct. 9, 2001) ("[A] colorable claim is one that raises a serious question even if the claim ultimately fails to survive a Rule 12(b)(6) motion to dismiss.").

34.      As set forth below and in the Proposed Complaint, the Challenge Claims meet this standard.

> i.      *Counts I, II, III, and IV – Declaratory Judgment and Avoidance of Unperfected Liens on Non-Vessel Assets*

35.      As more fully set forth therein, the Proposed Complaint sets forth colorable claims to declare that the Fleet Lenders either do not have liens and security interests in certain Non-Vessel Collateral, including accounts, charter hire, earnings, receivables, insurance proceeds,

10

contract rights, payment intangibles, general intangibles, and other personal-property collateral, or that such liens are avoidable.

36.     Under Article 9 of the Louisiana Uniform Commercial Code, a security interest is not perfected unless it has first attached to the collateral.  Attachment generally requires that (i) value be given, (ii) the debtor have rights in the collateral, and (iii) the debtor authenticate a security agreement granting a security interest in the collateral.  *See* La. R.S. 10:9-203(b).  Even where a financing statement is filed, the filing alone does not create or perfect a security interest absent attachment. *See* La. R.S. 10:9-308(a).

37.     The perfection of a security interest in the Non-Vessel Collateral such as accounts, charter hire, insurances and other personal property is also governed by Article 9 of the Louisiana Uniform Commercial Code, which generally requires the filing of an appropriate financing statement to perfect a security interest therein in the central filing office of the debtor's jurisdiction of organization.  *See* La. R.S. 10:9-310(a), 10:9-501.  A trustee or debtor-in-possession may avoid any security interest, transfer of property, or obligation incurred by the debtor that would be avoidable under non-bankruptcy law by a creditor that has a judicial lien on all of the debtors' property as of the date of the petition.   11 U.S.C. § 544(a)(1).  In other words, the trustee or debtor in possession acquires the status of a hypothetical lien creditor that may avoid any security interest that is not properly perfected as of the petition date, causing the secured party to lose its security interest and become a general unsecured creditor, preserving the value of the avoided security interest for the benefit of the estate.

38.     As alleged in Counts I, II, III and IV of the Proposed Complaint, the Committee's investigation revealed defects relating to the attachment and perfection of certain asserted security interests in the Non-Vessel Collateral under Louisiana law.  To the extent a Fleet Lender failed to

obtain a valid grant of a security interest in any category of Non-Vessel Collateral, the Committee, on behalf of the Debtors' estates, is entitled to a declaration that the applicable Fleet Lender does not have a lien on or security interest in such Non-Vessel Collateral. In addition, if a Fleet Lender failed to perfect any of the Secured Party Liens, such lien or security interest is avoidable pursuant to section 544(a) of the Bankruptcy Code. Accordingly, Counts I, II, III, and IV are plainly colorable.

### ii. Count V – Avoidance of Preferential Transfer

39. Count V of the Proposed Complaint also sets forth a colorable claim for the avoidance of the liens attaching to certain of the Vessel Collateral that were belatedly recorded against one of the Additional Debtors during the preference window. A transfer may be avoided as preferential under section 547 of the Bankruptcy Code if it was made on account of antecedent debt, within 90 days of the filing, and would enable the creditor to receive more than it would receive under a hypothetical chapter 7 liquidation. 11 U.S.C. § 547.

40. Under applicable law, a transfer of a lien or security interest to a creditor to secure an existing debt qualifies as a transfer of an interest in the property of the debtor to a creditor on account of antecedent debt. *See Miller v. Fallas (In re J & M Sales, Inc.)*, Nos. 18-11801 (JTD), 20-50775, 2021 Bankr. LEXIS 2268, at *110 (Bankr. D. Del. Aug. 20, 2021). As more fully set forth in the Complaint, certain vessel mortgages were recorded within 72 days of the Additional Debtor Petition Date, notwithstanding the long preceding grant of such mortgages by the applicable Additional Debtor. If not avoided, the applicable Fleet Lender would be able to retain its status as a secured creditor, entitling it to the full liquidation value of the applicable vessels, rather than recovering *pro rata* with the Debtors' other unsecured creditors. Accordingly, the preference claims are colorable.

   *iii.*   *Count VI – The Debtors' Postpetition Vessel Earnings*
       *are Unencumbered Under Section 552(a)*

41.  Count VI of the Proposed Complaint also sets forth a colorable claim for a declaration that certain postpetition vessel earnings are not subject to the Secured Party Liens pursuant to section 552(a) of the Bankruptcy Code.

42.  Section 552(a) of the Bankruptcy Code sets forth the long-established rule that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a); *see also Local Loan v. Hunt*, 292 U.S. 234, 242-43 (1934) (establishing the now-codified policy that liens on a debtor's postpetition earnings cannot be allowed to persist because doing so would imperil the fresh start afforded by bankruptcy). Section 552(a) provides that security interests on "[a]ll post-petition receipts on account of post-petition operations of [a debtor] are cut off." *In re Corpus Christi Hotel Partners, Ltd.*, 133 B.R. 850, 856 (Bankr. S.D. Tex. 1991); *see also In re S-Tek 1, LLC*, No. 20-12241-j11, 2023 Bankr. LEXIS 673, at *25 (Bankr. D.N.M. Mar. 15, 2023) ("During the pendency of the bankruptcy case, absent a court order to the contrary, §§ 552(a) and (b) cut off the attachment of a creditor's security interest in after-acquired accounts receivable that are not proceeds, products, offspring, or profits of property in which the creditor had a prepetition security interest.") (citing *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 405 (Bankr. N.D. Tex. 2003)). Further, as a general rule, assets that are earned postpetition due to the expenditure of estate resources are unencumbered by prepetition security interests. *See Far East Nat'l Bank v. U.S. Trustee (In re Premier Golf Props., LP)*, 477 B.R. 767, 776 (B.A.P. 9th Cir. 2012) (holding that postpetition revenue, largely the result of the debtor's postpetition labor and estate resources, was not subject to prepetition security interests); *Official Comm. of Unsecured Creditors v. UMB Bank,*

*N.A. (In re Residential Capital)*, 501 B.R. 549, 612 (Bankr. S.D.N.Y. 2013) (holding that goodwill on account of prepetition collateral generated through postpetition efforts and realized through a postpetition sale conducted by the debtors, was not subject to any liens under section 552).

43.     Through the Final Cash Collateral Order, the Debtors and the Fleet Lenders assert that the Secured Party Liens extend not only to the vessels themselves, but also to vessel earnings, freight, charter hire, accounts, receivables, contract rights, general intangibles, and other payment streams generated through the operation and employment of the vessels (collectively, the "Vessel Earnings").  Notwithstanding the breadth of certain of the collateral packages, section 552(a) of the Bankruptcy Code provides that the property acquired by the Debtors or their estates after the commencement of these chapter 11 cases is not subject to liens arising from prepetition security agreements, except to the limited extent provided in section 552(b).  Courts routinely emphasize that receipts, revenues, and receivables generated by, through, or on account of services rendered by a debtor postpetition are cut off from any liens under section 552(a).  *See, e.g.*, *In re Cafeteria Operators, L.P.*, 299 B.R. at 410 (finding that secured creditor's security interest did not flow to cash generated by debtors that stemmed from debtors' "post-petition toil and effort"); *Johnson v. RFF Family P'ship, LP (In re Johnson)*, 554 B.R. 448, 461–62, 465-67 (Bankr. S.D. Ohio 2016), *aff'd Johnson v. RFF Family P'ship, LP (In re Johnson)*, No. 16-8035, 2017 Bankr. LEXIS 1480 (B.A.P. 6th Cir., June 2, 2017) (finding that section 552(a) terminated any interest of a secured creditor in an NHL player's contract payments earned on account of the debtor playing hockey postpetition and that such earnings did not constitute proceeds of the prepetition contract under section 552(b)); *Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.)*, 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004) (finding that a prepetition lien does not attach to postpetition revenue

"if such revenue represents compensation for goods and services rendered by the debtor in its everyday business performance.").

44. As set forth in the Proposed Complaint, the Vessel Earnings at issue constitute postpetition rights to payment generated through the Debtors' continued operation of their businesses from chartering, operation, crewing, dispatch, management, maintenance, and deployment of the Debtors' vessels. Indeed, the Vessel Earnings were not in existence as of the Petition Date. Rather, the underlying rights to payment arose only after the Debtors performed postpetition services, satisfied postpetition contractual obligations, and expended substantial estate labor, resources, and assets in the ordinary course of operating their businesses. Therefore, the Debtors had no prepetition right to payment on which they could grant a lien, but instead simply held the "mere expectancy" of future payment. Accordingly, section 552(a) prevents prepetition security interests from attaching to such newly created postpetition payment rights. *See In re Financial Oversight and Management Board for Puerto Rico*, 948 F.3d 457, 468 (1st Cir. 2020) (finding that because contributions based on work occurring on and after the petition date could not be determined as of the petition date, they were "merely an expectancy" and not payable prepetition and creditors could not have security interests in such postpetition contributions under section 552). This is especially true for revenues received under new or renewed contracts entered by the Debtors postpetition. *In re Kruse*, 35 B.R. 958, 966 (Bankr. D. Kan. 1983) (finding that the prepetition lien was cut off because the debtors "had no rights under the [agreement] when they commenced their bankruptcy case [because] they did not enter [into the agreement] until after commencing their bankruptcy case.").

45. At a minimum, substantial and bona fide disputes exist regarding whether the Secured Party Liens attach to the Vessel Earnings and whether such earnings constitute

15

postpetition property excluded from the scope of those liens by section 552(a). Accordingly, Count VI is plainly colorable.

        **C.**        **The Debtors Cannot Pursue the Challenge Claims**

46.      A debtor-in-possession has an obligation to pursue estate causes of action if doing so would maximize value of the estate. 11 U.S.C. § 704(a)(1); *La. World Exposition*, 858 F.2d at 246. If a debtor unjustifiably "is unable or unwilling to fulfill its obligation" to assert claims to maximize estate value, it is appropriate for a creditors' committee to be granted standing to pursue such claims. *Id.* at 252; *see also In re Cooper*, 405 B.R. at 810. Where, bringing an action is in the best interests of the estates but the Debtors refuse to do so, the failure to bring that claim is "unjustified" under the Bankruptcy Code. *See Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Grp., Inc.)*, 66 F.3d 1436, 1441-43 (6th Cir. 1995) (holding that debtor's failure to bring a value-maximizing claim is "unjustified" for the purposes of committee standing even if the motive of the debtor in failing to bring that claim is justified, such as a conflict of interest or lack of funds). Even where such refusal is "understandable" in view of a conflict of interest, the creditors' interest in collecting the property of the estate must prevail. *See La. World Exposition*, 858 F.2d at 253 ("While the debtor-in-possession's refusal was understandable given the grave conflict of interest implications, we cannot ignore the fact that the creditors' interests in seeing the property of the estate collected was not protected.").

47.      Here, however, the Debtors are effectively unable to pursue the Challenge Claims because of the stipulations, acknowledgements, waivers, and releases contained in the Final Cash Collateral Order. Specifically, the Debtors stipulated to the validity, extent, priority, enforceability, and perfection of the Secured Party Liens and Secured Party Obligations and further

16

released any challenges thereto. As a result, the Debtors cannot reasonably be expected to prosecute the very claims they have agreed not to pursue.

48. The Final Cash Collateral Order expressly contemplated that the Committee, and not the Debtors, would evaluate and pursue any challenge to the Secured Party Liens. Paragraph 5 of the Final Cash Collateral Order therefore preserved a separate challenge right for the Committee and established a procedure for seeking standing to commence such litigation.

49. Absent derivative standing, the estates' challenge rights will expire without adjudication, and potentially valuable claims will be lost. The potential of preserving the unencumbered assets for the benefit of unsecured creditors outweighs any possible prejudice or delay to the Fleet Lenders. Accordingly, derivative standing is appropriate.

> **D.** **The Committee Should be Granted Exclusive Authority to Settle the Challenge Claims**

50. The Committee should be authorized not only to prosecute the Challenge Claims but also to negotiate and, if appropriate, settle such claims, subject to Court approval.

51. The Committee is entitled not only to prosecute the Challenge Claims, but also to exclusively settle any of the Challenge Claims. Courts in the Fifth Circuit and elsewhere have provided similar relief to committees. *See, e.g.*, *In re Senior Living Properties, LLC*, 294 B.R. 698, 701 (Bankr. N.D. Tex. 2003) (noting the committee had exclusive authority to pursue and settle its alter ego claims); *In re Majestic Cap. Ltd.*, Case No. 11-36225 (Bankr. S.D.N.Y. Dec. 12, 2011) [Dkt. No. 211] (granting committee exclusive authority to pursue and settle claims); *In re Evergreen Solar, Inc.*, Case No. 11-12590 (Bankr. D. Del. Oct. 28, 2011) [Dkt. No. 382] (granting derivative standing to unsecured creditors' committee included "exclusive right and authority to negotiate and enter into settlements on behalf of the Debtor's estate" with respect to certain causes of action); *In re Old CarCo LLC*, Case No. 09-50002 (Bankr. S.D.N.Y. Aug. 13,

2009) [Dkt. No. 5151] (same). Any such settlements would be subject to approval of this Court (pursuant to notice and a hearing with all parties, including the Debtors, reserving the right to object). It is indisputable that any decision to settle any of the Challenge Claims, and at what level, will have a direct economic impact on the Debtors' unsecured creditors, whose interests the Committee represents in these cases. It also stands to reason that the party with the authority to bring the Challenge Claims also be able to settle them.

## RESERVATION OF RIGHTS

52. The Committee reserves its right to supplement this Motion or file additional motions for standing, with respect to additional evidence or other claims and/or causes of action against the lenders or other defendants, and/or to file amended complaints as necessary and permitted by applicable law. The inclusion of any cause of action in the Proposed Complaint is not an admission by the Committee that a motion for standing is required to assert such cause of action, and the Committee reserves all rights with respect thereto.

## NO PRIOR REQUEST

53. No prior request has been made for the relief sought in this Motion.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Committee requests that the Court enter the Proposed Order, attached hereto as **Exhibit A**, granting (i) the Committee leave, standing, and authority to commence, prosecute, and settle the Challenge Claims in the Proposed Complaint on behalf of the Debtors' estates and (ii) such other and further relief to which it may be entitled, at law or equity.

*[Remainder of Page Intentionally Left Blank]*

Dated: July 23, 2026

/s/ Tristan Manthey
Tristan Manthey, La. Bar No. 24539
Cherie D. Nobles, La. Bar No. 30476
Joseph A. Caneco, La. Bar No. 40721
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Ave., 46th Floor
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Email  tmanthey@fishmanhaygood.com
       cnobles@fishmanhaygood.com
       jcaneco@fishmanhaygood.com

-and-

Robert J. Gayda (*pro hac vice*)
Catherine V. LoTempio (*pro hac vice*)
Shivani D. Patel (*pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Email:  gayda@sewkis.com
        lotempio@sewkis.com
        shivani.patel@sewkis.com

Counsel to the Official Committee of Unsecured
Creditors of Crosby Tugs, L.L.C. and Crosby
Dredging, L.L.C.

**EXHIBIT A**

Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 26-10678 |
| | § | (JOINTLY ADMINISTERED) |
| CROSBY MARINE TRANSPORTATION, | § | |
| LLC, *et al.*, | § | CHAPTER 11 |
| | § | COMPLEX CASE |
| DEBTORS.[1] | § | |
| | § | SECTION A |
| | § | |

**ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR CROSBY TUGS, L.L.C. AND CROSBY DREDGING, LLC FOR DERIVATIVE STANDING AND AUTHORITY TO COMMENCE AND PROSECUTE CERTAIN LIEN CHALLENGE CLAIMS AND CAUSES OF ACTION**

Before the Court is the *Motion of the Official Committee Of Unsecured Creditors for Crosby Tugs, L.L.C. and Crosby Dredging, LLC for an Order Granting Derivative Standing to Commence, Prosecute, and Settle Certain Lien Challenge Claims and Causes Of Action* (the "Motion"),[2] filed by the Official Committee of Unsecured Creditors of Crosby Tugs, L.L.C. and Crosby Dredging, LLC (the "Committee").

Considering the record and pleadings, the applicable law, and finding good cause,

**IT IS HEREBY ORDERED** that

1.  The Motion is **GRANTED**.

---

[1] The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4; No. 26-10681, ECF Doc. 4]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Inshore Marine Service, L.L.C. [No. 26-11734], (ii) Crosby Marine Repair, L.L.C. [No. 26-11735], (iii) Crosby Offshore Marine Service, L.L.C. [No. 26-11736], (iv) Kurt Crosby, L.L.C. [No. 26-11737], (v) Tala Marine, L.L.C. [No. 26-11738], (vi) Webb Crosby, L.L.C. [No. 26-11739], (vii) Crosby Inland Marine, LLC [No. 26-11740], (viii) Crosby Real Estate, LLC [No. 26-11741], (ix) Tala Real Estate, LLC [No. 26-11742], and (x) Crosby Enterprises, L.L.C. [No. 26-11743], on July 21, 2026. [No. 26-10678, ECF Doc. 662; No. 26-11734, ECF Doc. 10; No. 26-11735, ECF Doc. 9; No. 26-11736, ECF Doc. 9; No. 26-11737, ECF Doc. 9; No. 26- 11738, ECF Doc. 9; No. 26-11739, ECF Doc. 9; No. 26-11740, ECF Doc. 9; No. 26-11741, ECF Doc. 9; No. 26-11742, ECF Doc. 9; No. 26-11743, ECF Doc. 9].

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

2. The Committee is granted standing and authority pursuant to sections 105, 1103, and 1109 of the Bankruptcy Code to commence and prosecute the Challenge Claims.

3. The Committee shall have the sole right and authority to negotiate and settle the Challenge Claims on behalf of the Debtors' estates; provided, however, that nothing herein shall obligate, nor shall be deemed to obligate, the Committee to negotiate or settle, nor to discuss the negotiation or settlement of, any Challenge Claim.

4. The Committee may amend or modify the Proposed Complaint prior to its filing.

5. The Committee is authorized to take all actions deemed necessary to effectuate the relief granted in this Order.

6. The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

7. The Court shall retain jurisdiction to resolve any disputes arising under or related to this Order, including any discovery disputes that may arise between or among the parties, and to interpret, implement, and enforce the provisions of this Order.

8. Counsel for the Committee shall serve this Order via first-class U.S. Mail on the required parties who will not receive a copy through the Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a certificate of service to that effect within three (3) days.

**EXHIBIT B**

Proposed Complaint

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 26-10678 |
| | § | (JOINTLY ADMINISTERED) |
| CROSBY MARINE TRANSPORTATION, | § | |
| LLC, *et al.*, | § | |
| | § | CHAPTER 11 |
| | § | COMPLEX CASE |
| DEBTORS.[7] | § | |
| | § | SECTION A |
| | § | |

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF UNSECURED | § | ADV. PROC. NO. __-_____ |
| CREDITORS FOR CROSBY TUGS, L.L.C. | § | |
| AND CROSBY DREDGING, LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| ARBA CREDIT INVESTORS, L.P. F/K/A | § | |
| TRUIST EQUIPMENT FINANCE CORP. | § | |
| ATLANTIC UNION EQUIPMENT | § | |
| FINANCE, INC. | § | |
| BANC OF AMERICA LEASING & | § | |
| CAPITAL, LLC | § | |
| CITIZENS ASSET FINANCE, A DIVISION | § | |
| OF CITIZENS BANK, N.A. | § | |
| CITY NATIONAL BANK OF FLORIDA | § | |
| ELGA ONE, LLC – SERIES III | § | |
| J.J. ASTOR & CO. | § | |
| KOMPASS KAPITAL FUNDING, LLC | § | |
| MC BANK & TRUST COMPANY | § | |
| PNC BANK, N.A. | § | |
| | § | |

---

[7] The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], on March 24, 2026, [No. 26-10678, ECF Doc. 9; No. 26- 10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4; No. 26-10681, ECF Doc. 4]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Inshore Marine Service, L.L.C. [No. 26-11734], (ii) Crosby Marine Repair, L.L.C. [No. 26-11735], (iii) Crosby Offshore Marine Service, L.L.C. [No. 26-11736], (iv) Kurt Crosby, L.L.C. [No. 26-11737], (v) Tala Marine, L.L.C. [No. 26-11738], (vi) Webb Crosby, L.L.C. [No. 26-11739], (vii) Crosby Inland Marine, LLC [No. 26-11740], (viii) Crosby Real Estate, LLC [No. 26-11741], (ix) Tala Real Estate, LLC [No. 26-11742], and (x) Crosby Enterprises, L.L.C. [No. 26-11743], on July 21, 2026. [No. 26-10678, ECF Doc. 662; No. 26-11734, ECF Doc. 10; No. 26-11735, ECF Doc. 9; No. 26-11736, ECF Doc. 9; No. 26-11737, ECF Doc. 9; No. 26- 11738, ECF Doc. 9; No. 26-11739, ECF Doc. 9; No. 26-11740, ECF Doc. 9; No. 26-11741, ECF Doc. 9; No. 26-11742, ECF Doc. 9; No. 26-11743, ECF Doc. 9].

**POST ROAD EQUIPMENT FINANCE SPV, LLC**
**REGIONS COMMERCIAL EQUIPMENT FINANCE, LLC**
**SOUTH LAFOURCHE BANK & TRUST COMPANY**
**STATE BANK & TRUST COMPANY**

§
§
§
§
§
§
§
§
§
§

**DEFENDANTS.**

## [PROPOSED] COMPLAINT

**NOW INTO COURT**, through the undersigned counsel, comes the Official Committee of Unsecured Creditors of Crosby Tugs, L.L.C. and Crosby Dredging, LLC (the "Committee" or the "Plaintiff") appointed in the bankruptcy cases of the above-captioned debtors and debtors-in-possession (collectively the "Debtors"), and respectfully submits this complaint (the "Complaint") on behalf of the Debtors' estates and alleges the following facts and claims:

## NATURE OF ACTION

1. The Committee seeks, among other relief: (i) avoidance of certain unperfected liens and security interests asserted by Defendants; (ii) a declaration that certain asserted liens do not attach to specific Non-Vessel Collateral; (iii) avoidance and recovery of certain preferential transfers; (iv) a declaration that postpetition Vessel Earnings constitute unencumbered property of the estates pursuant to section 552 of the Bankruptcy Code; and (v) to preserve any avoided liens and transfers pursuant to sections 550 and 551 of the Bankruptcy Code.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b).

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.    Venue of this adversary proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under title 11 and arises in and is related to the Debtors' bankruptcy cases pending in this Court.  Additionally, pursuant to the General Order of Reference, General Order 2021-5, entered by the United States District Court for the Eastern District of Louisiana, all cases arising under title 11 of the United States Code (the "Bankruptcy Code") are automatically referred to the Bankruptcy Judges of this District.

5.    Plaintiff consents to entry of final orders and judgments by the Court in this adversary proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders on judgments consistent with Article III of the United States Constitution.

## **THE PARTIES**.

6.    The Debtors are, in addition to Crosby Marine Transportation, LLC, Crosby Tugs, L.L.C.; Crosby Dredging, LLC; Bertucci Contracting Company, L.L.C., Crosby Inshore Marine Services, LLC, Crosby Marine Repair, L.L.C., Crosby Offshore Marine Service, LLC, Kurt Crosby, L.L.C., Tala Marine, L.L.C., Webb Crosby, LLC, Crosby Inland Marine, LLC, Crosby Real Estate, LLC, Tala Real Estate, LLC, and Crosby Enterprises, L.L.C.  Each Debtor is a limited liability company organized under the laws of Louisiana with a principal place of business located at 17751 Highway 3235, Galliano, Louisiana 70354.

7.    The Committee was appointed in the Bankruptcy Cases (defined below) on April 7, 2026, pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee of the Eastern District of Louisiana.  The Committee is vested with, among other things, the powers described in section 1103 of the Bankruptcy Code, including the power to investigate the acts,

conduct, assets, liabilities, and financial condition of the Debtors, and any other matter relevant to the Bankruptcy Cases (defined below).

8. The Committee brings this action derivatively, on behalf of the Debtors' estates. Standing was granted to the Committee to file this Complaint by the *Order Granting Motion of the Official Committee of Unsecured Creditors for Crosby Tugs, L.L.C. and Crosby Dredging, LLC for Derivative Standing and Authority to Commence, Prosecute, and Settle Certain Lien Challenge Claims and Causes of Action* [Docket No. [●]].

9. Defendants are (i) ARBA Credit Investors, L.P. f/k/a Truist Equipment Finance Corp.; (ii) Atlantic Union Equipment Finance, Inc.; (iii) Banc of America Leasing & Capital, LLC; (iv) Citizens Asset Finance, a division of Citizens Bank, N.A.; (v) City National Bank of Florida; (vi) ELGA One, LLC – Series III; (vii) J.J. Astor & Co. ("JJ Astor"); (viii) Kompass Kapital Funding, LLC; (ix) MC Bank & Trust Company; (x) PNC Bank, N.A.; (xi) Post Road Equipment Finance SPV, LLC; (xii) Regions Commercial Equipment Finance, LLC ("Regions"); (xiii) South Lafourche Bank & Trust Company ("South Lafourche Bank"); and (xiv) State Bank & Trust Company ("State Bank," and collectively, the "Secured Parties").

## STATEMENT OF FACTS

### I. General Background

10. On March 23, 2026 (the "Petition Date"), Crosby Marine Transportation, LLC ("Crosby Marine Transportation"), Crosby Tugs, L.L.C. ("Crosby Tugs"), Crosby Dredging, LLC ("Crosby Dredging"), and Bertucci Contracting Company, L.L.C. ("Bertucci," and collectively, the "Original Debtors") commenced the above-titled cases by each filing a petition for relief under chapter 11 of the Bankruptcy Code. On July 16, 2026 (the "Additional Debtor Petition Date"), an

additional 10 affiliated entities of the Original Debtors (collectively, the "Additional Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").

11. The Debtors are authorized to continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

12. On April 7, 2026, the Office of United States Trustee for Region 5 appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code [Dkt. No. 166]. The Committee consists of the following seven (7) members: (1) Kirby Inland Marine, LP; (2) Retif Oil & Fuel, LLC; (3) CGBM 100, LLC; (4) Marshland Equipment Rentals, LLC; (5) Hydroterra Technologies, LLC; (6) Elite Diesel Performance, LLC; and (7) Masse Contracting, Inc.

## II.     The Debtors' Business and Capital Structure

13. According to the Debtors, they generate the majority of their revenue through two core businesses: the Tug Business and the Dredge Business. Crosby Tugs is the primary operating entity for the Tug Business and Crosby Dredging is the primary operating entity for the Dredge Business.

14. Most of the Debtors' fleet is owned by Crosby Marine Transportation. Crosby Marine Transportation does not have employees; rather, its vessels are crewed, operated and chartered by Crosby Tugs. Crosby Tugs is the primary customer-facing entity for the Tug Business and is the primary contract counterparty for the Tug Business. Crosby Dredging is the primary customer-facing entity for the Dredge Business and is the primary contract counterparty for the Dredge Business.

15. According to the Debtors, the cash receipts for the Tug Business are generated through, or related to, the charter of vessels, which are deposited into the Tug Receipts Account;

and the majority of the cash receipts for the Dredge Business are generated through, or related to, contracts for dredging projects, which are deposited into the Dredge Receipts Account.  On an as-needed basis, the Debtors move such cash from and between the Tugs Receipts Account and the Dredge Receipts Account.  Further, according to the Debtors, cash does not flow for the majority of intercompany transactions among the Debtors and their affiliates.  For example, when Crosby Dredging receives mobilization support from Crosby Tugs for dredging projects, the Company has historically accounted for such services by booking year-end revenue adjustments, reducing Crosby Dredging's revenue and booking corresponding revenue to Crosby Tugs, through "due to / due from" entries.  Intercompany charters and loans historically have not been documented by written contracts or notes.

16.     Prior to the Petition Date, the Debtors also entered into certain financing agreements with the fleet lenders secured by liens attaching to a different portion of their fleet of vessels and equipment (the "Fleet Facilities").  The Fleet Facilities are purportedly primarily secured by preferred ship mortgages covering the Debtors' vessel fleet (the "Vessel Collateral").  In addition, certain of the Secured Parties also assert liens on other Debtors assets, including vessel-related collateral and inventory and receivables (the "Non-Vessel Collateral").

17.     Attached as Exhibit 1 to the Final Cash Collateral Order (defined below) is a scheduled prepared by the Debtors that identifies each of the Fleet Facilities, the Debtors' obligations arising under the Fleet Facilities (the "Secured Party Obligations"), and the assets allegedly securing the Fleet Facilities (the "Secured Party Collateral").

18.     The nature, extent, validity, priority, perfection, and enforceability of such existing liens (the "Secured Party Liens") securing the Fleet Facilities are the subject of this Complaint.

III.     **Cash Collateral Order**

19.     On April 24, 2026, the Court entered the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Existing Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Dkt. No. 294] (the "Final Cash Collateral Order").

20.     In the Final Cash Collateral Order, the Debtors stipulated (the "Debtors' Stipulations"), among other things, that (a) the Secured Party Obligations constitute legal, valid, binding, enforceable, and non-avoidable obligations of the applicable Debtors; (b) that the Secured Party Liens constitute legal, valid, binding, properly perfected, and enforceable liens and security interests in the applicable collateral, including cash collateral; (c) that no offsets, defenses, challenges, objections, claims, or counterclaims existed with respect to such obligations or liens; (d) that such obligations and liens were not subject to avoidance or subordination; and (e) all proceeds of the Secured Party Collateral constitute "cash collateral" of the Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

21.     Paragraph 5 of the Final Cash Collateral Order expressly preserves the Committee's right to challenge the validity, extent, priority, perfection, and enforceability of the Secured Facility Documents, the Secured Party Obligations, the Secured Party Liens, and the Secured Party Collateral by commencing an appropriate challenge prior to the Challenge Deadline.

22.     The Final Cash Collateral Order further provides that any request for standing to pursue such challenge claims must be accompanied by a proposed complaint setting forth the basis for such challenge with specificity.

**IV.** **The Committee's Investigation**

23.     Following its appointment, the Committee commenced an investigation into the Debtors' assets, liabilities, prepetition financing arrangements, Secured Party Obligations, and the Secured Party Liens.

24.     In connection with its investigation, the Committee reviewed loan documents, security agreements, vessel abstracts, financing statements, mortgages, public records, schedules, statements, and other information made available by the Debtors and the Secured Parties.

25.     Based on that investigation, the Committee identified potential defects relating to the attachment, perfection, scope, and enforceability of certain Secured Party Liens.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Avoidance of Unperfected Security Against Regions**
**(11 U.S.C. §§ 544, 550, and 551)**

26.     The Committee repeats and realleges each and every allegation contained in each preceding paragraph as of the Complaint as though set forth fully herein.

27.     Pursuant to 11 U.S.C. § 544(a), the Committee is vested with the rights and status as a hypothetical bona fide purchaser, judicial lien creditor, and holder of an unsatisfied writ of execution, each without knowledge.

28.     Such status under 11 U.S.C. § 544(a) allows the Committee to avoid an invalid or unperfected lien and security interest in the Debtors' assets.

29.     Debtor Crosby Dredging is the owner of the vessel named Capt. Vinton Crosby, Official No. 530896 (the "Capt. Vinton"). The Capt. Vinton was pledged as collateral to Regions pursuant to that certain Preferred Ship Mortgage dated November 28, 2023 (the "Capt. Vinton Mortgage"). Pursuant to the Capt. Vinton Mortgage, Debtor Crosby Dredging pledged as

additional collateral to Regions, in summary: (i) any and all charter hire, accounts, chattel paper, instruments, general intangibles related to or arising out of the use, operation, engagement, employment or management of the vessel Capt. Vinton; (ii) any and all present and future options to sell, lease or charter the vessel or any interest therein; and (iii) any and all present and future rights to damages, claims, insurance or other proceeds derived or to be derived from the sale, lease, charter, hiring, operation, damage, condemnation, destruction, insurance loss, appropriation and other disposition of the foregoing collateral (collectively, together with all additional collateral listed in the Capt. Vinton Mortgage, the "Capt. Vinton Additional Collateral").

30. The Debtors' Stipulations in the Final Cash Collateral Order provide that Regions has a perfected security interest in "all vessel-related assets, equipment, accounts chattel paper, instruments, general intangibles, contracts rights, charter hire, receivables, insurance, proceeds, claims and all accessions, additions, replacements, substitutions and proceeds thereof."

31. Debtor Crosby Dredging is organized under the laws of Louisiana. Pursuant to Article 9 of the Louisiana Uniform Commercial Code, a secured creditor seeking to perfect a security interest in the Capt. Vinton Additional Collateral was required to file an appropriate financing statement with the Louisiana Secretary of State. A search of the records of the Louisiana Secretary of State revealed no financing statement filed by Regions that perfected a security interest in the Capt. Vinton Additional Collateral as of the Petition Date.

32. Because Regions failed to perfect its security interest in the Capt. Vinton Additional Collateral prior to the Petition Date, Regions' interest in the Capt. Vinton Additional Collateral is avoidable pursuant to section 544(a) of the Bankruptcy Code. As a hypothetical judicial lien creditor and bona fide purchaser under section 544(a), the Committee may avoid Regions' unperfected security interest in the Capt. Vinton Additional Collateral. Pursuant to sections 550

and 551 of the Bankruptcy Code, the avoided security interest and any value derived therefrom may be recovered and/or preserved for the benefit of the Debtors' estates.

**SECOND CAUSE OF ACTION**
**Avoidance of Unperfected Security Interest Against JJ Astor**
**(11 U.S.C. §§ 544, 550, and 551)**

33.     The Committee repeats and realleges each and every allegation contained in each preceding paragraph of the Complaint as though set forth fully herein.

34.     Pursuant to 11 U.S.C. § 544(a), the Committee is vested with the rights and status as a hypothetical bona fide purchaser, judicial lien creditor, and holder of an unsatisfied writ of execution, each without knowledge.

35.     Such status under 11 U.S.C. § 544(a) allows the Committee to avoid an invalid or unperfected lien and security interest in the Debtors' assets.

36.     Debtor Crosby Dredging is the owner of the following documented vessels (collectively, the "JJ Astor Documented Vessels"):

| Name/Description | Official Number |
|---|---|
| PT 425 | 1250540 |
| PT 426 | 1266179 |
| R 8800 | 931798 |
| R 8801 | 931799 |
| R 8802 | 931800 |
| R 8803 | 931801 |
| R 8804 | 931802 |
| R 8889 | 931787 |
| R 8890 | 931788 |
| R 8891 | 931789 |
| R 8892 | 931790 |
| R 8893 | 931791 |
| R 8894 | 931792 |
| R 8895 | 931793 |
| R 8896 | 931794 |
| R 8897 | 931795 |
| R 8898 | 931796 |
| R 8899 | 931797 |
| R 9005 | 957133 |
| R 9006 | 957134 |
| R 9007 | 957135 |
| R 9008 | 957136 |

| | |
|---|---|
| YOCONA | 279477 |
| CROSBY EXPRESS | 521797 |
| EL BAILEY | 527792 |
| JI BASKIN | 515499 |

37. In addition, Crosby Dredging is the owner of the following undocumented vessels (the "JJ Astor Undocumented Vessels," and together with the JJ Astor Documented Vessels, the "JJ Astor Vessels"):

| Name/Description |
|---|
| PTT 9029 |
| PTT 9030 |
| PTT 9031 |
| PIT 9034 |
| PTT 9036 |
| PTT 9038 |
| PTT 9039 |
| D 6623 OFFICE |
| PTT 101 OFFICE |
| PTT 6150 SPUD |
| PIT 7213 SPUD |

38. Pursuant to the Pledge and Security Agreement, dated September 25, 2025, Debtor Crosby Dredging pledged as additional collateral to JJ Astor, in summary: (i) all Instruments, together with all payments derived from the operation or sale of the JJ Astor Vessels; (ii) all accounts relating solely to the JJ Astor Vessels; and (iii) all contracts relating solely to the JJ Astor Vessels (collectively, together with all additional collateral listed therein, the "JJ Astor Additional Collateral").

39. The Debtors' Stipulations in the Final Cash Collateral Order provide that JJ Astor has a perfected security interest in "charter earnings, freights, charter hire, insurance claims, proceeds and accounts related thereto."

40. Debtor Crosby Dredging is organized under the laws of Louisiana. Pursuant to Article 9 of the Louisiana Uniform Commercial Code, a secured creditor seeking to perfect a security interest in the JJ Astor Vessels was required to file an appropriate financing statement with the Louisiana Secretary of State. A search of the records of the Louisiana Secretary of State

revealed no financing statement filed by JJ Astor that perfected a security interest as of the Petition Date in any of the JJ Astor Additional Collateral.

41. Because JJ Astor failed to perfect a security interest in the JJ Astor Additional Collateral prior to the Petition Date, JJ Astor's interest in JJ Astor Additional Collateral is avoidable pursuant to section 544(a) of the Bankruptcy Code. As a hypothetical judicial lien creditor and bona fide purchaser under section 544(a), the Committee may avoid JJ Astor's unperfected security interest in the JJ Astor Additional Collateral. Pursuant to sections 550 and 551 of the Bankruptcy Code, the avoided security interest and any value derived therefrom may be recovered and/or preserved for the benefit of the Debtors' estates.

### THIRD CAUSE OF ACTION
### Declaratory Judgment Against South Lafourche Bank
### (28 U.S.C. §§ 2201 and 2202)

42. The Committee repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as though set forth fully herein.

43. This action presents an actual controversy within the Court's jurisdiction, and the Court may declare the rights and other legal relations of the parties in accordance with 28 U.S.C. § 2201(a).

44. The dispute between the Committee and South Lafourche Bank is definite and concrete.

45. The dispute concerns legal interests espoused by the Committee, on the one hand, and South Lafourche Bank, on the other hand.

46. A declaratory judgment will resolve the legal issues involved by finalizing the controversy and offering relief from uncertainty.

47. The Debtors' Stipulations in the Final Cash Collateral Order provide that the Secured Party Liens of South Lafourche Bank include "blanket lien on the borrower's assets (including deposits and general intangibles)" (the "SLB Non-Vessel Assets").

48. Debtor Crosby Marine Transportation is the owner of the following vessels: Big Eddie, Official No. 65637; Crosby Progress, Official No. 624179; Johnny James, Official No. 552794; and Lady June, Official No. 275438 (collectively, the "SLB Marine Vessels"). Each of the SLB Marine Vessels was pledged to South Lafourche Bank pursuant to an individual ship preferred mortgage (collectively, the "SLB Marine Vessel Mortgages") describing the collateral pledged thereunder as the applicable vessel and its appurtenances and accessories. Upon information and belief, there is no security document that creates a lien in the SLB Non-Vessel Assets of Debtor Crosby Marine Transportation in favor of South Lafourche Bank.

49. Debtor Crosby Tugs is the owner of the following vessels: Beau Andrew, Official No. 1264715; Lois Marie, Official No. 1259982; Nighthawk, Official No. 581752 (collectively, the "SLB Tugs Vessels"). Each of the SLB Tugs Vessels was pledged to South Lafourche Bank pursuant to an individual ship preferred mortgage (collectively, the "SLB Tugs Vessel Mortgages") describing the collateral pledged thereunder as the applicable vessel and its appurtenances and accessories. Upon information and belief, there is no security document that creates a lien in the SLB Non-Vessel Assets of Debtor Tugs in favor of South Lafourche Bank.

50. Debtor Crosby Dredging is the owner of the following vessels: Fred Joseph, Official No. 1250877 (the "SLB Dredge Vessel"). The SLB Dredge Vessel was pledged to South Lafourche Bank pursuant to an individual ship preferred mortgage (the "SLB Dredge Vessel Mortgage") describing the collateral pledged thereunder as the applicable vessel and its appurtenances and accessories. Upon information and belief, there is no security document that

creates a lien on the SLB Non-Vessel Assets of Debtor Crosby Dredging in favor of South Lafourche Bank.

51.     As a result, the SLB Non-Vessel Assets of Debtors Crosby Marine Transportation, Crosby Tugs and Crosby Dredging are not subject to a lien in favor of South Lafourche Bank.

52.     Accordingly, the Committee seeks a declaratory judgment that South Lafourche Bank does not have a lien on or security interest in the SLB Non-Vessel Assets.

## FOURTH CAUSE OF ACTION
### Avoidance of Unperfected Security Interest Against South Lafourche Bank
### (11 U.S.C. §§ 544, 550, and 551)

53.     The Committee repeats and realleges each and every allegation contained in each preceding paragraph of the Complaint as though set forth fully herein.

54.     Pursuant to 11 U.S.C. § 544(a), the Committee is vested with the rights and status as a hypothetical bona fide purchaser, judicial lien creditor, and holder of an unsatisfied writ of execution, each without knowledge.

55.     Such status under 11 U.S.C. § 544(a) allows the Committee to avoid an invalid or unperfected lien and security interest in the Debtors' assets.

56.     The Debtors' Stipulations in the Final Cash Collateral Order provide that the Secured Party Liens of South Lafourche Bank include the SLB Non-Vessel Assets.

57.     Each of Debtor Crosby Marine Transportation, Debtor Crosby Tugs and Debtor Crosby Dredging is organized under the laws of Louisiana.  Pursuant to Article 9 of the Louisiana Uniform Commercial Code, a secured creditor seeking to perfect a security interest in the SLB Non-Vessel Assets was required to file an appropriate financing statement with the Louisiana Secretary of State.  A search of the records of the Louisiana Secretary of State revealed no financing statement filed by South Lafourche Bank against Debtors Crosby Marine Transportation,

Crosby Tugs or Crosby Dredging that perfected a security interest in the SLB Non-Vessel Assets as of the Petition Date.

58. Because South Lafourche Bank failed to perfect its security interest in the SLB Non-Vessel Assets prior to the Petition Date, South Lafourche's interest in the SLB Non-Vessel Assets is avoidable pursuant to section 544(a) of the Bankruptcy Code. As a hypothetical judicial lien creditor and bona fide purchaser under section 544(a), the Committee, on behalf of the Debtors' estates, may avoid South Lafourche Bank's unperfected security interest in the SLB Non-Vessel Assets. Pursuant to sections 550 and 551 of the Bankruptcy Code, the avoided security interest and any value derived therefrom may be recovered and/or preserved for the benefit of the Debtors' estates.

**FIFTH CAUSE OF ACTION**
**Avoidance of Preferential Transfer Against State Bank**
**(11 U.S.C. §§ 547, 550, and 551)**

59. The Committee repeats and realleges each and every allegation contained in each preceding paragraph of the Complaint as though set forth fully herein.

60. Debtor Tala Marine LLC is the owner of the following vessels: Capt. Randy James, Official No. 1209106; and Elle Alexandra, Official No. 1253475 (collectively, the "State Bank Vessels"). The State Bank Vessels were pledged as collateral to State Bank pursuant to that certain First Preferred Fleet Mortgage dated February 13, 2025 (the "State Bank Mortgage").

61. Pursuant to the Commercial Instruments and Maritime Liens Act, 46 U.S.C. §§ 31321 et seq., a creditor seeking to perfect or obtain preferred mortgage status for a mortgage on a documented vessel was required to record the mortgage with the Secretary of the department in which the Coast Guard is operating, through the United States Coast Guard National Vessel

Documentation Center ("NVDC"). A search of the NVDC vessel documentation records reflects that State Bank did not record the State Bank Mortgage until May 5, 2026.

62. The recordation of State Bank's mortgage is a transfer of an interest in Tala Marine's property for the benefit of State Bank on account of antecedent debt.

63. The recordation of State Bank's mortgage was made within 90 days of the Additional Debtor Petition Date, while Tala Marine was insolvent.

64. This transfer would enable State Bank to receive more than it would receive in a hypothetical chapter 7 liquidation if the transfer had not been made, and State Bank received payment on its claims to the extent provided by the provisions of the Bankruptcy Code.

65. Based on the foregoing, the liens and security interests purportedly securing the State Bank Vessels are avoidable pursuant to 11 U.S.C. § 547(b). Any liens and security interests that are avoided under section 547 of the Bankruptcy Code are recovered for the benefit of the Debtors' estates pursuant to section 550(a) of the Bankruptcy Code and/or automatically preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

**SIXTH CAUSE OF ACTION**
**Declaratory Judgment, Unencumbered Postpetition Vessel Earnings**
**Against All Defendants**
**(28 U.S.C. §§ 2201 and 2202)**

66. The Committee repeats and realleges each and every allegation contained in each preceding paragraph of the Complaint as though set forth fully herein.

67. This action presents an actual controversy within the Court's jurisdiction, and the Court may declare the rights and other legal relations of the parties in accordance with 28 U.S.C. § 2201(a).

68. The dispute between the Committee and each of the Defendants is definite and concrete.

69. The dispute concerns legal interests espoused by the Committee, on the one hand, and the Defendants, on the other hand.

70. A declaratory judgment will resolve the legal issues involved by finalizing the controversy and offering relief from uncertainty.

71. The Secured Parties have alleged, and the Debtors have stipulated that they believe that the Secured Party Obligations are secured by liens on and security interests in the accounts, charter hire and any other monies generated from Debtors' chartering or rental of the Vessel Collateral (the "Vessel Earnings").

72. The Committee disputes that assertion and contends that any claims of Existing Secured Parties were cut off upon the filing of the Debtors' bankruptcy petitions.

73. Section 552 of the Bankruptcy Code mandates that property acquired by the debtor's estate after commencement of a bankruptcy case is not subject to a prepetition lien unless the property constitutes proceeds, products, offspring, or profits of the prepetition collateral.

74. The Vessel Earnings do not arise automatically from ownership of the Vessel Collateral. Rather, the Vessel Earnings arise only when the Debtors employ, crew, maintain, manage, dispatch, fuel, and operate the vessels and perform services for customers under charters, contracts, and other commercial arrangements.

75. As of the Petition Date, the Debtors possessed no existing right to payment with respect to the Vessel Earnings at issue. Any obligation to pay charter hire, freight, service revenue, accounts, or receivables arose only after the Debtors performed postpetition obligations and expended postpetition estate resources in the ordinary course of business.

76. The Vessel Earnings therefore constitute newly-created postpetition payment rights and receivables rather than proceeds of any prepetition accounts, contract rights, or other payment obligations existing as of the Petition Date.

77. The Secured Parties' assertion of liens on "earnings," "charter hire," "accounts," "receivables," "contract rights," "general intangibles," or similar categories of collateral does not alter the operation of section 552(a). To the extent such collateral was acquired by the Debtors or their estates after the Petition Date, section 552(a) cuts off the attachment of any prepetition security interest unless the requirements of section 552(b) are satisfied.

78. The Vessel Earnings are not proceeds, products, offspring, rents, or profits of prepetition collateral within the meaning of section 552(b). Rather, they are generated through the Debtors' postpetition labor, services, business operations, and use of estate resources and therefore constitute after-acquired property subject to the lien-cutoff provisions of section 552(a). To the extent any Vessel Earnings are attributable to contracts, charter arrangements, customer relationships, or business opportunities that existed before the Petition Date, the payment obligations at issue nevertheless arose only upon the Debtors' postpetition performance under such arrangements. Accordingly, the resulting Vessel Earnings constitute postpetition property and are not preserved as collateral under section 552(b).

79. Because the Vessel Earnings were acquired postpetition and were generated through postpetition operations rather than from the disposition or collection of prepetition collateral, the Secured Party Liens do not attach to such Vessel Earnings.

80. An actual and justiciable controversy therefore exists between the Committee and the Secured Parties concerning whether the Secured Party Liens extend to the Vessel Earnings.

The Committee is entitled to a declaration that the Vessel Earnings constitute postpetition property subject to section 552(a) and that the Secured Party Liens do not attach thereto.

## RESERVATION OF RIGHTS AND RIGHT TO AMEND

81. The Complaint is based upon the Committee's investigation to date, which has been limited by the time constraints imposed by the Final Cash Collateral Order. The Committee's investigation is ongoing, and the Committee reserves its right to amend and supplement this Complaint as additional information is discovered, including the right to assert additional affirmative relief.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Defendants on the above claims and requested the Court enter an order:

(a) Declaring that certain Defendants do not possess valid, enforceable, attached, or perfected liens in the categories of Non-Vessel Collateral identified;

(b) Avoiding the liens and security interests challenged herein pursuant to sections 544 and/or 547 of the Bankruptcy Code;

(c) Recovering and preserving the avoided liens pursuant to sections 550 and 551 of the Bankruptcy Code;

(d) Declaring that the Vessel Earnings constitute postpetition property that is not subject to the Secured Party Liens pursuant to section 552(a) of the Bankruptcy Code;

(e) Granting the Committee costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action; and

(f) Ordering such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/
Tristan Manthey, La. Bar No. 24539
Cherie D. Nobles, La. Bar No. 30476
Joseph A. Caneco, La. Bar No. 40721
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Ave., 46th Floor
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Email   tmanthey@fishmanhaygood.com
        cnobles@fishmanhaygood.com
        jcaneco@fishmanhaygood.com

-and-

Robert J. Gayda (*pro hac vice*)
Catherine V. LoTempio (*pro hac vice*)
Shivani D. Patel (*pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Email:  gayda@sewkis.com
        lotempio@sewkis.com
        shivani.patel@sewkis.com

Counsel to the Official Committee of Unsecured
Creditors of Crosby Tugs, L.L.C. and Crosby
Dredging, L.L.C.