**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: | |
| | § CASE NO. 26-10678 |
| **CROSBY MARINE TRANSPORTATION, LLC, *et al.*,**[1] | § (JOINTLY ADMINISTERED) |
| | § |
| | § CHAPTER 11 |
| | § COMPLEX CASE |
| | § |
| **Debtors.** | § SECTION: A |

---

**<u>ELGA ONE LLC – SERIES ONE'S LIMITED OBJECTION TO DEBTORS' EXPEDITED MOTION (I) TO APPROVE ALLOCATION OF CASH PROCEEDS TO ASSETS SOLD BY DEBTORS TO BREAKWATER BUYER, LLC IN GOING CONCERN SALE, (II) TO SET A HEARING AND NOTICE PROCEDURES FOR ALLOCATION DETERMINATION, AND (III) FOR RELATED RELIEF</u>**

ELGA One LLC Series One ("***ELGA***"), a party in interest, an Existing Secured Creditor as identified on Exhibit 1 to the Court's Final Cash Collateral Order [ECF Doc. 294] (the "***Final CCO***"), and holder of an Encumbrance (as defined in the Breakwater Sale Order, ECF Doc. 930) attaching to the Cash Sale Proceeds, and respectfully submits this limited objection (the "***Objection***") to the Debtors' *Expedited Motion (I) to Approve Allocation of Cash Proceeds to*

---

[1] The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], on March 24, 2026. [No. 26-10678, ECF Doc. 9; No. 26-10679, ECF Doc. 4; No. 26 10680, ECF Doc. 4; No. 26-10681, ECF Doc. 4]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Inshore Marine Service, L.L.C. [No. 26-11734], (ii) Crosby Marine Repairs, L.L.C. [No. 26-11735], (iii) Crosby Offshore Marine Service, L.L.C. [No. 26-11736], (iv) Kurt Crosby, L.L.C. [No. 26-11737], (v) Tala Marine, L.L.C. [No. 26- 11738], (vi) Webb Crosby, L.L.C. [No. 26-11739], (vii) Crosby Inland Marine, LLC [No. 26-11740], (viii) Crosby Real Estate, LLC [No. 26-11741], (ix) Tala Real Estate, LLC [No. 26-11742], and (x) Crosby Enterprises, L.L.C. [No. 26-11743], on July 21, 2026. [No. 26-10678, ECF Doc. 663; No. 26-11734, ECF Doc. 10; No. 26-11735, ECF Doc. 9; No. 26-11736, ECF Doc. 9; No. 26-11737, ECF Doc. 9; No. 26-11738, ECF Doc. 9; No. 26-11739, ECF Doc. 9; No. 26-11740, ECF Doc. 9; No. 26-11741, ECF Doc. 9; No. 26-11742, ECF Doc. 9; No. 26-11743, ECF Doc. 9]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Susan Marie, LLC [No. 26-11960], (ii) Vinton Crosby, L.L.C [No. 26-11962], (iii) Tara Crosby, L.L.C [No. 26-11963]; and (iv) Crosby & Son Towing, L.L.C [No. 26-11964], on August 7, 2026. [ECF Doc. 26-10678, ECF Doc. 780; No. 26-11960, ECF Doc. 11; No. 26-11962, ECF Doc. 11; No. 26-11963, ECF Doc. 11; 26-11964, ECF Doc. 11].

*Assets Sold by Debtors to Breakwater Buyer, LLC in Going Concern Sale, (II) to Set a Hearing and Notice Procedures for Allocation Determination, and (III) for Related Relief* [ECF Doc. 935], pursuant to the Court's Scheduling Order [ECF Doc. 939], (the "***Motion***"), and in support states as follows:

## PRELIMINARY STATEMENT

1. ELGA objects to the Motion to the extent it asks the Court to determine value and allocate the Cash Sale Proceeds on the basis of the Final Breakwater Allocation attached as Exhibit A to the Motion. As set forth below, the Final Breakwater Allocation is not competent indicia of value within the meaning of section 506(a) of the Bankruptcy Code and the authorities the Debtors themselves cite in the Motion. ELGA reserves all rights to call witnesses, including expert witnesses, and to present evidence of value at the Allocation Hearing, and further reserves all rights described herein.

## BASIS FOR OBJECTION

2. The Motion itself recognizes that, before any allocation of the Cash Sale Proceeds can occur, *"[b]efore determining each asset's portion of the cash proceeds each asset must be valued,"* and that section 506(a) requires that value be determined *"in light of the 'disposition or use' in fact 'proposed.'"* Motion ¶¶ 13–14 (quoting *In re LTV Steel Co., Inc.*, 285 B.R. 259, 268–69 (Bankr. N.D. Ohio 2002), and *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 964 (1997)). ELGA disputes that the Final Breakwater Allocation satisfies the legal standard.

3. The Fifth Circuit applies the same purpose-and-proposed-use framework and requires bankruptcy courts to make specific, evidence-based findings under section 506(a) rather than simply adopting a party's proposed number. In *Houston Sportsnet Fin., L.L.C. v. Houston Astros, L.L.C. (In re Houston Reg'l Sports Network, L.P.)*, 886 F.3d 523, 531–33 (5th Cir. 2018),

the Fifth Circuit held that a bankruptcy court has flexibility in valuing collateral under section 506(a) only *"so long as the bankruptcy court takes into account the purpose of the valuation and the proposed use or disposition of the collateral at issue,"* and it remanded the case because the bankruptcy court had not made adequate findings on that point. The same rule requires more here than accepting Breakwater Buyer's allocation at face value: the Court must actually determine value based on evidence directed to the going-concern use for which the Breakwater Assets were sold, not adopt a number supplied by an interested party without that analysis.

4. The Final Breakwater Allocation is not an appraisal, valuation, or other independent determination of the value of the individual Breakwater Assets. It is, by the Debtors' own description, an allocation that *"represents how the ultimate purchaser, Breakwater Buyer, believed the Cash Sale Proceeds should be allocated to the Breakwater Assets."* Motion ¶ 15 (emphasis added). A buyer's unilateral, post-hoc allocation of its own aggregate purchase price prepared for the buyer's own accounting, tax, or internal purposes, is not evidence of the fair market or going-concern value of the assets to the estate. It is, at most, evidence of how one interested party chose to characterize a lump-sum bid after the fact, and it is inherently self-serving where Breakwater Buyer's own allocation determines how much of the purchase price is attributed to assets that may be encumbered versus unencumbered.

5. Tellingly, *LTV Steel* itself (the very case on which the Debtors rely for the governing standard) rejected an allocation prepared by the buyer after the sale for essentially the same reasons ELGA raises here. In *LTV Steel*, the successful bidder's president prepared, after closing, an allocation of the purchase price among the acquired assets and was subpoenaed to testify about it. 285 B.R. at 269-70. The court gave that allocation no weight, finding that the buyer's own witness "did not testify that his allocation 'valued' the assets," but only that it



4933-0496-2768

"represents how I determined to come up with the [purchase price]… and that's all it represents"; that the allocation was prepared "in several hours… without help from consultants or other outside experts"; and that it "fail[ed] to reflect what [the buyer] would have paid for any individual asset, without the other assets." *Id.* The court concluded that such a post-hoc, unilateral buyer allocation was "unreliable as valuations" and could not be relied upon for purposes of allocating sale proceeds among lienholders. *Id.* at 270.

6. Here, the Final Breakwater Allocation suffers from the same infirmities: it is Breakwater Buyer's own after-the-fact characterization of a lump-sum bid, prepared by an interested party for its own purposes, and the Motion identifies no independent appraisal, expert analysis, or methodology supporting it beyond Breakwater Buyer's say-so.

7. Courts confronting materially identical facts have reached the same conclusion. In *Polk 33 Lending, LLC v. THL Corporate Finance, Inc. (In re Aerogroup International, Inc.)*, 601 B.R. 571 (Bankr. D. Del. 2019), the bankruptcy court was called upon to allocate the proceeds of a section 363 sale of substantially all of a debtor's assets between two competing secured lenders, each holding liens on different collateral. Rather than accept either lender's proposed allocation, the court conducted a multi-day evidentiary hearing and made its own detailed determination of the value of the individual assets underlying each lender's claim before allocating the sale proceeds accordingly. *Id.* at 598. The same process, an independent, evidence-based determination of the value of the specific assets securing each creditor's claim, is warranted here.

8. This Court has already made observations bearing directly on the reliability of buyer-prepared allocations of this kind. At the Sale Hearing held on August 31, 2026, the Court noted that the allocations at issue were treated by the Debtors, Breakwater Buyer, and the Court as confidential and were ordered sealed, and that such allocations constituted the purchaser's "secret

sauce." The Court further observed that a bidder does not go to an auction to prove the fair market value of property—the bidder goes to win the auction. These observations underscore why the Final Breakwater Allocation—prepared confidentially by an interested bidder for the purpose of winning the Auction, not of valuing the Breakwater Assets—cannot now be treated as competent, arm's-length evidence of value.

9. The Motion attempts to bolster the Final Breakwater Allocation by pointing to Exhibit C, which purports to compare the Final Breakwater Allocation to "the highest partial lot bid received for an asset (if any) at the Auction." Motion ¶ 15 (emphasis added). By the Debtors' own qualification, that comparison is not available for every Breakwater Asset, and where no partial lot bid exists for a given asset, the Final Breakwater Allocation for that asset is untethered to any competing bid or market evidence whatsoever. An allocation that is corroborated by a competing bid only intermittently, and by the buyer's own say-so the rest of the time, is not competent evidence of value for the Breakwater Assets as a whole.

10. Nor does the Auction process itself establish the value of each individual Breakwater Asset. The Auction and Sale Hearing tested and approved the aggregate, going-concern purchase price for substantially all of the Debtors' assets sold as a single, integrated transaction; the Court's findings at the Sale Hearing went to the adequacy of the marketing process and the aggregate consideration, not to the value of any discrete asset. See Motion ¶¶ 6–8. Indeed, the Court declined to approve the Final Breakwater Allocation in connection with the Breakwater Sale Order and instead directed the parties to file the very motion (or motions) now before the Court to determine value. Motion ¶ 8. Having recognized that the allocation question required its own evidentiary process separate from the Sale Hearing, the Debtors cannot now short-circuit that process by asking the Court simply to adopt the Buyer's allocation as presumptively correct.

11. The unreliability of the Final Breakwater Allocation is not merely theoretical. On May 14, 2026, the Debtors filed a Notice of Filing of Asset Detail List [ECF Doc. 398-1], attaching a detailed schedule of asset values reflecting appraisal information the Debtors themselves utilized. That filing attributed a much higher value of over $9.5 Million to the four vessels that constitute ELGA's collateral. The Final Breakwater Allocation now attributes only $425,000, to those four vessels. The Motion offers no appraisal, expert analysis, or other competent explanation reconciling this discrepancy. A buyer's unilateral allocation that departs this dramatically from the Debtors' own contemporaneous valuation disclosures, without explanation, is precisely the kind of unreliable, non-probative evidence *LTV Steel* rejected.

12. For these reasons, ELGA submits that the Final Breakwater Allocation, standing alone, does not constitute competent evidence of the value of the Breakwater Assets under section 506(a), *Rash*, *Houston Regional Sports Network*, or *LTV Steel*. The value of the Breakwater Assets, and the resulting allocation of the Cash Sale Proceeds and attachment of Encumbrances, should be determined only after a full evidentiary hearing at which all parties in interest, including ELGA, may present competent evidence of value—including appraisals, comparable transactions, and other admissible evidence—and test the Debtors' and Breakwater Buyer's evidence through discovery and cross-examination.

## ELGA'S PROPOSED VALUATION

13. Pursuant to Paragraph 2 of the Court's Scheduling Order [ECF Doc. 939], M C Bank states that it objects to the Debtors' proposed relative valuation of the two Breakwater Assets identified as ELGA's collateral: the vessels Crosby Knight, the Crosby Hope, the Crosby Voyager and the Crosby Viking.

14. Subject to and without waiver of the foregoing, and subject to further supplementation with appraisal and other expert evidence to be exchanged in accordance with the Process Order and the Scheduling Order, ELGA's proposed valuation of each asset is as follows: Crosby Knight at $2.8 Million, the Crosby Hope at $400,000, the Crosby Voyager $100,000, and the Crosby Viking at $200,000. ELGA reserves the right to revise these proposed valuations, including upward or downward, as its investigation and expert analysis proceed.

## RESERVATION OF RIGHTS

15. ELGA reserves all rights to: (a) supplement, amend, or further explain this Objection; (b) conduct discovery regarding the Final Breakwater Allocation, the Auction, and any other evidence of value submitted by any party; (c) call witnesses, including expert witnesses on valuation, and to introduce documentary and other evidence of the value of the Breakwater Assets at the Allocation Hearing; (d) cross-examine any witness offered by the Debtors, Breakwater Buyer, or any other party in interest; (e) object to the methodology, admissibility, or weight of the Final Breakwater Allocation or any other valuation evidence offered by any party; and (f) assert and preserve any and all claims, defenses, liens, and rights of ELGA with respect to the Breakwater Assets, the Cash Sale Proceeds, and any Encumbrances, all of which are expressly reserved and not waived by this Objection.

16. ELGA does not, by this Objection, waive or otherwise compromise any position with respect to the validity, priority, extent, or enforceability of its Encumbrances, and reserves all rights with respect thereto, including all rights preserved to Existing Secured Creditors under the Final CCO and the Breakwater Sale Order.

## CONCLUSION

WHEREFORE, ELGA respectfully requests that the Court (i) decline to approve the Final Breakwater Allocation as the basis for determining the value of the Breakwater Assets or allocating the Cash Sale Proceeds; (ii) at the Allocation Hearing already set for September 24, 2026 [ECF Doc. 939], determine the value of the Breakwater Assets and the resulting allocation of the Cash Sale Proceeds based on competent evidence presented by all parties in interest; and (iii) grant such other and further relief as is just and proper.

Dated: September 14, 2026

Respectfully submitted,


**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

*/s/ Joseph P. Briggett*
Joseph P. Briggett (LA Bar No. 33029)
Trevor C. Mosby (LA Bar No. 38618)
201 St. Charles Avenue Suite 3600
New Orleans, Louisiana 70170
Telephone (504) 566-5200
Facsimile (504) 636-4000
harnold@bakerdonelson.com
tmosby@bakerdonelson.com

*Attorneys for ELGA One LLC, Series One*


## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing Limited Objection with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

*/s/ Joseph P. Briggett*