**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | | |
| | § | CASE NO. 26-10678 |
| CROSBY MARINE TRANSPORTATION, | § | (JOINTLY ADMINISTERED) |
| LLC, *et al.*,[1] | § | |
| | § | CHAPTER 11 |
| Debtors. | § | COMPLEX CASE |
| | § | |
| | § | SECTION: A |

**M C BANK & TRUST COMPANY'S**
**MOTION TO CONVERT CASES TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b)**

M C Bank & Trust Company ("***M C Bank***"), a secured creditor and party in interest in the above-captioned, jointly administered chapter 11 cases (collectively, the "***Cases***") of Crosby Marine Transportation, LLC and its affiliated debtors and debtors in possession (collectively, the "***Debtors***"), files this Motion to Convert Cases to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) (the "***Motion***") and respectfully states as follows:

## INTRODUCTION

The Breakwater Sale has closed. The Debtors have no employees, no operations, and no realistic path back to viability. Their pre-petition secured lenders, including M C Bank, are left

[1] The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], on March 24, 2026. [No. 26-10678, ECF Doc. 9; No. 26-10679, ECF Doc. 4; No. 26 10680, ECF Doc. 4; No. 26-10681, ECF Doc. 4]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Inshore Marine Service, L.L.C. [No. 26-11734], (ii) Crosby Marine Repairs, L.L.C. [No. 26-11735], (iii) Crosby Offshore Marine Service, L.L.C. [No. 26-11736], (iv) Kurt Crosby, L.L.C. [No. 26-11737], (v) Tala Marine, L.L.C. [No. 26- 11738], (vi) Webb Crosby, L.L.C. [No. 26-11739], (vii) Crosby Inland Marine, LLC [No. 26-11740], (viii) Crosby Real Estate, LLC [No. 26-11741], (ix) Tala Real Estate, LLC [No. 26-11742], and (x) Crosby Enterprises, L.L.C. [No. 26-11743], on July 21, 2026. [No. 26-10678, ECF Doc. 663; No. 26-11734, ECF Doc. 10; No. 26-11735, ECF Doc. 9; No. 26-11736, ECF Doc. 9; No. 26-11737, ECF Doc. 9; No. 26-11738, ECF Doc. 9; No. 26-11739, ECF Doc. 9; No. 26-11740, ECF Doc. 9; No. 26-11741, ECF Doc. 9; No. 26-11742, ECF Doc. 9; No. 26-11743, ECF Doc. 9]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Susan Marie, LLC [No. 26-11960], (ii) Vinton Crosby, L.L.C [No. 26-11962], (iii) Tara Crosby, L.L.C [No. 26-11963]; and (iv) Crosby & Son Towing, L.L.C [No. 26-11964], on August 7, 2026. [ECF Doc. 26-10678, ECF Doc. 780; No. 26-11960, ECF Doc. 11; No. 26-11962, ECF Doc. 11; No. 26-11963, ECF Doc. 11; 26-11964, ECF Doc. 11].

holding substantial unsecured deficiency claims, even as, upon information and belief, the Debtors' post-petition DIP lender was paid in full in cash at Closing. Payments the Final CCO requires to be made to secured creditors are not being made. 18 separate, non-consolidated estates have unresolved inter-company claims that the Debtors' own Stipulation admits remain unadjudicated. The financial reports of multiple Debtors show continuing multi-million-dollar losses and negative equity in the tens of millions of dollars, and the Debtors have not filed a Monthly Operating Report since June 2026, even as the Breakwater Sale closed and DIP obligations were allegedly satisfied. There is nothing left to reorganize. In just the month of June 2026, one of the 18 jointly administered Debtors alone approved $3.29 million and paid $2.06 million in bankruptcy professional fees. Continued chapter 11 administration serves no purpose beyond allowing further professional fees to accrue against a fixed and shrinking pool of assets. Conversion to chapter 7, with the appointment of an independent trustee, is not merely appropriate. It is the only remedy that serves the best interests of creditors and these estates.

## RELIEF REQUESTED

1. By this Motion, M C Bank requests entry of an order, pursuant to 11 U.S.C. § 1112(b), converting the Cases to cases under chapter 7 of the Bankruptcy Code.

## JURISDICTION AND VENUE

2. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of the Cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is 11 U.S.C. § 1112(b).

## BACKGROUND

3. On March 24, 2026, the Court entered an order directing joint administration of the chapter 11 case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the chapter 11 cases of Crosby Tugs, L.L.C. [No. 26-10679], Crosby Dredging, LLC [No. 26-10680], and Bertucci Contracting Company, L.L.C. [No. 26-10681]. On July 21, 2026, the Court entered a further order directing joint administration of the Cases with the later-filed chapter 11 cases of ten additional affiliated debtors. On August 7, 2026, the Court entered a third order directing joint administration of the Cases with the chapter 11 cases of four more affiliated debtors filed on or about July 16, 2026.

4. M C Bank is a secured creditor of debtors, Crosby Marine Transportation, LLC and Crosby Enterprises, LLC, and an "Existing Secured Party" as identified on Exhibit 1 to the Court's *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to Existing Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [ECF Doc. 294] (the "***Final CCO***"). M C Bank holds first-priority preferred ship mortgages encumbering the vessels **Devin Candies** and **Crosby Adapt 1**, together with related collateral, securing a claim in the amount of $9,723,236.97 as of March 23, 2026. *See* M C Bank Proof of Claim No. 64 and all attachments thereto.

5. On September 3, 2026, the Court entered an Order [ECF Doc. 930] approving the sale of substantially all of the Debtors' assets to Breakwater Buyer, LLC (the "***Breakwater Sale***") as a going-concern transaction, following a separate order entered at ECF Doc. 918 approving the sale of Bertucci Contracting Company, L.L.C.'s 49.99% membership interest in Luhr Crosby, LLC to Luhr Bros., Inc. (the "***Luhr Sale***," and together with the Breakwater Sale, the "***Sales***"). Upon information and belief, the Breakwater Sale closed on or about September 15, 2026. The allocation

of the Breakwater Sale's cash proceeds among the Debtors' various assets, and the resulting attachment of creditors' liens to those allocated proceeds, remains disputed and is currently scheduled for an evidentiary hearing on September 24, 2026, pursuant to the Court's Scheduling Order [ECF Doc. 939].

6. The Sales were widely opposed. Paddy Crosby, the Lauren M. Guidry Trust, the Aaron J. Guidry Trust, Lauren Guidry Leyrer, and Aaron J. Guidry (collectively, the "***Guidry Objectors***") objected to the Luhr Sale [ECF Doc. 855, as amended at ECF Doc. 898], expressly reserving, among other things, (i) the allocation, as between the Bertucci estate and the other Debtors' estates, of funds received by the Bertucci estate against the Debtors' debtor-in-possession financing with JMB Capital Partners Lending, LLC ("***JMB***"), and (ii) the determination of pre-petition and post-petition due-to and due-from claims between and among the Bertucci estate and the remaining Debtors' estates. The Guidry Objectors and numerous secured lenders (including M C Bank, ECF Doc. 853) separately objected to the Breakwater Sale on the ground that it constituted a sub rosa plan of reorganization as to substantially all the Debtors' assets, among other grounds. [ECF Doc. 897, as amended at ECF Doc. 857]. Both objections were resolved only as to approval of the Sales themselves, following a two-day contested evidentiary hearing, by the Luhr Sale Order and the Breakwater Sale Order; neither order adjudicated the underlying inter-estate allocation and claim issues the Guidry Objectors raised.

7. The Breakwater Sale Order further provides, at paragraph 54, that all DIP Obligations owed to JMB (the Debtors' debtor-in-possession lender) "shall be Paid in Full . . . in cash upon the Closing," pursuant to paragraph 8(b) of the Final Order (A) Authorizing Debtors to (I) Obtain Postpetition Financing and (II) Use Cash Collateral, (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (C) Granting Adequate Protection, (D)

Modifying Automatic Stay, and (E) Granting Related Relief [ECF Doc. 284]. Upon information and belief, the Debtors' post-petition DIP lender was thus paid in full in cash at Closing, while the Debtors' pre-petition secured lenders, including M C Bank, are not receiving the payments to which they are entitled under the Final CCO.

8. On September 15, 2026, the Debtors filed a unilateral Stipulation [ECF Doc. 1008] (the "***Stipulation***"), to which no creditor or other non-Debtor party is a signatory. The Debtors stipulate therein that neither the Luhr Sale Order nor the Breakwater Sale Order addresses, resolves, or adjudicates (i) the allocation of post-petition administrative expenses among the 18 separate, jointly administered Debtor estates, or (ii) any claim by one Debtor against another for reimbursement of that Debtor's allocable share of payments made to JMB under the DIP financing, including, expressly, the very inter-estate allocation and due-to/due-from issues the Guidry Objectors raised in the Luhr Sale Objection. By its own terms, the Stipulation "shall not have any force and effect with respect to any party other than the Debtors," Stipulation ¶ 5, and therefore resolves nothing as between the Debtors and their creditors, including M C Bank.

9. The Cases have not been substantively consolidated, and each Debtor's estate remains legally and factually distinct notwithstanding their joint administration for procedural purposes. As the Stipulation itself confirms, significant questions regarding the allocation of administrative expenses and claims among no fewer than 18 separate Debtor estates remain entirely unresolved, with no mechanism identified for their resolution other than the Debtors' own unilateral say-so.

10. Based on information available to M C Bank, the cash proceeds of the Breakwater Sale are insufficient to satisfy the claims of the Debtors' secured lenders in full, resulting in substantial unsecured deficiency claims on the part of those pre-petition lenders against the

Debtors' estates. Upon information and belief, now that the Sales have closed, the Debtors have no employees and no ongoing business operations of any kind.

## CAUSE EXISTS TO CONVERT THE CASES TO CHAPTER 7 UNDER SECTION 1112(B)

11. Section 1112(b)(1) of the Bankruptcy Code provides that, on request of a party in interest and after notice and a hearing, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) provides a non-exhaustive list of grounds constituting "cause," including, as relevant here, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," *id.* § 1112(b)(4)(A), and "failure to comply with an order of the court," *id.* § 1112(b)(4)(E).

### i. There Is No Reasonable Likelihood of Rehabilitation.

12. Cause exists under Section 1112(b) because there is no reasonable likelihood of rehabilitation. Where liquidation of the estate's assets is inevitable and no ongoing business remains to rehabilitate, conversion to chapter 7 is appropriate. *See In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61-62 (B.A.P. 6th Cir. 2013) (affirming dismissal for cause under Section 1112(b)(4)(A) where the record showed continuing loss and diminution of the estates' assets and the absence of a reasonable likelihood of rehabilitation). Here, the Debtors have sold substantially all operating assets, ceased meaningful business operations, and no longer possess a realistic prospect of restoring a going concern. What remains is the administration and liquidation of assets and claims, functions more appropriately performed by a chapter 7 trustee. This approach reflects the Fifth Circuit's recognition that "the vast majority of chapter 11 cases do not end with confirmed plans of reorganization," and that bankruptcy courts must "recognize these cases as

promptly as possible and limit the administrative expenses and costs borne by the creditors." *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991).

13. The Breakwater Sale has now closed. Upon information and belief, the Debtors accordingly have no employees, no ongoing business operations, and no revenue-generating activity of any kind. A chapter 11 reorganization presupposes a business to reorganize; where, as here, a debtor's operating assets have been sold and no business remains, there is nothing left to rehabilitate. *See* 11 U.S.C. § 1112(b)(4)(A).

14. Compounding the absence of any ongoing business, the cash proceeds generated by the Breakwater Sale are insufficient to satisfy the Debtors' secured lenders in full. Under Section 506(a)(1), each such lender's claim is secured only "to the extent of the value of such creditor's interest in the estate's interest in such property" and unsecured as to the remainder. 11 U.S.C. § 506(a)(1). Because the allocated proceeds fall well short of the amounts owed, that bifurcation will leave the Debtors' pre-petition secured lenders -- not M C Bank alone, but the Debtors' secured lender constituency generally -- holding substantial unsecured deficiency claims against estates that, following the Breakwater Sale, will consist of little more than sale proceeds to be distributed and whatever causes of action or residual assets remain to be administered. This is precisely the kind of continuing diminution of estate value, coupled with the absence of any prospect of rehabilitation, that constitutes cause for conversion under Section 1112(b)(4)(A).

15. The Debtors do not appear to have funds necessary to fund a liquidating plan of reorganization. Even if they did, proceeding through a contested disclosure statement and plan confirmation process in chapter 11, for an estate with no ongoing business and nothing left to do but distribute sale proceeds and wind down, would impose unnecessary delay, expense, and

administrative burden on the estate. A chapter 7 trustee can accomplish the same result, an orderly liquidation and distribution of estate assets, more efficiently and at materially lower cost.

**ii. The Debtors Have Failed to Comply with the Final CCO.**

16. The Final CCO provides for adequate protection to be afforded to Existing Secured Parties, including through payment from the proceeds of any sale of their respective collateral, and replacement liens. Notwithstanding that requirement, and as a direct result of the sale process chosen by the Debtors and their professionals, payments contemplated by the Final CCO are not being made to the Debtors' secured lenders, including M C Bank, even as, upon information and belief, the Debtors' post-petition DIP lender, JMB, was paid in full in cash at Closing pursuant to paragraph 54 of the Breakwater Sale Order. This failure to comply with the Final CCO (itself an Order of this Court) constitutes independent cause for conversion under Section 1112(b)(4)(E).

17. The financial condition of multiple Debtors further confirms the point.

18. Crosby Dredging, LLC's most recent Monthly Operating Report reflects continuing and substantial financial deterioration. *See* Monthly Operating Report of Crosby Dredging, LLC [Case No. 26-10680, ECF No. 36]. For the month ending June 30, 2026, Crosby Dredging reported a net loss of approximately $1.15 million and cumulative post-petition losses exceeding $4.7 million. *Id.* Crosby Dredging reported cash receipts of approximately $695,115 and disbursements of approximately $960,491 during the reporting period. *Id.* In addition, Crosby Dredging reported approximately $1.5 million in post-petition accounts payable, including approximately $920,000 that were already past due. *Id.* Crosby Dredging further reported approximately $6.67 million in accounts receivable more than ninety days outstanding and a negative ending cash position. *Id.*

19. The same pattern exists across other Debtors. Crosby Marine Transportation, LLC reported a June 2026 loss of approximately $2.17 million, cumulative post-petition losses

exceeding $3.5 million, and negative equity of approximately $88.5 million. *See* Monthly Operating Report for Crosby Marine Transportation, LLC [Case No. 26-10678, ECF No. 737].

20. Notably, although Crosby Marine Transportation owned the majority of the vessel fleet, the anticipated vessel management structure that was expected to generate operating revenue never materialized. The Debtors never sought approval of the contemplated *Vessel Management Agreement*, leaving Crosby Marine Transportation burdened with ownership obligations while deprived of the anticipated revenue stream that was expected to support operations. The failure to implement that structure appears to have materially impaired the Crosby Marine Transportation estate and may give rise to potential estate causes of action.

21. Crosby Tugs, LLC appears to have borne substantially all professional fees incurred in these jointly administered chapter 11 cases. Part 5 of Crosby Tugs' Monthly Operating Report for June 2026 reflects approximately $3.29 million in approved bankruptcy professional fees and approximately $2.06 million in professional fees paid during the reporting period. *See* Case No. 26-10679, ECF No. 60, Part 5. By contrast, Crosby Marine Transportation reported no professional fees in its own Monthly Operating Report for June 2026. *See* Case No. 26-10678, ECF No. 737, Part 5. As a result, Crosby Tugs has suffered substantial continuing losses, reporting a June loss of approximately $3.87 million, cumulative post-petition losses exceeding $8.18 million, and negative equity exceeding $113.9 million. *See* Case No. 26-10679, ECF No. 60.

22. These figures demonstrate ongoing diminution of estate assets and continuing losses to the estates. They also demonstrate the absence of any realistic prospect that these Debtors can be restored to viable operations. No disclosure statement has been filed, no confirmable plan has been proposed, and substantially all operating assets have already been sold. Under these

circumstances, the Debtors are no longer operating toward rehabilitation. Rather, they are engaged in liquidation, claims administration, allocation disputes, and distributions.

23. Accordingly, the continuing losses suffered by Crosby Dredging, Crosby Marine Transportation, and Crosby Tugs constitute additional cause for conversion under Section 1112(b)(4)(A) and further confirm that an independent chapter 7 trustee is better positioned to administer the remaining assets, claims, and inter-estate disputes for the benefit of creditors.

### iii. Lack of Financial Transparency and Estate Administration Issues Further Support Conversion.

24. The administration of these estates has been marked by a continuing lack of transparency concerning significant estate transactions and obligations. Despite repeated references throughout these chapter 11 cases to DIP financing, DIP repayments, professional fee escrows, inter-estate allocations, and post-closing distributions, creditors have not been provided with a complete accounting of those matters.

25. First, the record contains no meaningful reconciliation of DIP advances, repayments, and remaining obligations. The Debtors have represented that sale proceeds were utilized to satisfy DIP indebtedness, yet creditors have not been provided with a detailed accounting identifying the amount of advances made, the amount repaid, the source of such repayments, the particular estates bearing those obligations, or the effect of those transactions on estate assets and recoveries.

26. Second, the Debtors represented during various hearings that professional fee escrows would be established and funded. However, creditors have not been provided with a comprehensive accounting identifying the amount of such escrows, the source of the escrowed funds, the estates that funded them, or the relationship between those escrows and the professional fees incurred throughout these jointly administered cases.

27. Third, the Debtors have failed to provide meaningful reconciliations between actual operating results and approved budgets. Given the substantial post-petition losses reported across multiple estates, creditors are entitled to understand the extent to which actual performance deviated from projected performance and the reasons for such variances.

28. Finally, the Debtors have fallen behind in filing Monthly Operating Reports. The most recent Monthly Operating Reports filed by the Debtors cover the period ending June 30, 2026, and were filed on July 31, 2026. As of the filing of this Motion, no Monthly Operating Reports have been filed for July 2026 or August 2026. Consequently, creditors lack visibility into the Debtors' financial condition during the period in which the Breakwater Sale closed, DIP obligations were allegedly repaid, professional fee escrows were purportedly funded, and substantial estate transactions occurred. The absence of current operating reports prevents meaningful oversight of estate administration and leaves creditors unable to evaluate post-closing disbursements, professional fee payments, DIP repayments, escrow funding, and inter-estate transfers.

29. These deficiencies are particularly significant because the Debtors are jointly administering numerous separate estates with unresolved intercompany claims, allocation disputes, administrative expense issues, and competing creditor recoveries. An independent chapter 7 trustee is better positioned to investigate these matters, provide transparency to creditors, reconcile estate-specific obligations, and administer the remaining assets in accordance with the Bankruptcy Code. Taken together, the lack of financial transparency, continuing reporting deficiencies, and unresolved accounting issues further demonstrate cause for conversion under Section 1112(b).

### iv. A Chapter 7 Trustee Is the Most Efficient Means of Administering the Post-Sale Estates.

30. Conversion of the Cases is inevitable and will preserve estate value. As set forth above, the Breakwater Sale has closed, and the Debtors have no employees and no business; continued administration of the Cases under chapter 11 accordingly serves no purpose other than to allow the continued accrual of professional fees against a fixed and diminishing pool of assets. Converting the Cases now, rather than permitting further chapter 11 proceedings to run their course, will conserve estate resources and maximize the recovery available to creditors, including the Debtors' secured lenders holding substantial unsecured deficiency claims.

31. As discussed above, the Cases have not been substantively consolidated, and substantial inter-estate issues confirmed by the Debtors' own Stipulation remain entirely unadjudicated. An independent chapter 7 trustee, owing fiduciary duties to creditors of each separate estate and unaligned with any single constituency, is far better positioned than continued debtor-in-possession administration to investigate and resolve those issues, administer each Debtor's estate in accordance with applicable law, and pursue any estate causes of action that may exist, efficiently and at the lowest reasonable cost to the estates.

32. The remaining disputes concern allocations, inter-estate accounting, administrative claims, avoidance actions, and distributions. Courts routinely recognize that once liquidation is the only remaining objective, a chapter 7 trustee may be better positioned to administer the estate and maximize recoveries. *In re BH S & B Holdings LLC*, 439 B.R. 342, 349-50 (Bankr. S.D.N.Y. 2010); *In re Babayoff*, 445 B.R. 64, 81-82 (Bankr. E.D.N.Y. 2011). This Court reached the same conclusion in a recent case, finding that the ability of a chapter 7 trustee to reach assets for the benefit of creditors was the most compelling factor supporting conversion, and expressly adopting

the same factors identified in *BH S & B Holdings* and *Babayoff*. *See, e.g.*, *In re Veterans Holdings, LLC*, No. 24-12453, ECF Doc. 166 at page 16 (Bankr. E.D. La. July 9, 2025) (Grabill, J.).

33. The Debtors' reliance on the Stipulation only underscores the extent to which material inter-estate allocation and accounting issues remain unresolved.

34. The Stipulation did not resolve the intercompany issues. Instead, it appears to reallocate administrative expenses previously borne by the Crosby Tugs, LLC estate. Creditors received no notice of the Debtors' apparent attempt to bind the separate estates on allocation issues through the Stipulation. Any such determination should be made only after notice and court approval. Rather than resolving the conflicts, the Stipulation highlights the existence of significant inter-estate disputes affecting creditor recoveries. The existence of these conflicts underscores the need for an independent chapter 7 trustee. The allocation decisions directly affect creditor recoveries, inter-estate claims, and the allocation of administrative expenses among separate estates. An independent trustee is better positioned to resolve those disputes.

**v. Absent Substantive Consolidation, Section 506(a) Requires an Estate-by-Estate Determination the Debtors Have Not Undertaken.**

35. Section 506(a)(1) provides that a claim secured by a lien on property of the estate is a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property," and unsecured as to the balance. *See* 11 U.S.C. § 506(a)(1) (emphasis added). *See e.g.*, *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 961-62 (1997) (Section 506(a) requires valuation of collateral in the context of the proposed treatment of the secured claim). Here, the Debtors seek to allocate sale proceeds among multiple estates and collateral pools without first resolving ownership disputes and valuation questions that directly impact secured creditor recoveries.

36. As discussed above, the Cases have not been substantively consolidated. Each Debtor's "estate" therefore remains legally separate for purposes of Section 506(a), and a creditor's secured status must be determined by reference to the specific Debtor or Debtors whose property in fact secures its claim—not by reference to an aggregate sale price spanning 18 separate, non-consolidated estates. Joint administration does not merge assets and liabilities and does not create substantive consolidation. *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005); *Union Sav. Bank v. Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988).

37. Yet the allocation of the Breakwater Sale's cash proceeds, and the determination of the extent to which creditors' liens attach to those proceeds, has proceeded through a single, aggregated Proceeds Allocation Schedule, without a corresponding estate-by-estate accounting of which of the 18 separate Debtors in fact owned any given asset or owed any given obligation. As the Debtors' own Stipulation confirms, substantial questions regarding the allocation of expenses and claims among those separate estates remain entirely unresolved. Until those estate-specific questions are answered, the debtor-by-debtor determination Section 506(a) requires cannot reliably be made.

38. This is an independent reason a chapter 7 trustee, rather than continued debtor-in-possession administration, is warranted. A trustee administering each Debtor's separate estate is positioned to undertake the estate-specific accounting that the Debtors have not performed, ensuring that each creditor's claim is valued under Section 506(a) against the specific collateral and specific estate that in fact secures it, rather than through an aggregated allocation process that obscures which estate owes what, and to whom.

**CONVERSION, RATHER THAN DISMISSAL,**
**IS IN THE BEST INTERESTS OF CREDITORS AND THE ESTATE**

39. Where cause for relief under Section 1112(b) is established, the Court must determine whether conversion or dismissal better serves the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Here, the Debtors' estates hold cash proceeds from the Breakwater Sale to be administered and distributed, disputed claims to be reconciled, and potentially unresolved assets and liabilities among the several jointly administered Debtors to be sorted out. Dismissal would leave those matters unresolved and would not serve creditors. Conversion to chapter 7, with the appointment of an independent trustee to complete the post-Breakwater Sale administration of the estates, is the appropriate and most efficient remedy under the circumstances. That determination is committed to the Court's wide discretion. *In re Koerner*, 800 F.2d 1358, 1367 (5th Cir. 1986).

**CONCLUSION**

This is not a close case. The premise underlying chapter 11, that continued operation preserves value beyond what liquidation would yield, has no application here: the business is sold, the employees are gone, and what remains is cash to be divided among competing claimants across 18 separate estates whose inter-company obligations the Debtors themselves have not resolved. Continuing to administer that process through debtor-in-possession machinery, rather than through an independent fiduciary charged with sorting it out, does not serve creditors; it only delays their recovery and enlarges the professional fees that recovery must fund. The Court should convert the Cases now.

**WHEREFORE**, M C Bank & Trust Company respectfully requests that the Court (i) convert the Cases to cases under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b), and (ii) grant such other and further relief as the Court deems just and proper.

Dated: September 18, 2026

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

*/s/ Trevor C. Mosby*
Edward H. Arnold, III (LA Bar No. 18767)
Trevor C. Mosby (LA Bar No. 38618)
201 St. Charles Avenue Suite 3600
New Orleans, Louisiana 70170
Telephone (504) 566-5200
Facsimile (504) 636-4000
harnold@bakerdonelson.com
tmosby@bakerdonelson.com

*Attorneys for M C Bank & Trust Company*