**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 26-10678** |
| | § | **(JOINTLY ADMINISTERED)** |
| **CROSBY MARINE TRANSPORTATION,** | § | |
| **LLC,** | § | **CHAPTER 11** |
| | § | **COMPLEX CASE** |
| | § | |
| **Debtors.**[1] | § | |
| | § | **SECTION: A** |

**DEBTORS' AMENDED EXPEDITED MOTION (I) TO APPROVE ALLOCATION OF CASH PROCEEDS TO ASSETS SOLD BY DEBTORS TO BREAKWATER BUYER, LLC IN GOING CONCERN SALE, (II) TO SET A HEARING AND NOTICE PROCEDURES FOR ALLOCATION DETERMINATION, AND (III) FOR RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") file this amended motion (the "***Amended Motion***") amending the Debtors' *Expedited Motion (I) to Approve Allocation of Cash Proceeds to Assets Sold by Debtors to Breakwater Buyer, LLC in Going Concern Sale, (II) to Set a Hearing and Notice Procedures for Allocation Determination, and (III) for Related Relief* [ECF Doc. 935] (the "***Original Motion***") as set forth herein.

[1] The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Tugs, L.L.C. [No. 26-10679], (ii) Crosby Dredging, LLC [No. 26-10680], and (iii) Bertucci Contracting Company, L.L.C. [No. 26-10681], on March 24, 2026. [No. 26-10678, ECF Doc. 9; No. 26-10679, ECF Doc. 4; No. 26-10680, ECF Doc. 4; No. 26-10681, ECF Doc. 4]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Crosby Inshore Marine Service, L.L.C. [No. 26-11734], (ii) Crosby Marine Repairs, L.L.C. [No. 26-11735], (iii) Crosby Offshore Marine Service, L.L.C. [No. 26-11736], (iv) Kurt Crosby, L.L.C. [No. 26-11737], (v) Tala Marine, L.L.C. [No. 26- 11738], (vi) Webb Crosby, L.L.C. [No. 26-11739], (vii) Crosby Inland Marine, LLC [No. 26-11740], (viii) Crosby Real Estate, LLC [No. 26-11741], (ix) Tala Real Estate, LLC [No. 26-11742], and (x) Crosby Enterprises, L.L.C. [No. 26-11743], on July 21, 2026. [No. 26-10678, ECF Doc. 663; No. 26-11734, ECF Doc. 10; No. 26-11735, ECF Doc. 9; No. 26-11736, ECF Doc. 9; No. 26-11737, ECF Doc. 9; No. 26-11738, ECF Doc. 9; No. 26-11739, ECF Doc. 9; No. 26-11740, ECF Doc. 9; No. 26-11741, ECF Doc. 9; No. 26-11742, ECF Doc. 9; No. 26-11743, ECF Doc. 9]. The Court entered an Order directing joint administration of the Chapter 11 bankruptcy case of Crosby Marine Transportation, LLC [No. 26-10678], as lead case, with the Chapter 11 bankruptcy cases of (i) Susan Marie, LLC [No. 26-11960], (ii) Vinton Crosby, L.L.C [No. 26-11962], (iii) Tara Crosby, L.L.C [No. 26-11963]; and (iv) Crosby & Son Towing, L.L.C [No. 26-11964], on August 7, 2026. [ECF Doc. 26-10678, ECF Doc. 780; No. 26-11960, ECF Doc. 11; No. 26-11962, ECF Doc. 11; No. 26-11963, ECF Doc. 11; 26-11964, ECF Doc. 11].

## JURISDICTION, VENUE, AND STATUTORY BASES FOR RELIEF

1. This Court has jurisdiction over this Amended Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. The bases for the relief requested are sections 105(a) and 506 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 3012 and 9014 of the Federal Rules of Bankruptcy Procedure, and the Procedures for Complex Cases in the Eastern District of Louisiana.

## BACKGROUND

### A. The Original Motion

3. On August 31 and September 1, 2026 the Court held a hearing ("***Sale Hearing***") to consider the motion (the "***Sale Motion***") dated June 30, 2026 [Docket No. 571] of the Debtors, seeking, among other things, entry of an order approving the Debtors to sell ("***Breakwater Sale***") substantially all of the Debtors' assets—subject to exclusions of certain assets (the "***Excluded Assets***") to be sold to other parties or retained by the Debtors that were identified in the parties' transaction documents (the Debtors' assets, less the Excluded Assets, the "***Breakwater Assets***"), including the following: (i) Debtor Bertucci Contracting Company, L.L.C.'s 49.99% membership interest in Luhr Crosby, LLC; the (ii) the U.S. flagged offshore tug, KURT J. CROSBY (Official Number 1096764); (iii) the real property owned by Debtor Crosby Real Estate, LLC at 17771 Highway 3235, Galliano, LA 70354; and (iv) certain assets specifically retained by the Debtors—to Breakwater Buyer, LLC ("***Breakwater Buyer***") for consideration consisting of (i) $116,125,000 in cash, (ii) a credit bid of $3,750,000 in the amount of Buyer's court-approved bid protections, (iii) Determined Cure Costs as of the Closing Date up to $5,000,000 (as defined in the Breakwater APA), and (iv) the assumption of the Assumed Liabilities (as defined in the Breakwater APA), in each case subject to and as more fully set forth in the Asset Purchase Agreement (the "***Breakwater***

***APA***”) attached to the proposed order filed at ECF Doc. 906-1 (the “***Proposed Breakwater Order***”).

4. As required by the court-approved bidding procedures [ECF Doc. 665-1] (“***Bidding Procedures***”), when Breakwater Buyer submitted a $75 million cash Stalking Horse Bid for substantially all of the Debtors assets, Breakwater Buyer allocated its cash purchase price amongst each of the assets it sought to purchase and provided that allocation to the Debtors. During the course of the auction for the Debtors’ assets held on August 13 and 14, 2026 (“***Auction***”), at which Breakwater Buyer substantially increased its offered purchase price for substantially all of the Debtors’ assets. Following the conclusion of the Auction, Breakwater was ultimately determined to be a Successful Bidder (as defined in the Bidding Procedures), and Breakwater Buyer provided an updated and final allocation of its cash purchase price to each of the individual Breakwater Assets (“***Final Breakwater Allocation***”).

5. On September 3, 2026, the Court entered an order [ECF Doc. 930] (“***Breakwater Sale Order***”) overruling objections not withdrawn and approving the Breakwater Sale free and clear of all Encumbrances (as defined in the Breakwater Sale Order) and ordering that such “Encumbrances shall automatically attach solely to the proceeds of each respective [Breakwater] Asset, with the same validity, priority, force and effect that they now have as against the [Breakwater] Assets, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto.” [ECF Doc. 930 at 28].

6. Also on September 3, 2026, the Debtors filed the Original Motion, seeking entry of an order:

(i) determining the value of the Breakwater Assets,

(ii) allocating the Cash Sale Proceeds to the individual Breakwater Assets, and

> (iii) attaching Encumbrances to the allocated value of the Cash Sale Proceeds, all on the basis of the Final Breakwater Allocation or such other competent evidence submitted to the Court by the Debtors and any party in interest.

[ECF Doc. 935 at 5].

7. Through the Original Motion, the Debtors also sought entry of a process order:

> (a) setting a hearing to determine a final allocation ("***Allocation Hearing***"),
>
> (b) directing parties in interest to file objections and responses ("***Objections***") to the allocation proposed herein no later than September 14, 2026, and to serve such Objections on all parties in interest, including all Existing Secured Creditors as that term is defined in the Court's final order approving the use of cash collateral [ECF Doc. 294] ("***Final CCO***"),
>
> (c) directing parties in interest to file any replies to any Objections by September 21, 2026 (or such other date deemed appropriate by the Court),
>
> (d) directing parties in interest to file any witness and exhibit lists and to exchange exhibits no later than September 23, 2026, at 12:00 p.m. (Central Time),
>
> (e) setting a status conference for September 10, 2026, to address any need to supplement the Process Order, and
>
> (f) authorizing the Debtors to set the time and place of mediation with regard to this Motion by filing a notice of mediation.

[ECF Doc. 935 at 5].

8. The Court subsequently entered a Scheduling Order [ECF Doc. 939] pertaining the Original Motion substantially adopting the Debtors' proposed process order.

9. Separately, the Court appointed a mediator with respect to the Allocation Motion, initially, the Hon. John Kolwe [ECF Doc. 940], and later, Harley Riedel [ECF Doc. 986], upon motion by various lenders.

10. The Scheduling Order, among other things, required any party in interest who objected to the Allocation Motion to file an objection to the Allocation Motion on or before September 14, 2026. The Scheduling Order provided, "To the extent the objector objects to the

Debtors' proposed relative valuation of an asset, the Objection shall provide the objector's proposed valuation for such asset." [ECF Doc. 939 at 2].

11. Accordingly, the Final Breakwater Allocation provided a baseline value for every Breakwater Asset against which every objecting party was required to make an alternative proposal of value on the basis of "other competent evidence."

**B. Objections to Debtors' Proposed Allocation Methodology**

12. Numerous parties in interest objected to the Original Motion. A substantial group of secured creditors and the Official Committee of Unsecured Creditors of Crosby Tugs, L.L.C. and Crosby Dredging, LLC ("***Committee***") objected that the Final Breakwater Allocation is not competent evidence of value under section 506(a) of the Bankruptcy Code and urged an independent, appraisal-based determination through the use of myriad third party valuations. [ECF Doc. 995].

13. Rather than using the allocation provided by Breakwater Buyer or the bids received at the Auction as the baseline for allocating proceeds to the vessels approved for sale in the Breakwater Sale Order ("***Breakwater Vessels***"), the Committee has proposed using the following methodology ("***Committee Allocation Methodology***"): (i) determining whether a Breakwater Vessel was "operating" or "non-operating" as of a date certain (September 8, 2026) based on operational information provided by the Debtors; (ii) (a) assigning to any "operating" vessel the Forced Liquidation Value assigned in the DLS Marine Survey & Appraisal Report dated as of June 10, 2026 (the "***DLS Appraisal***") and (b) assigning to any "non-operating" vessel the lesser of the Net Forced Liquidation Value and "Scrap/Resid" value assigned in the DLS Appraisal; (iii) adding the resulting assigned values for the Breakwater Vessels to obtain a total value for the Breakwater Vessels; and (iv) prorating the assigned value of each Breakwater Vessel as to the total cash

proceeds received for the Breakwater Vessels ("***Proceeds***") to determine the Proceeds allocable to each Breakwater Vessel sold. [*See* ECF Doc. 995-1 at 2].

14. A mathematical and consistent application of the Committee Allocation Methodology is available at ECF Doc. 995-1 at 5-13.

**C. ELGA's Chapter 11 Filing and Stay Invocation**

15. On September 7, 2026, four vessel lenders (the "***Appealing Lenders***") filed a joint *Emergency Motion to Stay Pending Appeal their Notice of Appeal* [ECF Doc. 945], and on September 10, 2026, filed their *Notice of Appeal* [ECF Doc. 967].

16. On Friday, September 11, 2026, the Court held an evidentiary hearing on the Appealing Lenders' *Emergency Motion to Stay Sale Order Pending Appeal* [ECF Doc. 945], which sought to halt the sale of the Debtors' assets to Breakwater Buyer pending appeal of the Court's Sale Order. At the conclusion of the hearing, the Court found that the movants had presented no evidence and had not met their burden to obtain a stay. Accordingly, the Court entered an *Order Denying Motion to Stay Pending Appeal* [ECF Doc. 983] on September 11, 2026.

17. In accordance with the Court's Order [ECF Doc. 986], the Riedel Mediation commenced on September 14 and September 15, 2026, at the offices of the Debtors' counsel. Parties were permitted to attend the Riedel Mediation both in-person and via remote video. The Riedel mediation has not yet led to an amicable global resolution, but the parties participating in the mediation are continuing to work toward that goal.

18. During the course of the Riedel Mediation, all parties have been afforded the opportunity, under the umbrella of the mediation privilege, to share their respective positions regarding valuation and allocation of the relevant sales proceeds, many of which have also been set forth in responses and objections filed by parties in connection with the Allocation Motion.

19. On the evening of Monday, September 14, 2026, one of the Debtors' prepetition secured lenders and a participant to the Riedel Mediation, ELGA One, LLC-Series III ("***ELGA***"), initiated a chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois (the "***Illinois Bankruptcy Court***"). [*See* ECF Doc. 998].

20. Contemporaneously with the filing of the bankruptcy, ELGA's counsel participating in the Riedel Mediation sent an email to counsel or the Debtors stating that ELGA's Illinois bankruptcy counsel had "concluded that any action to sell ELGA One's collateral free and clear of its Preferred Ship Mortgages would violate the automatic issued by the N.D. IL. BK court, particularly under 11 USC  362 (a) (2) & (3)."

21. On the evening of September 15, 2026, ELGA filed an *Emergency Motion of Elga One, LLC–Series III, Debtor and Debtor in Possession, for Immediate Relief Preserving the Status Quo, Confirming Automatic-Stay Protection of Its Preferred Ship Mortgage Interests, and Authorizing Limited Participation in Related Louisiana Proceedings* [26-15162, ECF Doc. 7] (the "***ELGA Emergency Motion***") as an attachment to an application for emergency relief. The Illinois Bankruptcy Court promptly set an emergency hearing for 2:00 p.m. on September 16, 2026. The Debtors were not given notice or otherwise made aware of the filing of the ELGA Emergency Motion or the emergency hearing before September 16, 2026.

22. On September 15, 2026, the Debtors consummated the Breakwater Sale in accordance with the Sale Order and the Purchase Agreement, but the Debtors and Breakwater Buyer refrained from closing the sale four (4) vessels subject to ELGA's security interest out of

an abundance of caution given ELGA's position that doing so would constitute a violation of the automatic stay.[2]

23. On the morning of September 16, 2026, the Debtors were made aware of the emergency hearing before the Illinois Bankruptcy Court by a party in interest. On September 16, 2026, at 2:00 pm, the Illinois Bankruptcy Court heard the ELGA Emergency Motion, during which hearing the Debtors appeared and confirmed that title to the vessels subject to ELGA's security interest had not been and would not be transferred pending opportunity for the Debtors to be heard on a motion properly set.

24. The Debtors also provided the Illinois Bankruptcy Court with an initial overview of these Debtors' bankruptcy cases, the sales process, and the exigencies requiring the Debtors to obtain prompt relief to proceed with the consummation of the sale and transfer of the four subject vessels.

25. In light of the foregoing developments, the Debtors requested a status conference with regard to the Allocation Motion, which was held on September 18, 2026. Following the status conference, the Court entered an Amended Scheduling Order which, among other things, ordered the Debtors to file the instant Amended Motion no later than September 22, 2026, at 12:00 p.m. CT.

26. Following the status conference, and also on September 18, 2026, the Debtors filed with the Illinois Bankruptcy Court *Crosby Marine Transportation, LLC and its Affiliated Debtors' Motion for Entry of an Order (I) Confirming Section 362(A) Does Not Stay Consummation of a Sale of Non-Estate Property, (II) (A) Annulling or Otherwise Modifying the Automatic Stay*

---

[2] The Debtors deny that consummating the Sale Order and closing the sale with respect to the Debtors' vessels subject to ELGA's liens would violate 11 U.S.C. § 362, and have sought relief from the Illinois Bankruptcy Court on this and other bases.

*Pursuant to Section 362(D) and, or in the Alternative, (B) Permissively Abstaining Pursuant to 28 U.S.C. § 1334(C), and (III) Granting Related Relief* [No. 26-15162, ECF Doc. 25] ("***Lift Stay Motion***"). As set forth in the Lift Stay Motion, the Debtors seek entry of an order:

> (i) determining that the automatic stay under section 362(a) does not apply to the Crosby Debtors' consummation of the Sale Order[3] and the transfer of the Subject Assets to Breakwater free and clear of ELGA's liens (with those liens attaching to the Breakwater proceeds as provided by the Sale Order),
>
> (ii) (A) granting relief from the automatic stay under section 362(d) to (x) permit the consummation of the Sale Order and the sale of the Subject Vessels, (y) allow for ELGA's claim filed in the Crosby Cases and security interest in the Subject Vessels be valued by the EDLA Court, and (z) permit the Crosby Debtors to file, solicit, and prosecute a chapter 11 plan fully administering the Crosby Debtors' estates or, in the alternative, (B) permissively abstaining pursuant to 28 U.SC. § 1334(c)(1) while ELGA seeks to protect its rights and enforce its claim in the Crosby Cases; and
>
> (iii) granting such other relief as may be justified under the circumstances.

27. As set forth in the Lift Stay Motion, the Debtors assert that ELGA filed its bankruptcy as a litigation tactic and in bad faith to use 11 U.S.C. § 362 to obtain a stay of this Court's Breakwater Sale Order without demonstrating cause under Federal Rule of Bankruptcy Procedure 8007 and posting a bond necessary to secure the Debtors and their estates from harm pending ELGA's appeal.

28. The Debtors solicited ELGA's agreement to an expedited briefing schedule for the Lift Stay Motion, to which ELGA consented. This agreed briefing schedule culminates in a hearing on October 2, 2026, at which Judge Peterman may grant the requested relief as a matter of law or, upon determining that a material issue of fact precludes granting some or all of the requested relief, set an evidentiary hearing on the Lift Stay Motion and a schedule for conducting discovery.

---

[3] Words capitalized are to be given the meaning ascribed below herein.

<u>**RELIEF REQUESTED**</u>

29. By this Amended Motion, the Debtors continue to seek entry of an order:

(i) determining the value of the Breakwater Assets,

(ii) allocating the Cash Sale Proceeds to the individual Breakwater Assets, and

(iii) attaching Encumbrances to the allocated value of the Cash Sale Proceeds, all on the basis of competent evidence submitted to the Court by the Debtors and any party in interest.

30. After considering the responses and objections of parties in interest, including the Committee, the Debtors are persuaded that the Committee Allocation Methodology provides a uniform and reasonable framework for determining value of the Breakwater Vessels for purposes of the Allocation Motion. The Debtors believe that the Court should assign value to a Breakwater Vessel as determined by the Committee Allocation Methodology.

31. The Debtors also seek further amendment to the Amended Scheduling Order resetting evidentiary hearing on this Amended Motion and providing a process by which valuation of the Breakwater Vessels may proceed in the event the Debtors are not successful in obtaining an order from the Illinois Bankruptcy Court on the Lift Stay Motion on or around October 2 allowing the Debtors to obtain a determination of ELGA's lien from this Court pursuant to 11 U.S.C. § 506. The Debtors propose that the Court enter language in the Amended Scheduling Order providing the following:

> *Escrow in the Amount of ELGA's Claim.* The Debtors' bankruptcy counsel, Lugenbuhl, Wheaton, Peck, Rankin, and Hubbard, ALC ("***Lugenbuhl***"), shall escrow cash proceeds from the Breakwater Sale in the amount of $2,615,924.00, which amount shall include credit for the $1,868,361 already held in escrow by Lugenbuhl pending transfer of title of the vessels subject to ELGA's lien to Breakwater Buyer (the "***ELGA Escrow***").
>
> *Stay of Allocation Motion as to ELGA's Claim.* The Debtors' Allocation Motion is stayed with respect to ELGA's lien pending further order by this Court. Allocation of the Proceeds shall go forward pending this limited stay, except allocation of the Proceeds contained in the ELGA Escrow is reserved, pending modification of the

stay as set forth herein. Upon lift of the stay, allocation of the ELGA Escrow shall be determined by this Court.

32. The Debtors take the position that the Lift Stay Motion should be granted and the stay should be annulled by the Illinois Bankruptcy Court on October 2, but the Debtors acknowledge that the timing and nature of a ruling by the Illinois Bankruptcy Court are beyond the Debtors' control. The Debtors propose the above modification to progress the Allocation Motion pending resolution of the Lift Stay Motion.

**BASIS FOR RELIEF**

33. When a debtor's assets are sold as a going concern or in bulk, a bankruptcy court may allocate the purchase price by valuing "each asset based upon competent evidence" and allocating the proceeds "based upon each asset's portion of the total value of all of the assets." *In re LTV Steel Co., Inc.*, 285 B.R. 259, 268 (Bankr. N.D. Ohio 2002). Section 506(a) provides that value "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506. The Supreme Court has held that the "proposed disposition or use" of the collateral is "of paramount importance to the valuation question." *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 954 (1997). Because the Breakwater Assets were sold pursuant to an open and competitive auction process, fair market value is an appropriate framework for determining value of the Breakwater Vessels. *See In re Motors Liquidation Co.,* 482 B.R. 485, 493-85 (Bankr. S.D.N.Y. 2012).

34. The Committee Allocation Methodology is the most appropriate measure of the value of a Breakwater Vessel at the operable time. It rests on competent, independent appraisal evidence (the DLS Appraisal), keys value to the going-concern disposition the Court approved, is uniform and prorates the Cash Sale Proceeds by each asset's proportionate share of total fleet

value. Accordingly, the Debtors submit that the Court should adopt the Committee Allocation Methodology to determine the value of the Breakwater Assets and allocate the Cash Sale Proceeds.

35. In the absence of relief on the Lift Stay Motion, this Court can proceed with valuing liens—other than ELGA's liens—and prorate value to the Proceeds less the amount of the ELGA Escrow.

## CONCLUSION

36. WHEREFORE, the Debtors respectfully request that the Court grant relief as requested herein and such other and further relief to which the Debtors may be justly entitled.

Dated: September 22, 2026

Respectfully submitted:

*/s/Benjamin W. Kadden*

Benjamin W. Kadden, La. Bar No. 29927
bkadden@lawla.com
Stewart F. Peck, La. Bar No. 10403
speck@lawla.com
Douglas S. Draper, La. Bar No. 5073
ddraper@lawla.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@lawla.com
Coleman L. Torrans, La Bar No. 38917
ctorrans@lawla.com
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard (A Law Corporation)**
601 Poydras Street, Suite 2755
New Orleans, LA 70130
Telephone: (504) 568-1990
Fax: (504) 310-9195

***Proposed Counsel for Debtors and Debtors in Possession***