**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:<br><br>CROSBY MARINE TRANSPORTATION, LLC,<br><br>DEBTORS. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 26-10678<br>(JOINTLY ADMINISTERED)<br><br>CHAPTER 11<br>COMPLEX CASE<br><br>SECTION A |

**PEDRO COLON'S MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1), WITH INCORPORATED MEMORANDUM OF LAW**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 15, 2026, AT 9:30 A.M. AT THE UNITED STATES BANKRUPTCY COURT, 500 POYDRAS ST., COURTROOM B-709, NEW ORLEANS, LOUISIANA 70130. PARTIES IN INTEREST MAY PARTICIPATE IN THE HEARING (I) IN PERSON; (II) BY TELEPHONE ONLY (DIAL IN: 504.517.1385, ACCESS CODE: 129611); OR (III) BY TELEPHONE USING THE DIAL-IN NUMBER AND VIDEO USING HTTPS://GOTOMEET.ME/JUDGEGRABILL (MEETING CODE: "JUDGEGRABILL"). IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST RESPOND IN WRITING. UNLESS DIRECTED OTHERWISE BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT NO LATER THAN SEVEN (7) DAYS BEFORE THE HEARING DATE. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

NOW INTO COURT, through undersigned counsel, comes Pedro Colon ("Colon" or "Movant"), an injured Jones Act seaman and creditor in these jointly administered Chapter 11 cases, who respectfully moves pursuant to 11 U.S.C. § 362(d)(1) for limited relief from the automatic stay to permit him to commence, prosecute, mediate, settle, and, if necessary, try his maritime personal-injury claims arising from a February 23, 2024, casualty aboard the M/V KURT J. CROSBY.

The requested relief is deliberately narrow: Mr. Colon seeks to liquidate liability and damages and to pursue applicable insurance, insurers, insurance proceeds, and legally responsible non-debtors, while reserving any recovery against the Debtors or property of their estates to this

Court and the bankruptcy claims-administration process. Since the earlier stay-relief discussions, this Court has entered ECF No. 938 approving the sale of KURT J. CROSBY through a $6.35 million credit bid and expressly finding that holders of potentially senior interests, including a claimant identified as "Pedro C. Solorzano," are adequately protected by the Debtors' insurance coverage. That later Sale Order materially changes the equitable analysis under § 362(d)(1).

Mr. Colon further requests that the Court expressly preserve his filed proofs of claim, asserted maritime-lien rights, maintenance-and-cure rights, rights arising under 11 U.S.C. § 363, and his right to seek interpretation, enforcement, or other appropriate relief concerning the insurance-based adequate protection expressly identified in ECF No. 938. Mr. Colon does not ask in this Motion to unwind the consummated vessel sale, to disturb the purchaser's title, or to adjudicate the ultimate validity, amount, or priority of his asserted maritime lien.

In support, Colon states:

## PRELIMINARY STATEMENT

1. This Motion does not seek permission to levy upon, execute against, seize, garnish, arrest, or otherwise collect from property of the Debtors' estates.

2. Colon does not ask this Court in this Motion to determine the validity, amount, priority, perfection, enforceability, or treatment of his asserted maritime lien.

3. Nor does he ask the Court to determine insurance coverage, exhaustion, indemnity, allocation, or the ultimate amount payable by any insurer.

4. Colon seeks the more limited relief this Court has now permitted in other Crosby maritime-personal-injury matters: authority to liquidate his maritime claims in an appropriate non-bankruptcy judicial forum while protecting estate property and

preserving bankruptcy and insurance issues for later determination. The requested structure closely follows the Fontenot Consent Order, ECF No. 951, while also giving practical effect to the insurance-based adequate protection identified by the Court in the later vessel Sale Order, ECF No. 938.

5. The Debtors oppose this Motion. They do so although, only weeks ago, they obtained a Sale Order extinguishing Mr. Colon's asserted senior maritime lien on the express finding that he, identified by name, is "adequately protected by the insurance coverages secured by the Debtors." ECF No. 938, Finding W; *id.* ¶¶ 9, 14. The Debtors are bound by that finding and estopped from contradicting it. Stay relief is the only means by which insurance can protect anyone. *See* Law and Argument, Section B, *infra.*

6. Mr. Colon is a Jones Act seaman who sustained serious injuries on February 23, 2024, while serving aboard the M/V KURT J. CROSBY.

7. His claims include Jones Act negligence, unseaworthiness under the general maritime law, maintenance and cure, and related maritime remedies.

8. Colon has not yet filed the underlying civil action.

9. Colon has not yet filed the underlying civil action.

10. The accident, however, was not left uninvestigated.

11. Crosby conducted a substantial contemporaneous investigation of the casualty and prepared a detailed report addressing the circumstances, causal factors, fault issues, and remedial measures that Crosby itself determined were necessary. A copy of Safety Alert NO. 002-24 is attached as Exhibit A. It is dated February 27, 2024. This shows this incident has already been fully investigated.

12. Crosby has already investigated the occurrence; relevant employees and witnesses were identified, and witness statements obtained; claim handling commenced; maintenance-and-cure payments were made; defense counsel became involved; and substantial claim related expenditures were incurred.

13. That history makes this case particularly appropriate for prompt mediation.

14. Early mediation has the potential to reduce, rather than increase, the burden on these estates by resolving an unliquidated maritime claim before substantial additional litigation expense is incurred. In fact, at the time of the filing of the bankruptcy, counsel for Mr. Colon was in active settlement discussions with the appointed legal counsel for Crosby, Joseph E. Lee III, of the law firm Phelps Dunbar LLP. The initial representation letter of Colon was sent on March 27, 2024, and the Phelps Dunbar LLP firm responded on April 15, 2024. Since that date Mr. Colon's claims have been fully analyzed by both sides, including exchange of numerous medical records and reports documenting the injuries and treatment. Crosby has paid maintenance and cure to date, although there remain outstanding claims for maintenance and cure.

15. Significant liability insurance potentially applies, including P&I coverage involving The West of England Ship Owners Mutual Insurance Association and additional marine insurance layers.

16. The Debtors' initial principal stated objection to consensual stay relief has not been absence of insurance, but rather the contention that the applicable insurance program contains a $250,000.00 per-occurrence deductible or self-insured retention and that some amount allegedly remains unexhausted.

17. Mr. Colon does not ask the Court to disregard this issue.

18. Mr. Colon asks the Court to determine the actual incremental prejudice to the estate, based on evidence, rather than treat the word "retention" as a categorical bar to stay relief. In addition, the sale of the vessel was approved by this Court based on Debtors' representations that the secured creditors, such as Mr. Colon, were adequately protected by the insurance available. The Order of the Court approved the sale with acceptance of Debtors' representations about the secured claims being adequately covered.

19. The Debtors' own payment spreadsheet provided to the undersigned reflects approximately $149,980.32 in payments made to or on behalf of Mr. Colon, including maintenance, cures, advances, defense fees and claim-related expenses. The date this was provided was July 14, 2026. There may be more payments since.

20. If all of those expenditures count toward a $250,000.00 per–occurrence retention, simple arithmetic would leave approximately $100,019.68, but Mr. Colon does not concede that figure is the contractual balance because the operative accident year Certificate of Entry and complete retention terms have not yet been established in the record. Counsel for Colon has repeatedly asked for cooperation from debtors' attorney regarding insurance coverage. At one point the wrong policy was provided to the undersigned.

21. Moreover, the operative accident-year policy documents, and the identity of the insurers, claims administrator, and counsel actually handling, directing, and funding the defense, bear directly on the true incremental burden, if any, that stay relief would impose on the estates. That burden should be established by the operative documents and a current, supported accounting, not assumed from counsel's unsworn figures.

22. Mr. Colon also has maintenance-and-cure rights and treatment issues that remain reserved. He does not ask the Court on this Motion to decide whether he has reached maximum cure or to quantify any current maintenance-and-cure obligation.

23. Because the present medical record is mixed concerning maximum cure, Colon does not rely on maintenance and cure as the principal basis for stay relief. The issue is preserved for a properly developed record.

24. Matter of Sea Ray Marine Services, Inc., 105 B.R. 12, 13-14 (Bankr. E.D. La. 1989), held that maintenance-and-cure obligations owed to seamen who had not reached maximum cure continued to arise post-petition. Whether that principle presently requires additional payments to Mr. Colon needs not be decided to grant the limited relief requested here. However, if litigated, this issue alone requires defense counsel's involvement.

25. Under all of these circumstances, cause exists to grant limited stay relief.

## FACTUAL BACKGROUND

### A. Mr. Colon's Jones Act employment and Casualty

26. On February 23, 2024, Mr. Colon was employed as a seaman within the meaning of the Jones Act, 46 U.S.C. § 30104, in Crosby's tug operations and was assigned to work aboard the M/V KURT J. CROSBY. Colon has filed claims against the Crosby entities he contends bear Jones Act employer, vessel-owner, and/or operator responsibility; the precise allocation of employer and owner liability can be pleaded and adjudicated in the civil action without affecting the limited relief requested here.

27. Mr. Colon was acting in the course and scope of his employment and in service of the vessel.

28. During the performance of his duties, Mr. Colon suffered a serious onboard accident causing substantial physical and neurological injuries, including an olecranon fracture and traumatic neurological injuries, including brain damage.

29. Mr. Colon contends that the accident was caused by Jones Act negligence and an unseaworthy condition aboard the vessel. Crosby's post-casualty Safety Alert No. 002-24, attached as Exhibit A, documents job-hazard-analysis and "line of fire" safety issues and supports Colon's contention that the casualty was sufficiently investigated to permit meaningful claim evaluation. Colon does not contend that the Safety Alert alone conclusively adjudicates liability, although the findings likely would support a summary judgement finding on liability under the Jones Act and Unseaworthiness law.

30. As stated above, Colon continues to have claims for maintenance and cure.

B. **Crosby already conducted a substantial investigation**

31. Following the casualty, as set forth above, Crosby conducted an extensive investigation.

32. Crosby prepared a detailed investigative/casualty report addressing the facts of the accident, causal circumstances, contributing fault issues, and corrective or remedial measures.

33. Its significance for present purposes is procedural: the Debtors already possess the core factual investigation necessary to evaluate liability and damages. Before bankruptcy, Crosby's defense counsel, Joseph Lee III of Phelps Dunbar LLP, was actively involved in the claim and settlement discussions were underway. Colon does not ask the Court to assume who ultimately bears each defense invoice; the allocation of defense costs, insurer involvement, and retention erosion are factual matters that can be established through the operative policy documents and, if necessary, targeted discovery.

34. Accordingly, this is not a case where stay relief would force the Debtors to begin an expensive investigation from scratch.

35. The case is sufficiently developed to permit early informed mediation.

C. **Mr. Colon has not yet filed suit.**

36. Mr. Colon has not yet commenced the underlying Jones Act and general maritime action. Before the bankruptcy filing, the parties were attempting to resolve the claim pre-suit. Crosby's defense counsel requested additional time to respond to Colon's settlement demand, and Colon refrained from filing suit in good faith while those discussions proceeded. When Colon's counsel later sought the promised response, he was advised that Crosby had filed bankruptcy. The absence of a prepetition complaint therefore reflects the parties' pre-suit settlement efforts, not a lack of factual development.

37. The accident occurred on February 23, 2024.

38. Claims for personal injury arising under Federal Maritime Law generally are subject to a three (3) year limitations period. 46 U.S.C. § 30106.

39. The automatic stay presently prevents commencement of an action against a protected Debtor without authorization from this Court.

40. Section 108(c) of the Bankruptcy Code addresses the effect of a bankruptcy stay upon applicable nonbankruptcy limitations periods.

41. Mr. Colon does not contend that the mere passage of time during bankruptcy automatically resolves every potential limitation issue.

42. Instead, the approaching limitations provides another practical reason to permit filing now, eliminating uncertainty, preserving claims and evidence, and placing the matter in a procedural posture suitable for mediation. A non-bankruptcy forum capable of liquidating the seaman's personal-injury claims will ultimately be required in any event.

43. Requiring Mr. Colon to wait until an uncertain future date provides no meaningful benefit to the estates and may impair efficient resolution of a substantial unliquidated claim in the amount asserted in his proofs of claim. Prompt filing and mediation also give the relevant insurance interests an immediate opportunity to evaluate resolution before additional litigation expense is incurred.

44. Witness recollections fade, employees may leave, medical evidence becomes older, and unnecessary limitations disputes may arise.

45. Those problems can be avoided entirely by allowing the action to be filed under carefully conditioned stay relief.

## MR. COLON'S BANKRUPTCY CLAIMS AND MARITIME LIEN RIGHTS

46. Mr. Colon timely filed proofs of claim in the Crosby bankruptcy cases, including claims against Crosby Marine Transportation, LLC and Crosby Tugs, L.L.C., and filed a protective claim/addendum in the later-filed Kurt Crosby, L.L.C. case. Those filings assert, among other things, a maritime tort lien against the M/V KURT J. CROSBY and preserve Colon's bankruptcy claims while the precise liability of the respective Crosby entities is adjudicated in the proper forum.

47. Mr. Colon also filed an addendum asserting maritime lien rights arising from his maritime tort claim.

48. Maritime tort claims may give rise to maritime liens by operation of law. See Equilease Corp. v. M/V Sampson, 793 F.2d 598, 602-03 (5th Cir. 1986) (en banc) (describing the maritime lien as a special property right in the vessel arising by operation of law).

49. Significantly, another Crosby Jones Act seaman, Dylan Fontenot, likewise asserted in his stay-relief motion that his vessel-related maritime tort gave rise to a maritime lien by operation of law while seeking liquidation of his Jones Act claims outside bankruptcy. ECF No. 719 at 3-4 (citing Equilease).

50. Mr. Colon requests the same procedural separation here.

51. Liability and damages may be, and should be, liquidated in an appropriate non-bankruptcy judicial forum.

52. The KURT J. CROSBY has now been sold pursuant to ECF No. 938. Colon does not ask in this Motion to vacate, reverse, or unwind that Sale Order, and he does not ask the Court to adjudicate purchaser title. The validity, extent, priority, and ultimate treatment of Colon's asserted maritime lien, and any rights arising from the insurance-based adequate protection identified in the Sale Order, are expressly reserved.

53. Nothing in this Motion is intended as any additional waiver, release, or concession concerning the legal effect of ECF No. 938 upon Colon's asserted maritime lien, beyond whatever effect that Order already has. Colon specifically reserves the right to seek interpretation or enforcement of ECF No. 938 if the insurance coverage identified by the Court as adequate protection proves unavailable, exhausted, or otherwise insufficient to provide the protection contemplated by the Order.

54. Colon likewise reserves any rights he may possess under 11 U.S.C. § 363(e), applicable maritime law, and other law concerning adequate protection, while recognizing that the vessel sale has been consummated and is not challenged by this Motion.

55. Because KURT J. CROSBY was transferred through a credit bid rather than a cash sale, ECF No. 938 expressly finds that there are no sale proceeds on which potential senior liens may attach. The focus of this Motion is therefore the insurance protection that the Court expressly identified in place of such proceeds.

## THE KURT J. CROSBY SALE MAKES INSURANCE CENTRAL TO ADEQUATE PROTECTION

A. The sale process originally contemplated payment or proceeds as substitute protection

56. In the Debtors' Bidding Procedures Motion, the Debtors represented that an encumbrance stripped from a sold asset would be adequately protected either by payment in full at closing or by attachment to net sale proceeds. ECF No. 571 ¶ 51.

B. The KURT J. CROSBY produced no cash proceeds because PNC acquired it by credit bid

57. The Debtors' investment banker, Geoffrey Richards of Raymond James, testified under penalty of perjury that PNC confirmed a $6.35 million credit bid for the KURT J. CROSBY; Breakwater Buyer excluded the vessel because of that bid; and PNC ultimately was selected as the successful bidder. ECF No. 914 ¶¶ 24, 26, 32. ECF No. 938 confirms that the $6.35 million credit bid extinguished an equivalent amount of KJC Loan obligations rather than producing cash sale proceeds.

C. ECF No. 938 expressly substitutes insurance as the stated adequate protection

58. ECF No. 938 specifically identifies "Pedro C. Solorzano" among holders asserting interests purportedly senior to the secured lender and finds: "Such holders are adequately protected by the insurance coverages secured by the Debtors." ECF No. 938 at 15-16 (Finding W). Mr. Colon understands that reference to concern Pedro Colon Solorzano. The Order repeats that, because the consideration was the credit bid, "there are no proceeds on which any potential senior Liens, Claims, or Interests will attach," but those holders are adequately protected by insurance. ECF No. 938 at 21, 23.

59. The Sale Order further requires the Debtors and their affiliates to cooperate with the Purchaser in good faith concerning applicable insurance and requires commercially reasonable efforts to facilitate treatment of claims connected with the acquired vessel and to "cause the Debtors' insurers to defend and satisfy any such claims to the extent required under the applicable insurance policies." ECF No. 938 ¶ 14. The Court retained jurisdiction to interpret, implement, and enforce the Sale Order. ECF No. 938 ¶ 25.

60. Those provisions materially change the § 362(d)(1) balance. Having relied on insurance as the stated adequate protection for potential senior claimants after a credit-bid sale that produced no cash proceeds, the Debtors should not be permitted to use the remaining-retention issue as a categorical basis to block Colon from taking the steps necessary to liquidate his claim and pursue that insurance. If the insurance protection later proves unavailable or materially inadequate, Colon reserves the right to seek appropriate relief within this Court's retained jurisdiction.

## APPLICABLE INSURANCE AND THE ASSERTED RETENTION

A. Substantial insurance potentially applies

61. The Debtors have acknowledged that insurance applies to Mr. Colon's casualty.

62. Accident year insurance materials identify marine liability coverage including the West of England and additional excess insurance layers.

63. This therefore is not an uninsured tort claim whose prosecution necessarily looks only to estate assets.

B. The Debtors' retention position remains factually incomplete

64. Debtors' counsel has represented that the applicable insurance contains a $250,000 per-occurrence retention or deductible.

65. Counsel at one point represented that $132,311.94 had been paid and that $107,243.68 remained.

66. Those figures do not mathematically reconcile.

67. $250,000.00 less $132,311.94 equals $117,688.06.

68. Mr. Colon requested supporting information.

69. Debtors' counsel thereafter produced a spreadsheet identifying approximately $149,980.32 in payments made to or on behalf of Mr. Colon.

70. The spreadsheet includes payments classified as maintenance, cure, advances, defense fees, medical review, and other claims expenses.

71. If every item in the Debtors' later spreadsheet properly erodes a $250,000 per-occurrence retention, simple arithmetic would leave approximately $100,019.68.

72. Colon does not ask the Court to adopt any particular remaining-retention figure without the operative policy documents and current accounting. Relevant questions remain, which include whether West of England has already participated in the investigation, defense, claims handling, and settlement process; which categories of expense erode the retention; and what incremental estate expenditure would actually result from filing the action and proceeding promptly to mediation.

73. The operative accident-year Certificate of Entry, deductible/SIR endorsement, incorporated Club Rules, and updated retention ledger should therefore be produced before any contested hearing or, alternatively, through targeted discovery authorized by the Court.

C. The Court should examine the actual estate burden if a stay is lifted.

74. Crosby's position appears to be that stay relief cannot be granted because the estate would be required to fund future legal defense expenses before insurance responds.

75. That proposition should be demonstrated, not assumed.

76. The Court should consider:

a. Who actually retained defense counsel;

b. Who receives defense reports;

c. Who approves litigation strategy;

d. Who approves settlement;

e. Who actually pays counsel invoices;

f. Whether West of England advances or reimburses any defense costs;

g. Which payments count toward exhaustion;

h. The present balance of the retention; and

i. What additional estate expenditure would realistically be necessary to file the action and participate in early mediation.

77. The P&I relationship is relevant because the degree of actual Club participation in defense, claims handling, and settlement bears directly on the incremental burden, if any, imposed on the estates.

78. To the extent the operative West Certificate and Rules provide for Club participation in investigation, defense, or settlement, those provisions should be considered together with the actual claims-handling history rather than assumed from the label placed on the retention.

79. Thus, characterization of the coverage as "indemnity" or the retention as an "SIR" does not by itself answer the economic question before the Court.

D. The asserted retention can be managed through conditioned or phased relief

80. Even if the Court assumes for present purposes that approximately $100,000 remains before contractual exhaustion, § 362(d) permits the Court to modify or condition the stay. The Court can permit filing, targeted discovery, and prompt mediation while prohibiting execution against estate assets and deferring more expensive expert and trial preparation until after mediation or further order.

81. That approach addresses the Debtors' stated cost concern without leaving Colon without practical access to the insurance that ECF No. 938 identified as adequate protection.

82. Moreover, the Debtors obtained the Sale Order on the express finding that Mr. Colon is adequately protected by insurance, and his asserted preferred maritime lien, which primes a preferred ship mortgage, 46 U.S.C. §§ 31301(5), 31326(b)(1), was extinguished on that basis. As shown in Section B of the Law and Argument below, the Debtors are bound by that finding and may not now obstruct Mr. Colon's access to the insurance it identified.

## SAME-CASE HISTORY: LODRIGUE, GARZA AND FONTENOT

A. Lodrigue

83. In the earlier Lodrigue matter, the Court denied stay relief without prejudice after the Debtors argued that substantial retention remained, and that continued litigation would require estate-funded defense expenditures and employee attention. Colon does not ask the Court to disregard that ruling; he relies on the materially different and later-developed record now before the Court, including the vessel sale, ECF No. 938's insurance-based adequate-protection finding, the Fontenot Consent Order, and the Debtors' substantially changed post-sale circumstances.

B. Garza

84. Thereafter, another Jones Act seaman, Joseph Garza, obtained relief from the stay in these same Crosby cases.

85. Fontenot's later motion expressly informed this Court that Crosby initially opposed Garza's request but subsequently reached an agreement to lift the stay, resulting in ECF Nos. 589 and 617.

86. Garza confirms that limited stay relief for a Crosby Jones Act claimant is not unprecedented, although Colon relies principally on the specific terms of the later Fontenot Consent Order and ECF No. 938.

C. Fontenot

87. Dylan Fontenot subsequently filed ECF No. 719 seeking limited stay relief to continue his Jones Act and maritime claims.

88. Fontenot asserted claims for Jones Act negligence, unseaworthiness and maintenance and cure.

89. He also expressly asserted a maritime tort lien.

90. Fontenot argues that his personal-injury claims required liquidation in a non-bankruptcy forum and reserved his jury-trial rights.

91. Fontenot further argued that even where insurance does not bear every defense cost, the equities may still support stay relief. ECF No. 719 at 5-6.

92. Fontenot offered the same essential protection Colon offers here: no enforcement against the Debtor or estate outside the bankruptcy proceeding except against applicable insurance and other permitted non-estate sources.

93. On September 8, 2026, this Court entered the Fontenot Consent Order granting limited stay relief. ECF No. 951.

94. The Fontenot Order permits recovery against applicable insurance policies, insurance proceeds, insurers, and other non-debtor parties while reserving recovery against Crosby and estate property to the bankruptcy claims-administration process. If insurance is insufficient or unavailable, the final judgment or settlement fixes the liquidated bankruptcy claim. ECF No. 951 at 2.

95. It also expressly preserves insurance coverage, indemnity, allocation, exhaustion, and other defenses, demonstrating that those issues need not be finally adjudicated before limited stay relief is granted. ECF No. 951 at 2.

D. Material circumstances have changed since the earlier Lodrigue ruling

96. The vessel sale, ECF No. 938's insurance-based adequate-protection finding, and the Fontenot Consent Order all post-date the earlier Lodrigue ruling. In addition, MC Bank has moved to convert the cases to Chapter 7 and alleges that, following the asset sales, the Debtors have "no employees, no operations, and no realistic path back to viability." ECF No. 1014 at 1. Colon cites that statement as an allegation of MC Bank, not a finding of this Court.

97. These post-sale developments materially reduce the force of the earlier contention that Colon's litigation would distract an operating business and its employees from reorganization. Any genuine concern about defense expense can be addressed through conditioned relief.

## LAW AND ARGUMENT

A. Cause exists under § 362(d)(1)

98. Section 362(d)(1) requires relief from the automatic stay "for cause" and expressly authorizes the Court to terminate, annul, modify, or condition the stay. The Court therefore is not limited to an all-or-nothing choice between unrestricted litigation and indefinite paralysis.

99. Cause is determined from the facts and equities of the individual case. Here, the Court can protect the estates through conditions limiting collection, phasing discovery, requiring early mediation, and reserving the parties' ability to return to this Court if a demonstrated estate burden later arises.

100. Personal injury claims occupy a special procedural position in bankruptcy.

101. Section 157(b)(2)(B) excludes liquidation or estimation of personal-injury tort claims for purposes of distribution from the bankruptcy court's core claim-allowance function.

102. Section 157(b)(5) directs that personal-injury tort claims "shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5).

103. Section 1411 preserves applicable jury trial rights.

104. Mr. Colon therefore asks merely to begin the process that ultimately must occur somewhere: liquidation of liability and damages in an appropriate nonbankrupty judicial forum consistent with 28 U.S.C. §§ 157(b)(2)(B), 157(b)(5), and 1411.

B. The Debtors are bound by, and estooped from contradicting, the Sale Order's insurance-based adequate-protection finding

105. The Sale Order found that Mr. Colon's protection is the Debtors' insurance/ To obtain a free and clear transfer of the KURT J. CROSBY over asserted senior maritime liens, the Debtors asked the Court to find, and the Court found, that the holders of liens "purportedly senior-in-rank or priority" to the Pre-Petition Lender, "including, without limitation, Pedro C. Solorzano," are "adequately protected by the insurance coverages secured by the Debtors." ECF No. 938, Finding W. Because the Vessel was acquired by credit bid, the Court further found that "there are no proceeds on which any potential senior Liens, Claims, or Interests will attach, however such holders are adequately protected by the insurance coverages secured by the Debtors." *Id.* ¶¶ 9, 14. Mr. Colon was thus left with no vessel, no sale proceeds, and a single form of protection: the Debtors' insurance.

106. The Sale Order binds the Debtors**.** The Sale Order is a final order, ECF No. 938, Finding C, and by its terms is "binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest" and "binding in all respects upon . . . the Debtors, their estates, and their creditors." *Id.* ¶¶ 7, 24. The adequate-protection finding is not dicta. It is the stated basis on which the Court permitted a credit-bid transfer free and clear of asserted senior liens with no proceeds for those lienholders. The Debtors may not accept the benefit of that finding, a consummated sale, while denying Mr. Colon its substance.

107. Judicial estoppel independently bars the Debtors' position. Judicial estoppel prevents a party from asserting a position that contradicts one it previously took and persuaded a court to accept. *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001). In the Fifth Circuit, the doctrine applies where (1) the party's current position is plainly inconsistent with its prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc). Each element is met.

108. First, the positions are plainly inconsistent. In support of the sale, the Debtors represented that senior lienholders were protected by the Debtors' insurance. They now contend that Mr. Colon may not proceed toward that insurance at all. *Second*, the Court accepted the Debtors' position and incorporated it into written findings and decretal paragraphs of a final order. *Third*, the Debtors' position was not inadvertent: the finding appears three times in the Sale Order and identifies Mr. Colon by name, and the Debtors obtained a concrete advantage from it, the transfer of the Vessel free and clear of his asserted lien.

109. Adequate protection must be real. Adequate protection under 11 U.S.C. §§ 361 and 363(e) exists to preserve the value of the interest being impaired. *See* 11 U.S.C. § 361(3) (the "indubitable equivalent" of the interest). Insurance that the protected party is barred from reaching is not the equivalent of anything. Denying stay relief would render the Court's finding illusory and leave Mr. Colon, the holder of an asserted preferred maritime lien that primes a preferred ship mortgage, 46 U.S.C. §§ 31301(5), 31326(b)(1), with nothing from the sale of the vessel against which that lien was asserted.

110. The interest extinguished was a seaman's lien on the Vessel itself. The interest extinguished by the Sale Order was not an ordinary claim. A seaman's maritime tort lien is a property right in the vessel itself that arises by operation of law, follows the vessel, and primes a preferred ship mortgage. Equilease Corp. v. M/V Sampson, 793 F.2d 598 (5th Cir. 1986) (en banc); 46 U.S.C. §§ 31301(5), 31326(b)(1). Absent bankruptcy, Mr. Colon could have enforced that lien by arresting the Vessel. The automatic stay barred that remedy, and the Sale Order then transferred the Vessel free and clear through a credit bid that generated no proceeds. The Court substituted a single form of protection: the Debtors' insurance. Seamen are wards of admiralty, and the Court should not permit the only protection left for Mr. Colon to be defeated by the same parties who proposed it.

111. There is no "later" path to insurance. The Debtors cannot reconcile their position by reading the finding to mean only that insurance exists and may someday respond. Mr. Colon's personal-injury claim cannot be liquidated in this Court; it must be tried in the district court. 28 U.S.C. § 157(b)(2)(B), (b)(5). No insurer will pay an unliquidated claim. So long as the stay prevents liquidation, the insurance identified in ECF No. 938 protects no one. The Debtors' remaining-retention objection therefore goes, at most, to how relief should be conditioned, not whether Mr. Colon may proceed. *See* Section E, *infra*.

C. Bankruptcy is not intended to freeze tort claims indefinitely

112. In *Kipp Flores Architects, L.L.C. v. Mid-Continent Casualty Co., 852 F.3d 405, 414 (5th Cir. 2017),* the Fifth Circuit recognized that courts frequently permit unliquidated claims to proceed outside bankruptcy.

113. Fontenot relied upon that principle in this very case.

114. Allowing outside liquidation is especially appropriate where it permits a specialized tort claim to be valued efficiently while the Bankruptcy Court retains exclusive control over estate distribution.

D. Fifth circuit law distinguishes liability policies from third-party proceeds

115. The Fifth Circuit distinguishes an insurance policy from its proceeds.

116. *Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51 (5th Cir. 1993)*, recognizes that proceeds of a typical liability policy payable to an injured third party ordinarily are not estate property where the debtor has no right to receive and keep those funds.

117. Sosebee v. Steadfast Insurance Co., 701 F.3d 1012 (5th Cir. 2012), reaffirmed that the status of liability-policy proceeds depends on the debtor's rights in those proceeds and the circumstances of the policy.

E. The possible remaining retention is a factor - not the end of the inquiry

118. Colon accepts that genuine estate-funded defense costs may constitute some prejudice.

119. But Fontenot's motion recognized that some possible debtor defense expense does not automatically resolve the equitable inquiry, and the later ECF No. 938 makes the insurance issue materially more important in Colon's case.

120. The Court should weigh actual, not theoretical, prejudice.

121. Here, substantial claim expenditures already have occurred.

122. The Debtors' liability investigation already occurred.

123. Experienced defense counsel already has been involved.

124. The underlying facts have already been evaluated.

125. Mr. Colon proposes prompt mediation before expensive merits litigation.

126. There is substantial insurance available, as confirmed by debtors when asking to approve the sale of Kurt J. Crosby, a sale that brought no funds into the proceedings for senior lien holders such as Colon to collect from. Insurance became a substitute.

127. And Mr. Colon will not execute against estate property without further Court authority.

128. On those facts, the mere possibility that some retention remains should not operate as an indefinite bar.

## CONCLUSION

129. ECF No. 938 concerns the very vessel aboard which Colon was injured. It authorized a free-and-clear credit-bid transfer that produced no cash fund for potential senior maritime interests and expressly identified insurance as adequate protection for those claimants. Limited stay relief allowing Colon to liquidate his claim and pursue that insurance is therefore consistent with the structure of the Sale Order.

130. The Court can preserve all coverage, exhaustion, allocation, indemnity, reimbursement, and SIR defenses while conditioning the pace of litigation. The remaining-retention issue therefore bears on how relief should be structured, not whether Colon must remain indefinitely unable to proceed.

## MARITIME-LIEN AND TITLE ISSUES SHOULD BE RESERVED, NOT DECIDED ON THIS MOTION

131. Mr. Colon asserts that his vessel-related maritime tort claim gives rise to a preferred maritime lien. The Ship Mortgage Act defines a preferred maritime lien to include a maritime lien "for damage arising out of maritime tort," 46 U.S.C. § 31301(5)(B), and the Fifth Circuit has held that a valid preferred maritime tort lien can prime a preferred ship mortgage. Associated Metals & Minerals Corp. v. M/V Alexander's Unity, 41 F.3d 1007, 1011-12 (5th Cir. 1995).

132. Colon therefore does not ask the Court on this Motion to undo the consummated sale, cloud purchaser title, or decide the ultimate lien issue. He preserves any non-waived maritime-lien and adequate-protection arguments only to the extent they may become material if the insurance protection expressly identified in ECF No. 938 proves unavailable or materially inadequate.

133. Mr. Colon filed his proof of claim and maritime-lien addendum because the Bar Date Order required lien claimants to do so. He did not otherwise litigate the validity, priority, or amount of his lien in this Court, and the Sale Order did not adjudicate them; it describes his lien as "purportedly" senior. ECF No. 938, Finding W. Mr. Colon reserves, and does not waive, his position that a maritime lien may be extinguished only upon the lienholder's consent or adjudication. *See Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517 (9th Cir. 2018); *In re Millenium Seacarriers, Inc.*, 419 F.3d 83 (2d Cir. 2005). He raises the point not to disturb the consummated sale, but because it underscores that the insurance-based.

## POST-SALE CIRCUMSTANCES FURTHER REDUCE ANY ESTATE PREJUDICE

134. The completed asset sales and MC Bank's pending conversion allegations materially reduce the earlier management-distraction concern. The remaining issue is principally how Colon's unavoidable personal-injury claim will be liquidated and how the insurance identified in ECF No. 938 will respond; any actual defense-cost burden can be managed through the phased relief requested below.

## EARLY MEDIATION MAY BENEFIT THE ESTATES

135. This case presents an unusually strong opportunity for early mediation.

136. Crosby has already investigated the accident.

137. Mr. Colon's medical and maintenance and cure history is already known to the Debtors and claims handlers.

138. Defense counsel has already been involved.

139. The principal issues therefore can be placed before an experienced maritime mediator without months of expensive threshold investigation.

140. Prompt mediation can benefit the estates by:

a. Eliminating or reducing Mr. Colon's unliquidated bankruptcy claim;

b. Ending future defense fee exposure;

c. Reducing management and employee distraction;

d. Eliminating future expert and discovery expense;

e. Resolving ongoing maintenance and cure disputes;

f. Reducing uncertainty concerning insurance exposure; and

g. Allowing the insurer and Claimant to resolve the matter while evidence remains refreshed.

141. The potential incremental expense of participating in early mediation should therefore be weighed against the possibility of eliminating the claim entirely.

142. Maintaining the stay indefinitely can produce the opposite result: increased expense later, degraded evidence, continuing medical disputes and a larger unresolved claim.

## THE LIMITATIONS PERIOD ALSO FAVORS RELIEF

143. Mr. Colon's injury occurred on February 23, 2024.

144. Maritime personal injury claims ordinarily are governed by a three (3) year limitations period under 46 U.S.C. § 30106.

145. Section 108(c) addresses limitations periods affected by bankruptcy stays.

146. Nevertheless, Mr. Colon should not be forced to rely indefinitely upon statutory extension provisions when this Court can eliminate the uncertainty through narrow relief.

147. Filing now would preserve the claim, identify the appropriate parties, permit orderly preservation of evidence, and facilitate prompt mediation.

148. Nothing about preserving the action prejudices the estate where collection remains subject to the protections requested herein.

## THE PROPOSED LIMITATIONS PROTECT THE ESTATE

149. Mr. Colon proposes that any stay relief order provide that:

a. Mr. Colon may commence, prosecute, mediate, settle and liquidate his Jones Act and maritime claims;

b. Mr. Colon may pursue recovery from applicable insurance policies, insurance proceeds, insurers, P&I interests and legally responsible non-debtors;

c. Mr. Colon shall not levy upon, execute against, garnish, seize, arrest or otherwise collect against property of a Debtor's estate without further Order;

d. Any recovery from the Debtors or estate property shall be pursued solely through the bankruptcy claims process;

e. Mr. Colon's proofs of claims remain preserved;

f. Any rights arising from ECF No. 938's insurance-based adequate protection, and any maritime-lien or title-related rights not finally adjudicated by that Order, remain reserved without disturbing the consummated sale on this Motion;

g. Nothing in the stay-relief order shall constitute an additional waiver or concession by Colon concerning the legal effect of ECF No. 938 upon his asserted maritime lien, nor shall it disturb the consummated sale;

h. Colon reserves the right to seek interpretation, enforcement, or other appropriate relief within this Court's retained jurisdiction if the insurance protection identified in ECF No. 938 proves unavailable or materially inadequate;

i. Mr. Colon's maintenance-and-cure rights remain preserved;

j. All insurance coverage, exhaustion, allocation, indemnity and reimbursement issues remain preserved;

k. No finding shall constitute a determination that any insurer is obligated to pay any amount; and

l. All parties retain all other rights not expressly modified.

150. Those protections protect the estates while giving practical effect to the Court's own insurance-based adequate-protection finding.

151. They closely track the structure this Court approved in Fontenot, while expressly preserving Colon's maritime-lien, Sale Order, and § 363 rights without asking the Court to disturb purchaser title.

## ALTERNATIVE RELIEF

152. If the Court is not prepared to grant full limited stay relief at this time, Mr. Colon requests alternative relief.

A. Filing and mediation only

153. Permit Colon to file the action, serve appropriate parties, exchange pleadings, preserve evidence, and proceed directly to mediation.

154. Stay broader merits discovery pending completion of mediation.

155. If the Court wishes to further limit expense, it may permit targeted written discovery and the depositions reasonably necessary to prepare for mediation, while deferring expert discovery, dispositive motion practice, and trial preparation until after mediation or further order.

156. The Court may also direct that, if mediation does not resolve the matter, either party may return for further direction concerning any demonstrated material estate expense associated with continued litigation. That approach converts the Debtors' asserted $100,000 concern into a manageable scheduling issue rather than an indefinite bar to any progress.

157. This would impose minimal estate burden while creating the possibility of immediate resolution. The Debtors and their insurer/P&I interests would be able to evaluate the claim before expensive expert discovery or trial preparation. If mediation fails, either side could return to this Court before materially more expensive phases of litigation begin.

B. Discovery

158. Alternatively, permit limited expedited discovery concerning:

- the operative West Certificate of Entry;
- deductible/SIR endorsements;
- current retention accounting;
- payments credited toward exhaustion;
- treatment of maintenance and cure under the retention;
- treatment of attorney fees and investigation costs;
- identity of the party paying defense counsel;
- insurer reimbursement or advancement;
- insurer control over defense;
- settlement authority;
- present remaining retention; and
- incremental estate expense associated with filing and early mediation.

159. Thereafter, if the parties cannot agree on broader relief, Colon requests an expedited status conference or evidentiary hearing so the Court can determine what additional litigation, if any, should proceed and on what conditions.

C. Enforcement of the Sale Order's adequate protection

160. Alternatively, and in any event, Mr. Colon requests that the Court, under its retained jurisdiction to interpret, implement, and enforce the Sale Order, ECF No. 938 ¶ 25, and 11 U.S.C. §§ 105(a) and 363(e), give practical effect to the insurance-based adequate protection it found by directing the Debtors to (i) cooperate with their insurers, claims administrator, and Mr. Colon in the adjustment, defense, and resolution of his claim; and (ii) cooperate in any settlement structure reasonably necessary to permit the insurers to respond, including an escrow or pass-through mechanism to satisfy any policy condition requiring payment by the assured, at no net cost to the estates.

161. Mr. Colon further requests that any order reserve his right to assert, by separate motion, a claim under 11 U.S.C. § 507(b) should the insurance-based adequate protection provided under 11 U.S.C. § 363 and found by the Court in ECF No. 938 prove unavailable or inadequate, measured by the diminution in value of his interest in the Vessel resulting from the Sale, with all parties' rights as to the existence, allowance, amount, and priority of any such claim reserved.

## BALANCE OF HARDSHIPS

162. The balance strongly favors limited relief.

163. Mr. Colon is a seriously injured seaman.

164. His claim already has been investigated.

165. Maintenance-and-cure rights remain reserved and need not be decided to grant relief.

166. The three (3) year limitations date approaches.

167. Substantial insurance potentially applies.

168. The case is ripe for early mediation.

169. Colon agrees not to execute against estate property.

170. A successful mediation may eliminate rather than increase estate burden.

171. Another forum , and a jury will ultimately have to decide the claims.

172. The Kurt J. Crosby was sold with no proceeds to the Estates for Colon to seek pursuant to his maritime lien, the Court determining he was adequately protected by insurance. Colon now seeks to proceed and collect from this insurance coverage, as outlined above.

173. Under these circumstances, cause exists under § 362(d)(1).

## CONCLUSION

WHEREFORE, Pedro Colon respectfully requests entry of an Order:

a. Granting limited relief from the automatic stay to permit Colon to commence, prosecute, mediate, settle and liquidate his Jones Act negligence, unseaworthiness, maintenance-and-cure and related maritime claims arising from the February 23, 2024 casualty aboard the M/V KURT J. CROSBY;

b. Permitting Colon to pursue recovery against applicable liability insurance, insurance proceeds, insurers, P&I interests and legally responsible non-debtor parties;

c. Prohibiting Colon from executing against estate property absent further order;

d. Reserving any estate recovery to the bankruptcy claims process;

e. Preserving Colon's proofs of claim, asserted maritime lien, rights under 11 U.S.C. §§ 363(e) and 363(f), rights arising from ECF No. 938's insurance-based adequate protection and retained jurisdiction, and maintenance-and-cure rights, without disturbing the consummated vessel sale on this Motion;

f. Preserving all insurance-coverage, retention, exhaustion, allocation, indemnity, reimbursement and policy defenses;

g. Authorizing prompt mediation;

h. Alternatively, granting filing/mediation-only relief, phased litigation relief, or targeted insurance/retention discovery; and

i. Providing that the stay-relief order does not impair, and expressly preserves, any cooperation and insurance-related obligations imposed by ECF No. 938 to the extent applicable to claims arising in connection with the KURT J. CROSBY, including the Order's provisions concerning commercially reasonable efforts to facilitate covered-claim treatment and insurer defense or satisfaction as required by the applicable policies;

j. Expressly reserving Colon's right to seek interpretation, enforcement, or other appropriate relief concerning ECF No. 938 if the insurance protection identified in that Order proves unavailable, exhausted, or materially inadequate;

k. Alternatively, or additionally, directing the Debtors to cooperate with their insurers, claims administrator, and Colon in the adjustment and resolution of his claim, including in any settlement mechanism necessary to satisfy a policy condition requiring payment by the assured at no net cost to the estates, and reserving Colon's right to a assert, by separate motion, a claim under 11 U.S.C. § 507(b) should the insurance-based adequate protection provided under 11 U.S.C. § 363 and found in ECF No. 938 prove unavailable or inadequate, with all parties' rights as to the existence, allowance, amount, and priority of any such claim reserved; and

l. Granting all further relief the Court deems just.

## CERTIFICATE OF CONFERENCE

Undersigned counsel certifies that on September 23, 2026, Benjamin Kadden, counsel for Debtors, advised Debtors do not agree to the relief requested.

Respectfully submitted,

By: *s/ Brett Rivkind*

BRETT RIVKIND, ESQ.
(admitted pro hac vice)
FBN: 373486
seainjury@rivkindlaw.com
RIVKIND, MARGULIES & RIVKIND,P.A.
169 East Flagler Street
Suite 1422
Miami, FL 33131
Telephone: (305) 374-0565
Facsimile: (305) 539-8341
Attorneys for Plaintiff

Counsel for Movant, Pedro Colon

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2026, a true and correct copy of the foregoing Notice of Hearing, together with the Motion and proposed order, was served electronically through the Court's CM/ECF system on counsel for the Debtors, the Office of the United States Trustee, and all parties receiving electronic notice in these cases, and by first-class United States mail on the parties listed below and any other parties required to be served under the Court's Complex Case Procedures or any order limiting notice.

**DEBTORS (via U.S. Mail):**
Crosby Marine Transportation, LLC;
Crosby Tugs, L.L.C.;
Kurt Crosby, L.L.C.
c/o Kurt Crosby, P.O. Box 1226, Galliano, LA 70354

**DEBTORS' COUNSEL (via CM/ECF):**
Avery Autin, Greta M. Brouphy, Katherine Elizabeth Clark,
Michael E. Landis,
Samuel Riccardi,
Benjamin Kadden,
Coleman Torrans
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard,
601 Poydras St., Suite 2775,
New Orleans, LA 70130

Michael D. Rubenstein, Liskow & Lewis,
1001 Fannin St.,
Suite 1800,
Houston, TX 77002

**U.S. TRUSTEE (via CM/ECF):**
Office of the U.S. Trustee,
Amanda Burnette George,
600 S. Maestri Place,
Suite 840-T,
New Orleans, LA 70130